**Docket No. 2026-1918**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT
Washington, D.C.

**HAMMERLESS TOOLS LLC, EIGHT EIGHTEEN LLC,**

*Plaintiffs-Appellees*

v.

**JONATHAN CLAUSEN,**

*Defendant-Appellant*

**CLAUSEN, INC., AR-TT LLC, LILAC CITY LLC,**

*Defendants.*

On appeal from the United States District Court for the Eastern District of Washington, Case No. 2:23-CV-00413-SAB, Hon. Stanley A. Bastian, Chief Judge

## PRINCIPAL BRIEF OF DEFENDANT-APPELLANT JONATHAN CLAUSEN

> Stephen L. Sulzer (D.C. Bar No. 340943)
> **STEPHEN L. SULZER PLLC**
> 11710 Plaza America Drive, Suite 2000
> Reston, VA 20190
> P: (703) 871-5000
> F: (202) 558-5101
> E: ssulzer@sulzerpllc.com
>
> *Attorney for Defendant-Appellant Jonathan Clausen and Defendants Clausen, Inc., AR-TT LLC, and Lilac City LLC*

Dated: August 10, 2026

**IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
Washington, D.C.

**HAMMERLESS TOOLS LLC, EIGHT EIGHTEEN LLC,**
*Plaintiffs-Appellees*

v.

**JONATHAN CLAUSEN,**
*Defendant-Appellant*

**CLAUSEN, INC., AR-TT LLC, LILAC CITY LLC,**
*Defendants*

Docket No. 2026-1918

**DEFENDANT-APPELLANT JONATHAN
CLAUSEN'S CERTIFICATE OF INTEREST**

Pursuant to Federal Circuit Rule 47.4, Defendant-Appellant Jonathan Clausen, through his counsel, submits this certificate of interest.

(1) The undersigned counsel represents only one entity defined in Rule 47.4(a) – *i.e.,* Defendant-Appellant Jonathan Clausen.

(2) Defendant-Appellant Jonathan Clausen is the real party in interest.

(3) There are no parent corporations of Defendant-Appellant Jonathan Clausen and there no publicly held corporations that own ten percent or more of any stock in Defendant-Appellant Jonathan Clausen. Defendant-Appellant Jonathan Clausen is a natural person and is not a corporation or limited liability company.

1

(4) Robert T. Wright, WSBA #54075, and Douglas R. Dick, WSBA #46519, of WHC ATTORNEYS, PLLC, 12209 E. Mission Avenue, Suite 5, Spokane Valley, WA 99206, appeared along with the undersigned as counsel for Defendant-Appellant Jonathan Clausen in the lower tribunal neither attorney Wright nor attorney Dick have entered an appearance in this appeal. No other counsel apart from the undersigned are expected to appear for Defendant-Appellant Jonathan Clausen in this Court.

(5) The undersigned counsel is unaware of any related or prior cases, other than the originating case number, that meets the criteria in Federal Circuit Rule 47.5.

(6) As it is understood by the undersigned counsel, this subpart is inapplicable to this case, which is neither a criminal case nor a bankruptcy case.

I hereby certify that the foregoing information is accurate and complete to the best of my knowledge.

Dated: June 23, 2026

Respectfully submitted,

By: /s/ *Stephen L. Sulzer*
Stephen L. Sulzer (D.C. Bar No. 340943)
**STEPHEN L. SULZER PLLC**
11710 Plaza America Drive, Suite 2000
Reston, VA 20190
P: (703) 871-5000
F: (202) 558-5101
E: ssulzer@sulzerpllc.com

*Attorney for Defendant-Appellant*
*Jonathan Clausen*

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 23, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System and served a true and correct copy of the foregoing by email to counsel for Plaintiffs-Appellees Hammerless Tools LLC and Eight Eighteen LLC as set forth below:

Caleb Hatch, WSBA #51292
Johanna R. Tomlinson, WSBA #57582
Lee & Hayes, P.C.
601 W. Riverside Ave., Suite 1400
Spokane, WA 99201
Email: caleb.hatch@leehayes.com
Email: johanna.tomlinson@leehayes.com

Signed at Reston, Virginia this 23rd day of June 2026.

/s/ *Stephen L. Sulzer*
Stephen L. Sulzer

# TABLE OF CONTENTS

Pages

CERTIFICATE OF INTEREST

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   v

STATEMENT OF RELATED CASES

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

   I. THE COURT SHOULD APPLY NINTH CIRCUIT
      LAW TO THE ISSUES IN THIS APPEAL . . . . . . . . . . . . . . . . . . . . . .   10

   II. STANDARDS OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

   III. THE DISTRICT COURT COMMITTED REVERSIBLE
      ERROR BY DENYING DEFENDANT CLAUSEN'S
      MOTION TO VACATE ALL CLAIMS, MOTIONS, ORDERS,
      AND PROCEEDINGS AGAINST HIM AND REFUSING
      TO DISMISS *NUNC PRO TUNC* AS VOID *AB INITIO* THE
      ACTS DONE BY THE PLAINTIFFS AND THE DISTRICT
      COURT IN VIOLATION OF 11 U.S.C. SECTION 362(a)(1) . . . . . . . . .   13

      A. The Ninth Circuit Embraces the Majority Interpretation of 11
         U.S.C. § 362(a)(1) That a Civil Commercial Action Filed Against

an Individual Subsequent to His Filing of an Active Bankruptcy Proceeding Is Void *Ab Initio*, and That Any Acts Taken in the Commercial Action Against the Individual Were Legally Invalid . . . . 14

B. The Majority Rule Embraced by the Ninth Circuit Furthers the Automatic Stay's Purposes – to Give Breathing Room to Financially-Pressed Debtors and Facilitate Consolidation of All Creditors' Claims in the Bankruptcy Court. . . . . . . . . . . . . . . . . . . 17

C. Plaintiffs Violated Their Duty to Terminate Their Action Against Clausen When the Bankruptcy Proceeding Was Brought to Their Attention . . . . . . . . . . . . . . . . . . . . . 19

IV. THE DISTRICT COURT ACTED WITHOUT AUTHORITY TO RETROACTIVELY VALIDATE ALL PROCEEDINGS AGAINST CLAUSEN BY ANNULLING THE AUTOMATIC STAY BECAUSE THAT CORE BANKRUPTCY POWER BELONGED EXCLUSIVELY TO THE BANKRUPTCY JUDGES. . . . . . 21

V. THE DISTRICT COURT ACTED WITHOUT AUTHORITY BECAUSE IT FAILED TO WITHDRAW THE REFERENCE TO THE LOCAL BANKRUPTCY JUDGES AND DID NOT MEET SECTION 157(d)'S STATUTORY REQUIREMENTS OF A "MOTION" FOR WITHDRAWAL AND "CAUSE" SHOWN . . . . . . . . 25

VI. THE DISTRICT ACTED WITHOUT AUTHORITY IN ANNULLING THE BANKRUPTCY AUTOMATIC STAY BECAUSE IT FAILED TO MEET SECTION 362(d)'S STATUTORY REQUIREMENTS OF A "REQUEST" MADE BY A "PARTY" IN INTEREST, "NOTICE" TO AFFECTED PARTIES," AND A "HEARING," WITH "CAUSE" SHOWN, AS WELL AS THE NATIONAL AND LOCAL BANKRUPTCY RULES' REQUIREMENT OF A WRITTEN MOTION FILED BY A PARTY FOR ANNULMENT OF THE AUTOMATIC STAY . . . . . . . 29

VII. THE DISTRICT COURT ACTED WITHOUT AUTHORITY AND ERRED AS A MATTER OF LAW IN RETROACTIVELY VALIDATING ALL THE VOID PROCEEDINGS AGAINST

CLAUSEN PREMISED ON THE EQUITABLE DOCTRINE
OF JUDICIAL ESTOPPEL. . . . . . . . . . . . . . . . . . . . . . . . . . . 36

VIII. THIS CASE SHOULD BE REASSIGNED
TO A DIFFERENT JUDGE ON REMAND. . . . . . . . . . . . . . . . . . . 39

CONCLUSION AND STATEMENT OF RELIEF SOUGHT. . . . . . . . . . . . . . . 50

ADDENDA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

Order Appealed From

District Court's April 29, 2026 Order Denying Defendant
Clausen's Motion to Vacate (ECF No. 127) (Appx 00001) . . . . . . . Add0001

Constitutions

U.S. Constitution Article 1, Section 8, Clause 4 . . . . . . . . . . . . . . . . . . . . . Add0012

U.S. Constitution, Fifth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0013

Statutes

11 U.S.C. § 102(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0014

11 U.S.C. § 105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0015

11 U.S.C. § 362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0016

11 U.S.C. § 362(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0016

11 U.S.C. § 362(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0016

11 U.S.C. § 362(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0020

28 U.S.C. § 157(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0024

28 U.S.C. § 157(b)(2)(G) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0024

28 U.S.C. § 157(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0025

28 U.S.C. § 1292(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0026

28 U.S.C. § 1292(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0026

28 U.S.C. § 1295(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0028

28 U.S.C. § 1338 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Add0029

28 U.S.C. § 2106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0031

35 U.S.C. § 281 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Add0032

<u>Rules</u>

Fed. R. App. P. 4(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0033

Fed. R. Bankr. P. 9013(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Add0038

Fed. R. Bankr. P. 9014(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Add0039

Fed. R. Civ. P. 52(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0042

Fed. R. Civ. P. 65(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0043

Fed. R. Civ. P. 81(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0046

E.D. Wash. Local Bankruptcy Rule 4001-1(a)(1)(B) . . . . . . . . . . . . . . Add0049

E.D. Wash. Local Bankruptcy Rule 4001-1(e)(1) . . . . . . . . . . . . . . . . .Add0051

E.D. Wash. Local Bankruptcy Rule 9013-1(b)(1). . . . . . . . . . . . . . . . . Add0052

E.D. Wash. Local Civil Rule 83.5(a). . . . . . . . . . . . . . . . . . . . . . . . . Add0055

<u>General Orders</u>

E.D. Wash. General Order No. 96-32-1 . . . . . . . . . . . . . . . . . . . . . . . Add0057

CERTIFICATE OF COMPLIANCE
WITH TYPE-VOLUME LIMITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

# TABLE OF AUTHORITIES

Pages

## Cases

*ACandS, Inc. v. Travelers Cas. & Surety Co.,*
435 F.3d 252 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 37

*Acosta v. Artuz,* 221 F.3d 117 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . 28

*Anderson v. City of Bessemer City, N.C.,*
470 U.S. 564, 105 S. Ct. 1504 (1985) . . . . . . . . . . . . . . . . . . . . . . . 12

*Bd. of Regents of State Coll. v. Roth,*
408 U.S. 564, 92 S. Ct. 2701 (1972) . . . . . . . . . . . . . . . . . . . . . . . . 35

*Bell v. Niagara Mohawk Power Corp.,* 173 Misc.2d 1042,
662 N.Y.S.2d 682 (Sup. Ct. N.Y. Co. 1997) . . . . . . . . . . . . . . . . . . 18

*Cadiz v. Bank of New York,* 188 F. App'x 654 (9th Cir. 2006) . . . . . . . . . . . . . 24, 25

*Cathey v. Johns-Manville Sales Corp.,*
711 F.2d 60 (6th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . .21, 37

*Cobell v. Kempthorne,* 455 F.3d 317 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . .41, 47

*Dam v. Waldron,* No. 2:24-CV-00417-SAB, Slip Op., 2025
WL 1069844 (E.D. Wash. April 9, 2025), *vacated
and remanded for a without-prejudice dismissal,*
Appeal No. 25-2459, Memorandum, 2026 WL
777414 (9th Cir. Mar. 19, 2026) (unpub.) . . . . . . . . . . . . . . . . . . . . . .*passim*

*Dam v. Waldron,* Appeal No. 25-2459, Memorandum,
2026 WL 777414 (9th Cir. Mar. 19, 2026) (unpub.) . . . . . . . . . . . . . . .*passim*

*Dam v. Waldron,* No. 2:24-cv-00417-SAB,
Amended Order Dismissing Case
(ECF No. 36) (E.D. Wash. April 7, 2026) . . . . . . . . . . . . . . . . . . . . . 41

*Degen v. United States,* 517 U.S. 820,
116 S. Ct. 1777 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210 (9th Cir. 2002). . . . . . . . . . . 13, 19, 20

*Fjeldsted v. Lien (In re Fjeldsted)*,
293 B.R. 12 (B.A.P. 9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . 33, 34

*Folex Golf Indus., Inc. v. O-TA Precision Indus. Co.*,
700 F. App'x 738 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . 49

*In re Achterberg*, 573 B.R. 819 (Bankr. E.D. Cal. 2017). . . . . . . . . . . . . . . . 20

*In re Aheong*, 276 B.R. 233 (B.A.P. 9th Cir. 2002) . . . . . . . . . . . . . . . . . 24

*In re Braught*, 307 B.R. 399 (Bankr. S.D.N.Y. 2004) . . . . . . . . . . . . . . . . 20, 21

*In re Canter*, 299 F.3d 1150 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . 26, 33, 38, 39

*In re Carr*, No. 18-80386, 2019 WL 7840665
(Bankr. M.D.N.C. Nov. 18, 2019) . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Complaint of Judicial Misconduct*,
425 F.3d 1179 (9th Cir. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . 39

*In re Cunningham*, 506 B.R. 334 (Bankr. E.D.N.Y. 2014). . . . . . . . . . . . . . . 22

*In re Gasprom, Inc.*, 500 B.R. 598 (B.A.P. 9th Cir. 2013),
*appeal dismissed*, No. 14-56427 (9th Cir. Oct. 2, 2014). . . . . . . . . . . . . 30

*In re HP Bennett, LLC*, No. 22-00106-ELG,
2023 WL 8881858 (Bankr. D.C. Dec. 22, 2023) . . . . . . . . . . . . . . . . . . 17

*In re Killmer*, 501 B.R. 208 (Bankr. S.D.N.Y. 2013) . . . . . . . . . . . . . . . . 22

*In re Melendez Colon*, 265 B.R. 639 (B.A.P. 1st Cir. 2001) . . . . . . . . . . . . . 35, 36

*In re Nat'l Env. Waste Corp.*, 129 F.3d 1052 (9th Cir. 1997) . . . . . . . . . . . . 24

*In re Related Asbestos Cases*, 23 B.R. 523
(Bankr. N.D. Cal. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 37, 38

*In re Schwartz*, 954 F.2d 569 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*In re Simmons*, 200 F.3d 738 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . 27, 33

*In re Sucre*, 226 B.R. 340 (Bankr. S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . 21

*In re Valentine*, 648 B.R. 324
 (Bankr. E.D. Cal. 2022) (Memo.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Yagman*, 796 F.2d 1165 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . 50

*In re 222 Liberty Assocs.*, 110 B.R. 196 (Bankr. E.D. Pa. 1990) . . . . . . . . . . 16

*Kalb v. Feuerstein*, 308 U.S. 433, 60 S. Ct. 343 (1940) . . . . . . . . . . . . . . . 17

*Kassbaum v. Steppenwolf Productions, Inc.*,
 236 F.3d 487 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*KST Data, Inc. v. DXC Tech. Co.*, 980 F.3d 709 (9th Cir. 2020) . . . . . . . . . . 27

*Lamle v. Mattel, Inc.*, 394 F.3d 1355 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . 11

*Landis v. Washington State Major League Baseball Stadium*
 *Pub. Facilities Dist.*, 11 F.4th 1101 (9th Cir. 2021) . . . . . . . . . . . . . . . 11

*Law v. Siegal*, 571 U.S. 415, 134 S. Ct. 1188 (2014) . . . . . . . . . . . . . . . 36, 38

*Little Texas, Inc. v. Buchen*, 319 Ill. App. 3d 78,
 744 N.E.2d 348 (Ill. App. 3 Dist. 2001) . . . . . . . . . . . . . . . . . . . . . . . 15

*Lugo v. Keane*, 15 F.3d 29 (2d Cir. 1994) (*per curiam*) . . . . . . . . . . . . . 28, 29

*M.D. v. Abbott*, 119 F.4th 373 (5th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . 44

*Maritime Elec. Co. v. United Jersey Bank*,
 959 F.2d 1194 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Najjar v. Salameh*, 787 F. Supp.3d 8 (D.N.J. 2025) . . . . . . . . . . . . . . . . . . 33

*Norse v. City of Santa Cruz*,
 629 F.3d 966 (9th Cir. 2010) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . . 27

*Norwest Bank Worthington v. Ahlers,*
485 U.S. 197, 108 S. Ct. 963 (1988) . . . . . . . . . . . . . . . . . . . . . . . . 36

*Nozzi v. Hous. Auth. of City of L.A.,*
806 F.3d 1178 (9th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . 46

*Ritzen Group, Inc., v. Jackson Masonry, LLC,*
589 U.S. 35, 140 S. Ct. 582 (2020) . . . . . . . . . . . . . . . . . . . . .24, 33

*Roman Catholic Archdiocese of San Juan*
*v. Acevido Feliciano, 589 U.S. 57,*
140 S. Ct. 696 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Rosenberg v. DVI Receivables XIV, LLC,*
818 F.3d 1283 (11th Cir. 2016). . . . . . . . . . . . . . . . . . . . .30, 31

*Select Portfolio Servicing, Inc. v. Worobec,*
178 So.3d 971, 2015 WL 7781609
(D. Ct. App. Fla. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Siegel v. Fitzgerald, 596 U.S. 464,*
142 S. Ct. 1770 (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Smith v. Mulvaney, 827 F.2d 558 (9th Cir. 1987)* . . . . . . . . . . . . . . . . . . 40

*Snider v. Melindez, 199 F.3d 108 (2d Cir. 1999).* . . . . . . . . . . . . . . . . . 28

*Tooling, Mfg. & Techs. Ass'n v. Hartford Fire*
*Ins. Co.,* No. 08-CV-11812, 2010
WL 3464329 (E.D. Mich. Aug. 30, 2010). . . . . . . . . . . . . . . . . . 33

*TriMed, Inc. v. Stryker Corp.,* 608 F.3d 1333 (Fed. Cir. 2010) . . . . . . . . . . . .39, 40

*Trump v. Cook,* 609 U.S. ___, 146 S. Ct. 2234 (2026) . . . . . . . . . . . . . . . 35

*U.S. Bank Nat. Ass'n v. Vill. at Lakeridge, LLC,*
583 U.S. 387, 138 S. Ct. 960 (2018) . . . . . . . . . . . . . . . . . . . . 12

*United States v. Ferguson,* 624 F.2d 81 (9th Cir. 1980) . . . . . . . . . . . . . . 50

*United States v. Gupta,* 572 F.3d 878 (11ᵗʰ Cir. 2009) . . . . . . . . . . . . . . . . . . . . 46, 50

*United States v. Hinkson,*
   585 F.3d 1247 (9ᵗʰ Cir. 2009) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*United States v. Jacobs,* 855 F.2d 652 (9ᵗʰ Cir. 1988) . . . . . . . . . . . . . . . . . . 47

*United States v. Kittson,* 161 F.4ᵗʰ 619 (9ᵗʰ Cir. 2025). . . . . . . . . . . . . . . . . . 11

*United States v. Lanier,* 988 F.2d 284 (6ᵗʰ Cir. 2020) . . . . . . . . . . . . . . . . . . 48

*United States v. Sears, Roebuck & Co.,*
   785 F.2d 777 (9ᵗʰ Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*United States v. Torkington,* 874 F.2d 1441 (11ᵗʰ Cir. 1989). . . . . . . . . . . . . 46

*United States v. U.S. Gypsum Co.,*
   333 U.S. 364, 68 S. Ct. 525 (1948) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.,*
   830 F.3d 1335 (Fed. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*VersaTop Support Sys., LLC v. Georgia Expo, Inc.,*
   921 F.3d 1364, 1368 (Fed. Cir. 2019). . . . . . . . . . . . . . . . . . . . . . 1, 11

## Constitutions

United States Constitution, Article 1,
   Section 8, Clause 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

United States Constitution, Fifth Amendment. . . . . . . . . . . . . . . . . . . . . . 35

## Statutes

11 U.S.C. § 102(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

11 U.S.C. § 105. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

11 U.S.C. § 362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 22

11 U.S.C. § 362(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

11 U.S.C. § 362(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

11 U.S.C. § 362(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*passim*

11 U.S.C. § 362(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 157. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 157(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 23

28 U.S.C. § 157(b)(2)(G) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

28 U.S.C. § 157(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*passim*

28 U.S.C. § 1292(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1292(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1295(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1338. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2106. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

35 U.S.C. § 281. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## **<u>Rules</u>**

Fed. R. App. P. 4(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Bankr. P. 9013(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 31

Fed. R. Bankr. P. 9013(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Fed. R. Bankr. P. 9014(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 31

Fed. R. Civ. P. 52(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. P. 65(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Fed. R. Civ. P. 81(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

E.D. Wash. Local Bankruptcy Rule 4001-1(a)(1)(B) . . . . . . . . . . . . . . . . . . . 8, 31

E.D. Wash. Local Bankruptcy Rule 4001-1(e)(1) . . . . . . . . . . . . . . . . . . . . . . 32

E.D. Wash. Local Bankruptcy Rule 9013-1(b)(1). . . . . . . . . . . . . . . . . . . . 8, 32

E.D. Wash. Local Civil Rule 83.5(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**General Orders**

E.D. Wash. General Order No. 96-32-1 . . . . . . . . . . . . . . . . . . . . . . . . . 31

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## NOTICE OF RELATED CASE INFORMATION

**Case Number** 2026-1918

**Short Case Caption** Hammerless Tools LLC v. Clausen

**Filing Party/Entity** Defendant-Appellant Jonathan Clausen

---

**Instructions:** Do not duplicate information. The notice must only be filed at the time of filing the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. *See* Fed. Cir. R. 47.5(b). Attach additional pages as needed. This notice must not be included in a motion, petition, related response, or brief; please only include the Certificate of Interest (Form 9) in those documents.

---

1. **Related or prior cases.** Provide the case title, case number, and originating tribunal for each case. Fed. Cir. R. 47.5(b)(1).

In re Jonathan David Clausen and Jodi Lynn Clausen, Debtors, Case No. 24-01739-FPC13 (Bankr. E.D. Wash.).

☐ Additional pages attached

FORM 9A. Notice of Related Case Information

Form 9A (p. 2)
March 2023

2. **Names of all parties involved in the cases listed above.** Do not duplicate the names of parties. Do not relist the case information. Fed. Cir. R. 47.5(b)(2)(A).

Jonathan David Clausen, Debtor

Jodi Lynn Clausen, Debtor

Hammerless Tools, LLC, Creditor

Diamond Asphalt Paving, Inc., Creditor

WBL SPO I, LLC, Creditor

World Business Lenders, LLC, Creditor

Swift Financial LLC, Creditor

Fidelity Bank, Creditor

☐ Additional pages attached

3. **Names of all law firms, partners, and associates in the cases listed above.** Do not duplicate the names of law firms, partners, and associates. Do not relist case information and party names. Fed. Cir. R. 47.5(b)(2)(B).

See attached Insert A.

☑ Additional pages attached

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/23/2026

Signature: /s/Stephen L. Sulzer

Name: Stephen L. Sulzer

INSERT A

Attorney for Debtors

Rebecca J. Sheppard
Sheppard Law Office PC
16114 E. Indiana Avenue, Suite 205
Spokane, WA 99216
rjs@sheppardlaw.com

Attorney for Hammerless Tools, LLC

Caleb Hatch
Lee & Hayes
601 W Riverside Ave, Ste 1400
Spokane, WA  99216
caleb.hatch@leehayes.com

Attorney for Creditors WBL SPO I, LLC and World Business Lenders, LLC

Darren R. Krattli
Eisenhower Carlson PLLC
909 A Street
Suite 1200
Tacoma, WA 98402
dkrattli@eisenhowerlaw.com

Matthew C. Niemela
RAMSDEN, MARFICE, EALY & DE SMET, LLP
700 Northwest Boulevard
P.O. Box 1336 Coeur d'Alene, Idaho 83816-1336
mniemela@rmedlaw.com

Attorney for Creditor Diamond Asphalt Paving, Inc.

Darren Michael Digiacinto
Winston & Cashatt
601 Riverside Ave., Suite 1900

1

Spokane, WA 92201
dmd@winstoncashatt.com

<u>Attorney for Swift Financial LLC</u>

Jesus Miguel Palomares
Miller Nash LLP
605 5th Ave S
Suite 900
Seattle, WA 98104
Jesus.palomares@millernash.com

<u>Attorney for Fidelity Bank</u>

Nathan F. Smith
Malcolm & Cisneros, A Law Corporation
2112 Business Center Drive
Irvine, CA 92861
nathan@mclaw.org

2

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System and served a true and correct copy of the foregoing by email to counsel for Plaintiffs-Appellees Hammerless Tools LLC and Eight Eighteen LLC as set forth below:

Caleb Hatch, WSBA #51292
Johanna R. Tomlinson, WSBA #57582
Lee & Hayes, P.C.
601 W. Riverside Ave., Suite 1400
Spokane, WA 99201
Email: caleb.hatch@leehayes.com
Email: johanna.tomlinson@leehayes.com

Signed at Reston, Virginia this 23rd day of June 2026.

/s/ *Stephen L. Sulzer*
Stephen L. Sulzer

## JURISDICTIONAL STATEMENT

The Complaint alleges a civil action for, *inter alia,* infringement of United States Patent No. D981199, which arises under the patent laws of the United States, 35 U.S.C. § 281. The United States District Court for the Eastern District of Washington has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1292(c)(1) and 1295(a)(1) because the Complaint included a claim created by federal patent law. *E.g., VersaTop Support Sys., LLC v. Georgia Expo, Inc.,* 921 F.3d 1364, 1368 (Fed. Cir. 2019) ("The existence of a single claim created by federal patent law is sufficient to trigger the Federal Circuit's exclusive appellate jurisdiction over the entire case; the fact that a complaint also asserts non-patent claims, or that non-patent issues will predominate, is immaterial.").

In addition, this Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), which gives it jurisdiction over appeals from an "[i]nterlocutory order of the district courts of the United States . . . continuing . . . , or refusing to dissolve or modify injunctions . . . ." The District Court's Order dated April 29, 2026 (Appx0001) refused to dissolve or modify its preliminary injunction against individual Defendant Jonathan Clausen (Appx0567) and a permanent injunction which includes him as an officer, agent, or representative of Defendants Clausen, Inc., AR-TT LLC, or Lilac City LLC (Appx0667, Appx0676). Without immediate appeal of right from the

1

District Court's April 29, 2026 Order, the Court's refusal to modify or dissolve its injunctive relief against Clausen will cause him serious and irreparable harm, as it has the effect of completely shutting down Clausen's business with respect to the tools at issue before the District Court.

Clausen's Notice of Appeal of so much of the District Court's April 29, 2026 Order as denied Clausen's motion to vacate and dismiss *nunc pro tunc* as void *ab initio* all claims, motions, orders, and proceedings against Clausen – including preliminary and permanent injunctions against Clausen – was filed on May 28, 2026, *i.e.,* within 30 days of the April 29, 2026 Order refusing to dissolve the injunctive relief against Clausen. (Appx1483.) Accordingly, the Notice of Appeal was timely filed within the 30-day period prescribed by Federal Rule of Appellate Procedure 4(a)(1)(A), making this appeal timely noticed.

## STATEMENT OF THE ISSUES

1. Whether the District Court committed reversible error in entering an order (Appx0001) denying Defendant-Appellant Clausen's motion to vacate (Appx0869).

2. Whether the District Court acted without subject matter jurisdiction and committed reversible error by entering an order on February 21, 2025 (Appx0366) staying its proceedings notwithstanding that the plaintiffs' complaint was filed after a Chapter 13 bankruptcy had been commenced by Defendant-Appellant Jonathan Clausen and was still pending.

3. Whether the District Court acted without subject matter jurisdiction, usurped the jurisdiction of the bankruptcy court, and committed reversible error (a) by entering Appx0001 and an order on September 22, 2025 (Appx0467) lifting its stay, effectively granting the plaintiffs retroactive relief from the automatic stay after the bankruptcy proceeding had been dismissed, and (b) effectively annulling the bankruptcy automatic stay without proper exercise of bankruptcy jurisdiction, including the absence of express withdrawal pursuant to 28 U.S.C. Section 157 of the reference to bankruptcy judges of the district provided by Local Civil Rule 83.5 of the District Court, the absence of any express motion or cross-motion of any party, and the absence of cause shown with the bankruptcy case having been dismissed months previously.

4. Whether the District Court committed reversible in relying on the equitable doctrine of judicial estoppel to validate retroactively post-petition claims against an individual defendant notwithstanding the existence of a governing statutory framework including 11 U.S.C. Section 362(a)(1).

5. Whether the regional Ninth Circuit factors for reassignment are met, so that this Court should direct that upon remand, the Clerk of the District Court should randomly reassign the remaining case to a District Court judge other than the assigned Chief Judge.

## STATEMENT OF THE CASE

The action below was brought by Hammerless Tools, LLC, and Eight Eighteen, LLC (hereinafter collectively "Plaintiffs-Appellees" or "Plaintiffs") against individual defendant Jonathan Clausen (hereinafter "Defendant-Appellant Clausen" or "Clausen") and company defendants Clausen, Inc., AT-TT LLC, and Lilac City, LLC (hereinafter collectively the "company defendants" and together with Clausen referred to as the "Defendants"). Alleged are claims that the Defendants infringed a design patent and trademarks, plus various state-law claims.

The action was commenced by a Complaint (Appx0006) filed on December 10, 2024 by plaintiffs Hammerless Tools LLC and Eight Eighteen LLC (hereinafter "Plaintiffs"), and the subsequent issuance of Summonses and their employment by Plaintiffs' counsel. However, on December 10, 2024, there was active a Chapter 13 bankruptcy proceeding on behalf of Clausen and his wife Jodi Lynn Clausen (hereinafter collectively the "Clausens") in the U.S. Bankruptcy Court for the Eastern District of Washington, Case No. 24-01739-FPC, Chapter 13, *In re Jonathan David Clausen and Jodi Lynn Clausen, Debtors*. The Clausens had voluntarily commenced that proceeding by their bankruptcy attorney filing a Chapter 13 petition on October 24, 2024.

On February 11, 2025, Defendants' then-counsel provided Plaintiffs and the Court with written notice that on October 24, 2024, Clausen had declared bankruptcy

4

under Chapter 13 in the Bankruptcy Court for the Eastern District of Washington. (Appx0365.)[1] Notwithstanding the legal authorities requiring dismissal of the action against Clausen *sua sponte* (discussed in detail *infra*), the Court entered a stay on February 21, 2025. (Appx0366.) This was directly contrary to the purpose behind Section 362(a)(1) to give the debtor (Clausen) maximum protection against additional financial pressures.

Plaintiffs also violated their duty (discussed in detail *infra*) to expeditiously dismiss their action against Clausen upon learning of the pending bankruptcy proceeding on February 11, 2025. Their failure to promptly dismiss the action against Clausen led to disastrous results for Clausen in the District Court.

With Clausen effectively unable to pay for legal representation, it fell to the Plaintiffs to inform the Court on September 19, 2025 that the bankruptcy proceeding had been dismissed. (Appx0457, Appx0458.) On September 22, 2025, the District Court granted Plaintiffs' motion (Appx0457) to lift its stay. (Appx0466, Appx0467.) Further drained by Plaintiffs' and the District Court's failure to promptly dismiss the

---

[1] At this point in the case, Clausen's then-counsel effectively abdicated his responsibility to provide competent representation if, as the record ambiguously indicates, he suggested that the District Court enter an order staying its proceedings. (*See* Appx0366.) As discussed in detail *infra*, if Defendants' then-counsel suggested entry of a stay, it did nothing to relieve the District Court or Plaintiffs' counsel of their legal duty to promptly dismiss the action against Clausen. From that point on, Clausen's then-counsel ceased competently representing Clausen before the District Court.

5

claims against him, on September 25, 2025, Clausen was also hit with a motion by his then-counsel to withdraw for non-payment of fees. (Appx0526, Appx0529.) That motion was granted on September 30, 2025. (Appx0532.)

With the Defendants unrepresented and unable to effectively defend themselves, Plaintiffs immediately commenced aggressive motion practice against the Defendants seeking a preliminary injunction against them.[2] Even though the Defendants have good defenses on the merits with respect to all of Plaintiffs' claims, the Defendants never got the chance to present them through counsel, and got buried beneath an avalanche of aggressive motion practice and adverse rulings by the District Court on the issue of preliminary relief. Not until March 2026 was Clausen able to engage new counsel (Appx0739, Appx0740) and move for an order vacating and dismissing *nunc pro tunc* all claims, motions, orders, and proceedings against him, on the grounds that they were all void *ab initio,* legally-invalid acts done in violation of the automatic stay provided by 11 U.S.C. § 362(a)(1). (Appx0869.)

On April 29, 2026, in the Order challenged here, the District Court erroneously denied Clausen's motion to vacate. (Appx0001.) The Order is unpublished and its docket number is ECF No. 127.

---

[2]  The detailed procedural history of the District Court action, including the disastrous results of the Court's temporary relief proceedings, is described in Appx0924, ¶¶ 5-31, which are incorporated herein by reference.

## SUMMARY OF THE ARGUMENT

The portions of the District Court's April 29, 2026 Order (Appx0001 at Appx0002-0004, Appx0005) which denied Defendant Clausen's motion to vacate and dismiss *nunc pro tunc* as void *ab initio* all claims, motions, orders, and proceedings ("all proceedings") against Clausen as post-petition acts violative of the bankruptcy automatic stay, 11 U.S.C. § 362(a)(1), should be reversed, and all proceedings against Clausen should be dismissed *nunc pro tunc,* but without prejudice.

The Order got started on the right foot by appearing to accept, per controlling regional bankruptcy law of the Ninth Circuit, that all the post-petition proceedings against Clausen were void *ab initio,* and not merely voidable. The Order at Appx0002 acknowledged that "[i]t is true that violations of the automatic stay are void and of no effect. *See In re Schwartz,* 954 F.2d 569, 571 (9th Cir. 1992)." But the Order thereafter *sua sponte* proceeded to validate retroactively all proceedings against Clausen through a panoply of highly prejudicial legal errors.

A whole set of errors infected the District Court's annulment of the bankruptcy stay under 11 U.S.C. § 362(d). The first Bankruptcy Code errors relate to the District Court's failure to properly withdraw from the local bankruptcy court judges the issues relating to annulment of the bankruptcy stay. Local Civil Rule 83.5(a) referred the core bankruptcy power for annulment of the automatic stay to the local bankruptcy judges as Congress allowed by 28 U.S.C. § 157(a). The District Court

7

failed to withdraw the reference in accordance with the minimum statutory requirements for withdrawal mandated by 28 U.S.C. § 157(d). Section 157(d) requires a "motion" and "cause" shown as predicates for withdrawal, but neither of those requirements were satisfied here.

Even if somehow the reference were correctly withdrawn (which it was not), the challenged Order suffers from a second collection of major Bankruptcy Code errors. The Order failed to meet the statutory requirements for annulment of the automatic stay, of a "request" made by a party in interest, "notice" to affected parties, and annulment only after a "hearing held" and "for cause" shown. 11 U.S.C. § 362(d)(1). Nor were bankruptcy rules observed following any withdrawal of the reference, including the requirement of a written freestanding motion on 14 days' notice filed by a party for annulment of the bankruptcy stay. Fed. R. Bankr. P. 9013(a), 9014(a); Local Bankr. R. 40001-1(a)(1)(B), 9013-1(b)(1).

These errors separately and together also constitute a fundamental denial of due process to Clausen, as there was no motion for annulment of the automatic stay or opportunity to be heard before withdrawal of the reference and annulment of a stay that would otherwise have voided all post-petition proceedings against him.

In addition, separate and apart from the Bankruptcy Code, in an alternative holding, the District Court sought to make all proceedings against Clausen not void by erroneously invoking the doctrine of judicial estoppel. It was legal error for the

8

District Court to assume, as it apparently did, that equity could sidestep the Congressional scheme for annulment of the Bankruptcy Code's automatic stay.

Even the Order's findings that Clausen "engaged in unreasonable and inequitable conduct" and "play[ed] fast and loose" with the District Court would be unsustainable had Clausen been afforded due process. The District Court apparently took no account that Clausen was effectively acting *pro se* after being unable to afford counsel, with no evidence in the record that he understood the automatic stay's effect on the District Court action against him. Had Clausen been given an opportunity to be heard, he would have shown that at no time did he engage in unreasonable or inequitable conduct or "play fast and loose" with the District Court.

Finally, consideration of several factors (discussed in Part VIII *infra*) necessitate direction on remand of a random reassignment by the Clerk of the District Court to a different Judge for the remainder of the case: (1) the District Court's stubbornly-held, highly negative views of Clausen; (2) the District Court's repetitive legally-erroneous rulings against Clausen, and its repeated acts grossly outside the authority provided by the Bankruptcy Code and in violation of fundamental due process of law; and (3) the unadvanced stage of the remainder of this case.

## ARGUMENT

As described above, this action was commenced by Plaintiffs filing their Complaint on December 10, 2024, and the subsequent issuance of Summonses and

their employment by Plaintiffs' counsel. However, when Plaintiffs' Complaint was filed on December 10, 2024, there was active a Chapter 13 bankruptcy proceeding which had been commenced on October 24, 2024 by the Clausens in the U.S. Bankruptcy Court for the Eastern District of Washington, *In re Jonathan David Clausen and Jodi Lynn Clausen, Debtors,* Case No. 24-01739-FPC.

The action against individual Defendant Clausen should not have been filed or continued after it was filed on December 10, 2024, when on that date was active his Chapter 13 bankruptcy proceeding, which was previously commenced by its filing on October 24, 2024. As shown in Part III *infra,* under applicable Ninth Circuit law, the suit against Clausen was void *ab initio* as violative of the automatic stay imposed by 11 U.S.C. § 362(a)(1), and all post-petition acts taken against Clausen by the District Court (and the Plaintiffs) were legally invalid. In addition, as shown in Parts IV-VII *infra,* the District Court erred by preemptively deciding (Appx0003-Appx0004) that Plaintiffs were "entitled" to a retroactive lifting of the automatic stay, and by wrongly applying judicial estoppel to support its decision.

In short, the District Court erred as a matter of law in its Order below when it denied Defendant Clausen's motion (Appx0869) to vacate.

## I. THE COURT SHOULD APPLY NINTH CIRCUIT LAW TO THE ISSUES IN THIS APPEAL

In a case like this one involving a design patent claim, trademark claims, state law claims, and bankruptcy-related procedural issues, the Federal Circuit applies to

10

the non-patent issues the discernible law of the regional circuit housing the district court. *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.,* 830 F.3d 1335, 1338 (Fed. Cir. 2016) ("We apply our law to substantive and procedural issues unique to and intimately involved in federal patent law, and we apply regional circuit law to other substantive and procedural issues."); *VersaTop Support Sys., LLC v. Georgia Expo, Inc.,* 921 F.3d 1364, 1368 (Fed. Cir. 2019). Thus, this Court should apply the law of the Ninth Circuit (in which the District Court is located) with respect to interpretation, application, and violation of the Bankruptcy Code's automatic stay, as these are not matters unique to or intimately involved with patent law.

## II. STANDARDS OF REVIEW

Because this Court applies the law of the regional circuit to procedural issues not unique to its jurisdiction, it should also apply the Ninth Circuit's standards of review to the issues on appeal. *See, e.g., Lamle v. Mattel, Inc.,* 394 F.3d 1355, 1358 (Fed. Cir. 2005).

The Ninth Circuit reviews all questions of law *de novo,* meaning without deference to the District Court. *See, e.g., Landis v. Washington State Major League Baseball Stadium Pub. Facilities Dist.,* 11 F.4th 1101, 1105 (9th Cir. 2021); *United States v. Kittson,* 161 F.4th 619, 621 (9th Cir. 2025).

Pursuant to Federal Rule of Civil Procedure 52(a)(6), a district court's findings of fact are not to be set aside unless they are clearly erroneous. A finding is clearly

erroneous when, although there is evidence to support it, on the entire evidence the reviewing court is left with a definite and firm conviction that a mistake has been committed. *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S. Ct. 525, 542 (1948); *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985).

When a case presents a mixed question of law and fact – that is, whether admitted or proven facts satisfy a legal standard that is not in dispute – the Ninth Circuit has applied, and the Supreme Court has approved, a predominance test. If legal questions predominate, the *de novo* standard applies; if factual questions predominate, the clearly erroneous standard applies. *United States v. Hinkson,* 585 F.3d 1247, 1259-60 (9th Cir. 2009) (*en banc*); *U.S. Bank Nat. Ass'n v. Vill. at Lakeridge, LLC,* 583 U.S. 387, 138 S. Ct. 960, 966-69 (2018). The key inquiry is whether the application of law to fact requires an essentially factual inquiry rooted in the experience of the factfinder, or whether it requires consideration of legal concepts and value judgments – the latter calling for *de novo* review. *Hinkson,* 585 F.3d at 1259-60; *U.S. Bank Nat. Ass'n,* 138 S. Ct. at 966-67.

In reviewing the District Court's order abuse of discretion, the Ninth Circuit has held that "[a] district court "abuses its discretion when it makes an error of law, rests its decision on clearly erroneous findings of fact, or when we are left with 'a definite and firm conviction that the district court committed a clear error of

12

judgment.'" *Hinkson,* 585 F.3d at 1260. But the Ninth Circuit elaborated further on that standard in *Hinkson* by adopting a two-step test to determine whether a district court has abused its discretion. The Ninth Circuit explained that its first step asks whether the district court identified and applied the correct legal rule. If the district court applied an incorrect legal standard, it is reversed for abuse of discretion. *Id.* at 1261-62. If the district court applied the correct legal standard, the second step asks whether the court's application of that standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts of record. *Id.* at 1262.

### III. THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BY DENYING DEFENDANT CLAUSEN'S MOTION TO VACATE ALL CLAIMS, MOTIONS, ORDERS, AND PROCEEDINGS AGAINST HIM AND REFUSING TO DISMISS *NUNC PRO TUNC* AS VOID *AB INITIO* THE ACTS DONE BY THE PLAINTIFFS AND THE DISTRICT COURT IN VIOLATION OF 11 U.S.C. SECTION 362(a)(1)

All claims motions, orders, and proceedings against individual Defendant Clausen should have been vacated and dismissed *nunc pro tunc* as void *ab initio,* legally-invalid acts done by the Plaintiffs and the District Court in violation of the automatic stay provisions in Section 362(a)(1) of the Bankruptcy Code, 11 U.S.C. § 362(a)(1).[3] Section 362(a)(1) is described in legal parlance as providing for an "automatic stay" when a bankruptcy proceeding is filed. But the statute's legal effect

---

[3] Whether Section 362(a)(1)'s automatic stay provisions have been violated is a question of law. *Eskanos & Adler, P.C. v. Leetien,* 309 F.3d 1210, 1213 (9th Cir. 2002).

13

as interpreted by the Ninth Circuit and the majority of courts nationwide goes much farther than just imposing a "stay" of proceedings in the usual legal sense.

The Ninth Circuit Court of Appeals recognized the operative legal principle in *Dam v. Waldron*,[4] a case reflective of its applicable law (and the overwhelming majority rule of federal and state courts throughout the nation): A post-petition "[c]omplaint constitutes a violation of the automatic stay in the Bankruptcy Case and is therefore void." As the Ninth Circuit observed in *Dam,* "the complaint was 'of no effect'" as "'violations of the automatic stay are void, not voidable.'" 2026 WL 777414 at *2, quoting *In re Schwartz,* 954 F.2d 569, 571, 572 (9th Cir. 1992).

### A. The Ninth Circuit Embraces the Majority Interpretation of 11 U.S.C. § 362(a)(1) That a Civil Commercial Action Filed Against an Individual Subsequent to His Filing of an Active Bankruptcy Proceeding Is Void *Ab Initio*, and That Any Acts Taken in the Commercial Action Against the Individual Were Legally Invalid

*Schwartz* is the leading Ninth Circuit precedent regarding the effect of Section 362(a)(1) and "clarifie[d] this area of the law by making clear that violations of the automatic stay are void, not voidable." 954 F.2d at 571.[5] As pointed out in *Schwartz,*

---

[4] No. 2:24-CV-00417-SAB, Slip Op., 2025 WL 1069844 at * 2-3 (E.D. Wash. April 9, 2025), *vacated and remanded for dismissal without-prejudice,* Appeal No. 25-2459, Memorandum, 2026 WL 777414 (9th Cir. March 19, 2026) (unpub.).

[5] *Schwartz* held that an IRS tax assessment issued post-petition and unaware of the bankruptcy filing was void, and that it could not later be revived. *Id.* at 570-71.

14

"The majority of courts have long stated that violations of the automatic stay are void and of no effect." *Id.* at 572, citing cases.

From the west coast to the east, the majority rule is that a when a "complaint was filed in contravention of the automatic stay arising from . . . earlier filing of a petition for bankruptcy," such a complaint is "'void and without effect' even when there is no actual notice of the stay." *Select Portfolio Servicing, Inc. v. Worobec*, 178 So.3d 971, 2015 WL 7781609 (D. Ct. App. Fla. 2015) (dismissing the action).[6]

To the same effect is the District Court's decision in *Dam*, which rests on solid footing, as it relies upon the controlling Ninth Circuit decision in *Schwartz*. *Dam*, 2025 WL 1069844 at *2 ("A violation of the automatic stay is void."), citing *Schwartz*. And the Ninth Circuit's holdings in *Dam*, while non-precedential, expressed the same view: "[T]he complaint was 'of no effect'" as "[v]iolations of the automatic stay are void, not voidable." 2026 WL 777414 at *2, quoting *Schwartz*.

---

[6] That includes state courts. Even more recently than the survey of courts reported in *Schwartz*, decisions have come down like *Little Texas, Inc. v. Buchen*, 319 Ill. App. 3d 78, 744 N.E.2d 349 (Ill. App. 3 Dist. 2001). There the Illinois Appellate Court cited *Schwartz* and ruled on facts – like Clausen's here – that where defendant "Buchen filed his bankruptcy petition," and the plaintiff "Little Texas filed its complaint against Buchen for damages two months later," [t]he fact that Buchen's bankruptcy petition was later dismissed is of no consequence[,]" as "the automatic stay provision voided Little Texas' complaint at its filing." 744 N.E.2d at 351. The *Buchen* appellate court made the right call that "[a]s the stay is 'automatic,' no further action on Buchen's part was required," and "[t]he stay applied to Little Texas whether or not it had notice of the [bankruptcy] filing." *Id.*

15

Within the Ninth Circuit, bankruptcy jurisprudence is that "all acts that violate the automatic stay are void without regard to knowledge or notice of a bankruptcy case or the automatic stay." *In re Valentine,* 648 B.R. 324, 333 (Bankr. E.D. Cal. 2022) (Memo.). There, the Bankruptcy Court denied a motion for relief from the stay, rejected the notion that so-called "technical" (*i.e.,* unknowing) violations of a bankruptcy stay were not void, and held that numerous post-petition acts in state court violative of the automatic stay were void *ab initio* and of no effect. 648 B.R. at 332, 333-34.[7]

The bankruptcy courts further hold that the courts are obliged to act *sua sponte* to dismiss actions brought in violation of the automatic stay even where the debtor did not request that relief. *See In re 222 Liberty Assocs.,* 110 B.R. 196, 200 (Bankr. E.D. Pa. 1990); *In re Carr,* No. 18-80386, 2019 WL 7840665 at *1-2 (Bankr. M.D.N.C. Nov. 18, 2019).

The same legal principles apply here. Plaintiffs' commercial action against Defendant Clausen was filed on December 24, 2024, when Clausen's Chapter 13 bankruptcy proceeding was active, having commenced some two months earlier on

---

[7] Notable also is that the Plaintiffs below appeared in Clausen's bankruptcy proceeding by the same counsel as in the action against Clausen. *See* their Notice of Appearance dated March 14, 2025 in the Clausens' bankruptcy case, appended as Exhibit B (Appx1179) to Clausen's Reply Memorandum below (Appx1159). But the represented Plaintiffs never moved the Bankruptcy Court to annul the automatic stay which voided all claims in this action against Clausen.

16

October 24, 2024. That commercial action could have been filed prior to the bankruptcy proceeding, but that was not done. Under *Schwartz,* the District Court was obligated to act *sua sponte* upon learning of the prior-filed bankruptcy proceeding. The District Court should have immediately dismissed the action, should not have entered a stay, and should not have re-started proceedings or permitted further motion practice against Clausen. *See In re HP Bennett, LLC*, No. 22-00106-ELG, 2023 WL 8881858 at *4 (Bankr. D.C. Dec. 22, 2023) ("[a]ny subsequent actions dependent upon an act that violates the automatic stay themselves also violate the automatic stay and are void."). The Court's resumption of proceedings and ongoing adverse rulings against Clausen were judicial acts without validity.

The U.S. Supreme Court indicated as much, construing the statutory predecessor to Section 362(a)(1)'s automatic stay, in *Kalb v. Feuerstein*, 308 U.S. 433, 438, 60 S. Ct. 343, 346 (1940): "[T]he action of the . . . Court was not merely erroneous but was beyond its power, void, and subject to collateral attack." That collateral attack was made by Defendant Clausen's motion below to vacate.

**B. The Majority Rule Embraced by the Ninth Circuit Furthers the Automatic Stay's Purposes – to Give Breathing Room to Financially-Pressed Debtors and Facilitate Consolidation of All Creditors' Claims in the Bankruptcy Court**

Courts such as the Ninth Circuit have interpreted the automatic stay provision of section 362(a)(1) consistent with its plain wording, which should have stopped the commencement or continuation of the action against Clausen, in part by

17

precluding the issuance or employment of court process. The courts have done this in a way that is consistent with and furthers the statute's purposes to give breathing room to financially-pressed debtors and to facilitate consolidation of all creditors' claims in the bankruptcy court. *See* 11 U.S.C. § 362(a)(1), (6).

A logical construction of the automatic stay appears in *Bell v. Niagara Mohawk Power Corp.*, 173 Misc.2d 1042, 662 N.Y.S.2d 682 (Sup. Ct. N.Y. Co. 1997):

> [T]he plain meaning of 11 USC § 362 is that the commencement of an action during the pendency of a bankruptcy proceeding is invalid. If the action is dormant until the lifting of the stay, the language in the statute stating that the commencement of an action is stayed would be superfluous and meaningless. Moreover, the purpose of the statute is to provide fundamental protection to the debtor from not only the continuation of actions already commenced but the commencement of new actions as well. . . .

173 Misc.2d at 1044, 662 N.Y.S.2d at 683-84 (citing *Schwartz*).

In voiding the commercial action against the debtor in *Bell,* the New York court took the same approach as the Court did in *Schwartz,* and thereby gave proper effect to the words in Section 362(a)(1), which (i) expressly block the issuance or employment of process, (ii) thereby render null and void the process served on Clausen in this action, and (iii) invalidate all actions taken against Clausen by Plaintiffs and the District Court. *Schwartz's* rule (applied in *Bell*) that suits brought in violation of the automatic stay are void *ab initio* is consistent with Section 362(a)(1)'s wording and Congress's purposes to give breathing room to financially-pressed debtors and facilitate consolidation of all creditors' claims in the bankruptcy court.

18

### C. Plaintiffs Violated Their Duty to Terminate Their Action Against Clausen When the Bankruptcy Proceeding Was Brought to Their Attention

Defendant Clausen's Notice of Pending Bankruptcy and Automatic Stay (Appx0365, *see* Appx0366) and the District Court's action in response to that notice indicate that notice of the active bankruptcy proceeding was conveyed by his then-counsel to Plaintiffs on February 11, 2025, including the salient fact that the bankruptcy case was filed on October 24, 2024. As the action against Clausen below was not filed until December 10, 2024, and it could have been filed prior to commencement of the bankruptcy proceeding, it unquestionably violated Section 362(a)(1).

Upon such notice, Plaintiffs had an immediate affirmative duty to discontinue the action against Clausen, rather than waiting for the District Court to stay it, as was erroneously done by the Court ten days later on February 21, 2025. (Appx0366.) As held by the Ninth Circuit in *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210 (9th Cir. 2002), "[c]onsistent with the plain and unambiguous meaning of the statute, and consonant with Congressional intent, . . . § 362(a)(1) imposes an affirmative duty to discontinue post-petition collection actions." 309 F.3d at 1215 (imposing damages for plaintiff's some-20-days' delay in dismissing a post-petition action).

But Plaintiffs did no such thing, waited for the District Court merely to stay the action, and when the Court erroneously did that, acquiesced in its pausing of the

case. Then, on September 19, 2025, Plaintiffs filed a motion to lift the stay (Appx0457), which the District Court granted on September 22, 2025 (Appx0466). Plaintiffs immediately launched into aggressive motion practice against Clausen, beginning on September 23, 2025. (*E.g.,* Appx0468 *et seq.*)[8] Until this appeal was filed on May 28, 2026, Plaintiffs (and the District Court) persisted in acting against Clausen, even though the suit against Clausen was void *ab initio.*

While Plaintiffs may argue that their actions were consonant with the District Court's imposition of a stay, that is not what *Leetien* requires. *Leetien* required them to expeditiously discontinue their action against Clausen in the District Court. 309 F.3d at 1212, 1215-16.[9] Plaintiffs failed to do so and relentlessly continued litigating

---

[8] With the case re-started and Defendant Clausen financially unable to pay his counsel, he was beset almost immediately on September 25, 2025, with a motion for counsel's withdrawal (Appx0526), which was granted by the Court (Appx0532), leading Clausen to have to proceed *pro se,* but ineffectively, for his defense.

[9] In *In re Achterberg,* 573 B.R. 819 (Bankr. E.D. Cal. 2017), under the heading "The Person Violating the Automatic Stay Has the Burden of Avoiding the Violation, and When a Violation Occurs, to Remedy Such Violation", the court instructed:

> The automatic stay is just that, automatic, with no obligation on a debtor to affirmatively enforce the stay for it to be effective. . . .

> The automatic stay imposes an affirmative duty of compliance by the creditor. . . . The automatic stay imposes an affirmative duty to discontinue actions in violation of the stay.

573 B.R. at 830 (omitting case citations in footnotes).

Stated more succinctly, "[u]pon learning of a bankruptcy filing, a creditor has an affirmative duty to return the debtor to a status quo position as of the time of the

against Clausen for more than a year after receiving notice of Clausen's bankruptcy proceeding in February 2025, with crushing effects on Clausen in the District Court.

## IV. THE DISTRICT COURT ACTED WITHOUT AUTHORITY TO RETROACTIVELY VALIDATE ALL PROCEEDINGS AGAINST CLAUSEN BY ANNULLING THE AUTOMATIC STAY BECAUSE THAT CORE BANKRUPTCY POWER BELONGED EXCLUSIVELY TO THE EASTERN DISTRICT'S BANKRUPTCY JUDGES

When the District Court was confronted by Clausen in his motion to vacate (Appx0869) with the Court's legal error (*i.e.,* treating the suit against Clausen as dormant and revivable), the District Court acted *sua sponte* to annul the automatic stay, in a legally-erroneous effort to retroactively validate all proceedings against Clausen. The District Court acted without legal authority in *sua sponte* annulling the Bankruptcy Code's automatic stay pursuant to 11 U.S.C. § 362(d), for two reasons.

First, Section 362(d) "gives [to] *the bankruptcy court* the power to grant creditors relief from the stay." *Schwartz,* 954 F.2d at 572 (emphasis added). Indeed, "[t]he legislative history of Section 362(d) unambiguously identifies the *bankruptcy court* as the exclusive authority to grant relief from the stay." *Cathey v. Johns-Manville Sales Corp.,* 711 F.2d 60, 62 (6th Cir. 1983) (emphasis in original).[10]

---

filing of the petition." *In re Braught,* 307 B.R. 399, 403 (Bankr. S.D.N.Y. 2004), citing *In re Sucre,* 226 B.R. 340, 348 (Bankr. S.D.N.Y. 1998).

[10] The Ninth Circuit added in *Schwartz* that "absent affirmative relief from the bankruptcy court, violations of the stay are void." 954 F.2d at 573.

As the bankruptcy court held in *In re Related Asbestos Cases,* 23 B.R. 523, 526 (Bankr. N.D. Cal. 1982):

> [T]he original bankruptcy courts alone should have exclusive power to lift an actual stay under section 362. A contrary conclusion would contravene the intention of Congress to centralize litigation concerning the bankrupt's affairs in a single forum.

Thus, "'[o]nly the bankruptcy court with jurisdiction over a debtor's case has the authority to grant relief from the stay of judicial proceedings against the debtor.'" *ACandS, Inc. v. Travelers Cas. & Surety Co.,* 435 F.3d 252, 261 (3d Cir. 2006) (Alito, then Cir. J.), quoting *Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1204 (3d Cir. 1992). *Accord, In re Cunningham,* 506 B.R. 334, 343 (Bankr. E.D.N.Y. 2014) ("only a bankruptcy court has jurisdiction to terminate, annul, or modify the automatic stay."; *In re Killmer,* 501 B.R. 208, 215 (Bankr. S.D.N.Y. 2013) ("[o]nly this [bankruptcy] Court has jurisdiction to annul the automatic stay").

The Ninth Circuit made this clear to the District Court in *Dam* (Chief Judge Bastian's *own case*) on March 19, 2026, more than a month prior to the District Court's entry of challenged ECF No. 127 on April 29, 2026. *Dam,* 2026 WL 777414, *2 (any "request to lift the automatic stay should thus have been directed to the bankruptcy court, not the district court"). Nevertheless, inexplicably, the District Court took it upon itself, without any notice or opportunity for Clausen to be heard, to annul the automatic stay and retroactively validate all proceedings against Clausen in the District Court.

Second, the District Court's Local Civil Rules make clear that the core power to lift the automatic stay belonged exclusively to the Bankruptcy Judges of the Eastern District of Washington. Instead of the standing order employed in many district courts, the U.S. District Court for the Eastern District of Washington has Local Civil Rule 83.5(a). That Rule expressly refers any proceedings arising under Title 11 to the bankruptcy judges of that district.

It states in pertinent part:

> Pursuant to 28 U.S.C. § 157(a), this Court hereby refers to the bankruptcy judges of this district all cases under United States Code Title 11, and all proceedings arising under Title 11 or arising in or related to cases under Title 11. *By reason of this referral, the bankruptcy judges of this district shall hear and determine such proceedings and enter appropriate orders and judgments.*

Loc. Civ. R. 83.5(a) (emphasis added).[11]

The quoted language emphasized above does not say that the district court shall hear and determine proceedings for annulling the automatic stay and enter appropriate orders; instead, that is expressly the job of the bankruptcy judges. That annulment power is a core power of the bankruptcy judges, as 28 U.S.C. § 157(b)(2)(G) explains that "[c]ore proceedings include . . . motions to . . . annul

---

[11] Reference to the Eastern District of Washington bankruptcy judges is allowed by 28 U.S.C. § 157(a), which states: "Each district court may provide that any and all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."

... the automatic stay[.]" Thus, [a] creditor's motion for relief from the bankruptcy automatic stay is a discrete and core proceeding before a bankruptcy court. *Ritzen Group, Inc., v. Jackson Masonry, LLC,* 589 U.S. 35, 43-44, 140 S. Ct. 582, 589 (2020).

The District Court's decision below purported to give the Plaintiffs "retroactive relief under [11 U.S.C.] section 362(d)" and claimed reliance for that upon the decision in *In re Nat'l Env. Waste Corp.,* 129 F.3d 1052, 1055 (9ᵗʰ Cir. 1997). (Appx0002-Appx0003.)  But that decision merely affirmed a district court's order *which affirmed a bankruptcy court's annulling an automatic stay.* It was not a decision in any way addressing, much less blessing, a district court's *sua sponte* annulment of a bankruptcy court stay pursuant to Section 362(d).

Section 362(d) provides in pertinent part that

> [o]n request of a party in interest and after notice and a hearing, the [bankruptcy] court shall grant relief from the stay provided under subsection (a) of this section, such as by . . . annulling . . . such stay –
> (1) for cause . . . .

11 U.S.C. § 362(d).

It is worth mentioning that in the Ninth Circuit, if a bankruptcy case is dismissed or closed it does not impede a motion to the bankruptcy court to annul the automatic stay. *In re Aheong,* 276 B.R. 233, 242 (B.A.P. 9ᵗʰ Cir. 2002) (the bankruptcy court's "jurisdiction to enter the Order Annulling Stay" "was not dependent on reopening Debtor's case or vacating the Dismissal Order"); *Cadiz v. Bank of New*

*York,* 188 F. App'x 654 (9ᵗʰ Cir. 2006) (the bankruptcy court had jurisdiction to reopen the proceedings and consider the motion to retroactively annul the stay). The bankruptcy court's continuing jurisdiction exists precisely to adjudicate the validity of actions taken during the pendency of a post-petition action in the district court.

## V. THE DISTRICT COURT ACTED WITHOUT AUTHORITY BECAUSE IT FAILED TO WITHDRAW THE REFERENCE TO THE LOCAL BANKRUPTCY JUDGES AND DID NOT MEET SECTION 157(d)'S STATUTORY REQUIREMENTS OF A "MOTION" FOR WITHDRAWAL AND "CAUSE" SHOWN

The District Court erred as a matter of law in retroactively validating all the void proceedings against Clausen because its decision below contains no express withdrawal of the reference to the bankruptcy court. Indeed, there is no mention of withdrawal or the requirements for withdrawal.

If the District Court is construed to have made an implicit withdrawal of the reference, its decision still cannot stand, because the requirements for withdrawal were not met. Section 157(d) explains in pertinent part that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." Accordingly, there are at least two requirements for a withdrawal: (1) a motion for withdrawal and (2) cause shown. Neither requirement was met below.

No party ever filed a motion or cross-motion to withdraw the reference and the District Court never issued an order to show cause or otherwise itself moved to

withdraw the reference. Instead, the District Court simply reached into a closed bankruptcy case, seized a core bankruptcy function – the power to annul the automatic stay – and cursorily ruled on it, all without any of the predicate procedural steps required by Section 157(d). This was not a mere technical oversight; it was a jurisdictional defect that rendered annulment of the stay a legal nullity.

Moreover, even if the District Court had initiated a "motion" on its own (which it did not), its withdrawal of the reference would still constitute reversible error, because it did not articulate any cause shown for withdrawal of the reference.

In *In re Canter*, 299 F.3d 1150 (9th Cir. 2002), the Ninth Circuit addressed a similar scenario on appeal from a district court's *sua sponte* withdrawal of a reference and the district court's denial of a *vacatur* motion. The Court of Appeals held:

> The district court clearly erred in withdrawing the reference. The Bankruptcy Code provides that the district court may withdraw the reference of a bankruptcy case on its own motion for cause shown. 28 U.S.C. § 157(d) (Supp. V 1987). However, the district court failed to articulate any cause for its withdrawal of reference in this case.

299 F.3d at 1154. The district court's actions were vacated by the Ninth Circuit, with costs of appeal and the matter remanded to the bankruptcy court.

Here, similar to *Canter*, the District Court's order is devoid of any analysis of cause for withdrawing the reference, which is fatal to the order being reviewed.

26

The Ninth Circuit is not alone in finding reversible error when a district court fails to provide Section 157(d)'s statutory procedural safeguards before withdrawing a reference. In *In re Simmons,* 200 F.3d 738, 741, 743 (11th Cir. 2000), the Eleventh Circuit reversed a district court's withdrawal of a reference because the withdrawal was done "without a hearing and without giving notice."[12]

The District Court's ambush of Clausen in the case *sub judice* also denied him of due process of law. A district court may not take adverse action *sua sponte* without giving the affected party notice and an opportunity to be heard. *See Norse v. City of Santa Cruz,* 629 F.3d 966, 971 (9th Cir. 2020) (*en banc*) (no power to enter summary judgment *sua sponte* without providing "adequate notice and opportunity to be heard"); *Kassbaum v. Steppenwolf Productions, Inc.,* 236 F.3d 487, 494 (9th Cir. 2002) ("great care must be exercised" to ensure that the affected party has an "adequate opportunity" to present its case before a court acts on its own initiative). The Ninth Circuit will reverse a district court when it did "not giv[e] . . . [a party] notice and the opportunity to assert its affirmative defenses." *KST Data, Inc v. DXC Tech. Co.,* 980 F.3d 709, 714 (9th Cir. 2020).

---

[12] In 11 U.S.C. § 102(1), Congress elaborated on the requirements in Section 157(d), calling for "appropriate" notice and "appropriate opportunity" for a hearing, while describing two exceptions which are inapplicable here – *i.e.,* the possibility of no hearing being timely requested or insufficient time for a hearing.

The District Court below, without any warning, transformed Clausen's motion to vacate void proceedings into a self-serving opportunity to retroactively annul the automatic stay. It did so without any motion from the Plaintiffs for withdrawal of the bankruptcy reference as commanded by Local Civil Rule 83.5(a), much less any motion from the Plaintiffs for annulment of the automatic stay. This erroneously deprived Clausen of the requisite opportunity to present argument and evidence against both withdrawal of the reference *and* annulment of the stay – in direct violation of his due process and statutory rights.

The judicial power to act *sua sponte* is not a license to ignore due process. In *Acosta v. Artuz,* 221 F.3d 117 (2d Cir. 2000), the Second Circuit vacated judgments where a court acted on its own motion without notice, stating:

> Although the courts below had the authority to raise the . . . [issue] on their own motion, the judgments must nevertheless be vacated because the courts dismissed without affording the petitioners notice and an opportunity to be heard.

221 F.3d at 124.

Similar is *Snider v. Melindez,* 199 F.3d 108, 112 (2d Cir. 1999): "The problem with the court's dismissal was not that it was done on the court's own motion, but rather that it was done without affording . . . [a party] notice and an opportunity to be heard." This principle is fundamental to the rule of law. *Lugo v. Keane,* 15 F.3d 29, 30 (2d Cir. 1994) (*per curiam*) ("No principle is more fundamental to our system of judicial administration than that a person is entitled to notice before adverse

28

judicial action is taken against him."). The District Court's action here ran directly contrary to this bedrock principle.

## VI. THE DISTRICT ACTED WITHOUT AUTHORITY IN ANNULLING THE BANKRUPTCY AUTOMATIC STAY BECAUSE IT FAILED TO MEET SECTION 362(d)'S STATUTORY REQUIREMENTS OF A "REQUEST" MADE BY A "PARTY" IN INTEREST, "NOTICE" TO AFFECTED PARTIES," AND A "HEARING," WITH "CAUSE" SHOWN, AS WELL AS THE NATIONAL AND LOCAL BANKRUPTCY RULES' REQUIREMENT OF A WRITTEN MOTION FILED BY A PARTY FOR ANNULMENT OF THE AUTOMATIC STAY

Even if the District Court had properly withdrawn reference of the case to the bankruptcy court (which it did not), the District Court committed reversible legal error by retroactively annulling the automatic stay without meeting Section 362(d)'s statutory requirements of a "request" made by a party in interest, "notice" to affected parties, and holding a "hearing" with "cause" shown.

Section 362(d) provides in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
> (1) for cause . . . .

11 U.S.C. § 362(d). Accordingly, there are at least four statutory requirements for annulment of the automatic stay: (1) a "request" of a "party" in interest; (2) "notice" to affected parties; (3) a "hearing; and (4) "cause" shown. None were met below, which is fatal to the District Court's annulment of the automatic stay.

29

In *In re Gasprom, Inc.*, 500 B.R. 598 (B.A.P. 9th Cir. 2013), *appeal dismissed*, No. 14-56427 (9th Cir. Oct. 2, 2014), the Bankruptcy Appellate Panel for the Ninth Circuit considered whether a bankruptcy judge could *sua sponte* annul a bankruptcy stay when no party had moved for annulment. Answering no and vacating the bankruptcy judge's order of annulment, the BAP explained further that the bankruptcy judge did not actually attempt to weigh anything" and did not "give the parties any opportunity to develop the record concerning the equities." 500 B.R. at 608.

This is much like the aberrant District Court decision here, which announced *sua sponte* – without any motion for annulment of the bankruptcy stay or opportunity for Clausen to argue or develop a record concerning the equities – the District Court's conclusion that "Plaintiffs are entitled to a retroactive lifting of the stay." (Appx0003.) If a bankruptcy judge could not get away with such omissions, so should not the District Court, which did not even bother to justify its withdrawal of the reference before proceeding to annulment – without a motion for either.

While the general federal civil rules (national and local) govern the procedure for withdrawal of the reference, once a district court withdraws the reference and puts on the hat of a bankruptcy judge, bankruptcy rules (national and local) govern the procedure for annulment of the bankruptcy automatic stay. *See, e.g., Rosenberg v. DVI Receivables XIV, LLC*, 818 F.3d 1283, 1285-93 (11th Cir. 2016) (agreeing with other circuits and applying bankruptcy rules to the district court – which were not

30

met). As indicated in Rule 81(a)(2) of the Federal Rules of Civil Procedure, the civil rules apply in bankruptcy only "to the extent provided by the [Bankruptcy Rules]." *Rosenberg*, 818 F.3d at 1287.

Rule 9014(a) of the Federal Rules of Bankruptcy Procedure provides generally that "[i]n a contested matter . . . relief must be requested by motion. Reasonable notice and opportunity to be heard must be given to the party against whom relief is sought." Fed. R. Bankr. P. 9014(a). Rule 9013(a) also generally requires that "[a] request for an order must be made by written motion . . . ." Fed. R. Bankr. P. 9013(a). Subsection (b) requires that "[a] motion must state its grounds with particularity and set forth the relief or order requested." Fed. R. Bankr. P. 9013(b).

The U.S. District Court for the Eastern District of Washington has a General Order, No. 96-32-1 (dated March 6, 1996, and effective May 1, 1996), which explicitly binds the District Court to the Local Bankruptcy Rules when exercising Title 11 jurisdiction. Local Bankruptcy Rule 4001-1(a)(1)(B) – consistent with national bankruptcy Rule 9014(a) – locally requires that "[a] party in interest desiring relief from the automatic stay of an act other than against property of the estate shall file a motion and give fourteen (14) days' notice to the debtor and debtor's attorney . . . ."

In addition, Local Bankruptcy Rule 4001-1(e)(1) mandates a freestanding motion: "[a] motion for relief from the automatic stay . . . shall not be combined with any other motion" (with inapplicable exceptions). *Accord,* LBR 9013-1(b)(1) (prohibiting the combining of a motion to lift the automatic stay with other motions in the circumstances of this case). And there is an applicable filing fee for such a motion. *See* Bankruptcy Court Miscellaneous Fee Schedule, no. 19 ("motions, $199; *To . . . annul . . . the automatic stay") – with no indication that the District Court was exempt from such collection.

Notably, annulment of the bankruptcy automatic stay required a motion by a "party" moving for such relief under 11 U.S.C. § 362(d), unlike under 28 U.S.C. § 157(d), where a motion by the "court" could suffice for withdrawal of the reference. There is no evidence here that Plaintiffs ever made any such written, freestanding motion for annulment of the bankruptcy automatic stay or made payment of an associated requisite motion fee – as required by the national and local bankruptcy rules for annulment relief.

Mere mention in Plaintiffs' "Response in Opposition to Defendant Jonathan Clausen's Motion to Vacate" at Appx1106 that "[t]he automatic stay contains an authorization for annulling the stay" – which is the only written appearance of the word "annul" (or its derivatives) in the Plaintiffs' Response to Clausen's motion – did not a motion for annulment make. Even the Plaintiffs' [Proposed] Order denying

32

Clausen's motion to vacate (Appx1127) failed to mention any proposed express finding of annulment of the bankruptcy automatic stay.

A "mere[] suggest[ion] for relief "is wholly deficient" as a "cross-motion." *Najjar v. Salameh,* 787 F. Supp.3d 8, 14 (D.N.J. 2025). A cross-motion should not be embedded in a response to a motion (although a single memorandum can support both). *Tooling, Mfg. & Techs. Ass'n v. Hartford Fire Ins. Co.,* No. 08-CV-11812, 2010 WL 3464329 at n. 5 (E.D. Mich. Aug. 30, 2010).

As the U.S. Supreme Court has explained, a bankruptcy stay relief "motion initiates a discrete procedural sequence, including notice and a hearing, and the creditor's qualification for relief turns on the statutory standard, *i.e.,* 'cause' . . . ." *Ritzen Group,* 589 U.S. at 43-44, 140 S. Ct. at 589.

The District Court's failure to adhere to any of the procedural notice and hearing requirements renders its *sua sponte* annulment of the bankruptcy stay procedurally defective and void.

And this is without reaching the further express requirement in Section 157(d) of "cause" shown. In the context of Ninth Circuit bankruptcy jurisprudence, a finding of "cause" requires application of a multi-factor *balancing* test for determining whether cause exists for retroactive annulment – often called the *Fjeldsted* factors, of the case by that name, *Fjeldsted v. Lien (In re Fjeldsted),* 293 B.R. 12 (B.A.P. 9th Cir. 2003).

These factors (some dozen in number) require an adversarial process where parties can present evidence on, *inter alia,* the debtor's overall good faith, the creditor's knowledge of the bankruptcy, whether, after learning of the bankruptcy, the creditor took steps in continued violation of the stay, and the relative prejudice to each party. 293 B.R. at 25. The District Court here made no such comprehensive findings. It could not have, because there was no adversarial process on the *Fjeldsted* factors. The District Court's order references its superficial (but incorrect) view of Clausen's conduct in the litigation, but it did so without the benefit of briefing on the *Fjeldsted* factors, the benefit of a hearing, or any of the procedural safeguards that must precede a finding of "cause" under Section 362(d) before retroactively annulling the automatic stay.

The bottom line is that the District Court – even if it had properly withdrawn the reference to the District's bankruptcy judges – did not merely misapply the correct legal standard, it failed to apply any of the standards mandated by Section 362(d) for annulment of the bankruptcy automatic stay. It acted without a request made a party's written particularized motion, without notice served, without any hearing, and without a proper cause analysis weighing the *Fjeldsted* factors. Each of these failures independently constitutes reversible error, and acting in contravention of all four was a wholesale abandonment of the statutory framework Congress enacted. When a district court fails to implement multiple fundamental

due process requirements on its way to a *sua sponte* decision causing a party extreme prejudice, as occurred here, its decision cannot stand.

The requirements of procedural due process apply to relief under Bankruptcy Code Section 362(d). Due process of law, required by the Fifth Amendment of the United States Constitution, generally dictated an appropriate notice and an appropriate opportunity to be heard before deprivation of a protected property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570 n. 7, 92 S. Ct. 2701, 2705 n. 7 (1972); *Trump v. Cook*, No. 25A312, 609 U.S. ___, 146 S. Ct. 2234, 2255 (2026) (due process "entitled . . . [defendant] to some explanation of the evidence at issue, some avenue for a response, and a deadline by which a response would be due").

Clausen got no procedural due process of law before the protection afforded him by Section 362(a)(1) was stripped away from him. *See, e.g., In re Melendez Colon*, 265 B.R. 639, 644 (B.A.P. 1st Cir. 2001) ("[i]t was a clear abuse of discretion, amounting to a denial of due process" for a bankruptcy court to annul the automatic stay without prior notice to an affected party, as denial of "an opportunity to be heard and to develop a record on the question is impermissibly unfair"). The First Circuit B.A.P. in that case vacated a decision which granted retroactive relief from the automatic stay and remanded for a hearing on damages against a creditor who, like

the Plaintiffs here, violated the stay over an extended period of time. 265 B.R. at 645.

## VII. THE DISTRICT COURT ACTED WITHOUT AUTHORITY AND ERRED AS A MATTER OF LAW IN RETROACTIVELY VALIDATING ALL THE VOID PROCEEDINGS AGAINST CLAUSEN PREMISED ON THE EQUITABLE DOCTRINE OF JUDICIAL ESTOPPEL

The District Court acted without authority and erred as a matter of law in retroactively validating all the proceedings against Clausen premised on the equitable doctrine of judicial estoppel, because no equitable power to grant relief from the bankruptcy automatic stay rested with the District Court outside of the statutory bankruptcy scheme established by Congress.

Notably, "[i]n many instances the inherent powers of the courts may be controlled or overridden by statute and rule." *Degen v. United States,* 517 U.S. 820, 823, 116 S. Ct. 1777, 1780 (1996). Congress's power over the subject of bankruptcies has always been plenary, and this supreme power promotes national uniformity on the subject of bankruptcies. *Siegel v. Fitzgerald,* 596 U.S. 464, 474, 142 S. Ct. 1770, 1779-81 (2002). *See also* U.S. Const., art. 1, sec. 8, cl. 4. Thus, it is well-accepted by the U.S. Supreme Court that "'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.'" *Law v. Siegel,* 571 U.S. 415, 421, 134 S. Ct. 1188, 1194 (2014), quoting *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S. Ct. 963, 969 (1988).

This means that a federal district court has no ability to use a *nunc pro tunc* order to re-write the historical reality of its lack of subject matter jurisdiction. *Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano,* 589 U.S. 57, 140 S. Ct. 696, 700-01 (2020). Accordingly, multiple Circuit Courts of Appeal have looked only to the bankruptcy courts for annulment of the automatic stay.

For example, the Court of Appeals for the Third Circuit has made clear that "no equitable power to grant relief from an automatic stay rests with the District Court." *ACandS,* 435 F.3d at 261. Not even the Court of Appeals "possesses . . . authority to grant relief from the automatic stay," no matter how "compelling" are "equitable considerations advanced." "Relief from the stay may only be achieved in accordance with the statutory mechanism established by Congress." *Cathey,* 711 F.2d at 63.

At most, equitable considerations might bar the debtor's claim for damages, but they cannot validate void acts themselves. As stated in Local Civil Rule 83.5(a) of the Eastern District of Washington, "[b]y reason of this referral, the bankruptcy judges of this district shall hear and determine such proceedings and enter appropriate orders and judgments." That means that without withdrawal of the reference, the original bankruptcy courts alone have that power of stay relief; "[a] contrary conclusion would contravene the intention of Congress to centralize

litigation concerning the bankrupt's affairs in a single forum." *Related Asbestos Cases,* 23 B.R. at 526.

If the District Court *sub silentio* believed that it had equitable power under 11 U.S.C. § 105 to annul the stay, that belief was incorrect. The Supreme Court has made clear that Section 105 does not allow a court "to override explicit mandates of other sections of the Bankruptcy Code." *Law,* 571 U.S. at 421, 134 S. Ct. at 1194.

In *Canter,* the Ninth Circuit condemned a pattern of procedural overreach similar to the District Court's here. The Court of Appeals rejected not only the district court's improper *sua sponte* withdrawal of the reference, but also the district court's improper proceeding to enjoin the enforcement of a municipal court judgment. 299 F.3d at 1152, 1155. As to the latter, the Ninth Circuit acknowledged that while the district court may have held considerable power under Section 105, "it abused its discretion when it . . . imposed an injunction without regard to the requirements of Rule 65(a)(1)" – specifically, without fair notice. *Id.* at 1155.

That judicial wrongdoing is similar to what has transpired here. The District Court below retroactively annulled the automatic stay *sua sponte* without the request, notice, and hearing requirements of Section 362(d). It was legal error to do so without following the procedures explicitly enacted by Congress for that very purpose. The District Court's *sua sponte* annulment of the stay, coupled with its failure to withdraw the reference, is the same species of judicial error which the

38

Ninth Circuit condemned in *Canter* (and indeed, led to an ethics investigation against the judge involved, who was suspected of personal favoritism to a party involved. *See In re Complaint of Judicial Misconduct*, 425 F.3d 1179 (9th Cir. 2025)).

Even the April 29, 2026 Order's predicate findings that Clausen "engaged in unreasonable and inequitable conduct" and "play[ed] fast and loose" with the District Court (Appx0002, Appx0004) would be unsustainable had Clausen been afforded due process. The District Court apparently took no account of the fact that Clausen was effectively acting *pro se* after being unable to afford counsel, with no evidence in the record that he understood the automatic stay's effect on the District Court action against him. Had Clausen been given an opportunity to be heard, he would have shown that at no time did he engage in unreasonable or inequitable conduct, nor did he "play fast and loose" with the District Court's procedures.

## VIII. THIS CASE SHOULD BE REASSIGNED TO A DIFFERENT JUDGE ON REMAND

On remand, this case should be reassigned randomly to a different Judge of the District Court because the three factors for reassignment provided by controlling regional Ninth Circuit law are met. This Court "evaluate[s] a request to reassign a matter to a different judge under the law of the relevant regional circuit, . . . here the Ninth Circuit." *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1343-44 (Fed. Cir. 2010).

In *Trimed*, this Court observed:

In the Ninth Circuit, reassignment is appropriate if personal bias or unusual circumstances are shown. . . . When determining whether unusual circumstances exist, the Ninth Circuit the Ninth Circuit considers the following factors:

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views of findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

608 F.3d at 1343-44, quoting *Smith v. Mulvaney*, 827 F.2d 558, 563 (9th Cir. 1987).

"The first two of these factors are of equal importance, and a finding of one of them would support a remand to a different judge." *United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 780 (9th Cir. 1986). This is a case where all three factors are met.

Chief Judge Bastian would have difficulty putting aside his prior views and determinations, and reassignment is advisable to preserve the appearance of justice. In addition, in view of the early status of the Defendants' Counterclaim only recently answered (Appx1142), and no discovery having taken place, a new judge would not need to duplicate much effort already erroneously invested by the original District Court Judge, who is Chief Judge Stanley A. Bastian.

The first factor considered is that Chief Judge Bastian would have substantial difficulty after a remand setting aside His Honor's previously-expressed but erroneous views regarding Clausen. This would be highly prejudicial to Clausen,

40

who would remain a party with the other Defendants on their Counterclaim to be litigated against the Plaintiffs for breach of a settlement agreement.

Chief Judge Bastian authored a detailed written Order (Appx0001) making erroneous substantive factual findings about Clausen's conduct, labeling it as "inequitable conduct" predicating the District Court's retroactive annulment of the automatic stay without notice or an opportunity for Clausen to be heard. (Appx0003.) In addition, His Honor's Order expressly and erroneously accused Clausen of "playing fast and loose with the Court" as grounds for wrongly applying judicial estoppel against Clausen. (Appx0004.)

Characterizations such as "iniquities" and "dirty tricks" have been held to bespeak that the Judge has not just disapproved of a litigant's conduct, but also appears to have developed an inescapable animosity or hostility toward that party. *Cobell v. Kempthorne,* 455 F.3d 317, 333-35 (D.C. Cir. 2006) (instructing to reassign the case as judicial decisions from flow from appropriate application of law to facts and not from a judge's animosity toward a party).

The District Court's April 29, 2026 Order (i) accusatorily presumed that Clausen "did not inform even his own counsel of the bankruptcy proceeding" (Appx0003); (ii) faulted Clausen for continuing to participate in proceedings below without asserting that the claims against him were void post-petition acts – even though the District Court knew that Clausen was participating at that point *pro se*

41

(*id.*); and (iii) accused Clausen of asserting an initial position which was contradicted later by a position asserted once new counsel was engaged (Appx0003-Appx0004).

This judicial excoriation of Clausen was way off-base, for at least three reasons. First, Clausen obviously had nothing to gain by concealing from his then-counsel in the action below that he (and his wife) had filed a bankruptcy petition well before Plaintiffs commenced the instant action against him. Indeed, Clausen was promptly disadvantaged by a motion for preliminary injunction brought against him by the Plaintiffs while he was originally represented. Clausen gained nothing by silence, undercutting Chief Judge Bastian's presumption, and calling into question his reason for adopting that presumption, when other explanations were equally plausible.

Second, instead of blaming Clausen, the District Court should have blamed itself, for the District Court's failure to dismiss promptly all claims against Clausen, from the moment the District Court learned of the pre-action filing of the bankruptcy petition, inasmuch as all claims against Clausen were void *ab initio* under established Ninth Circuit law interpreting 11 U.S.C. § 362(a)(1).

Third, as reflected in the subject Order, the Court *by its own legal error* resumed this action against Clausen in late September 2025. By that time, Chief Judge Bastian had long since decided *Dam v. Waldron,* on April 9, 2025. His Honor's Order of April 9, 2025 in *Dam* expressly acknowledged that "[a] violation of the

42

automatic stay is void. *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992)," and held that Dam's Complaint as "constitut[ing] a violation of the automatic stay" "is therefore void." *Dam,* 2025 WL 1069844 at *2, 3.

The Ninth Circuit affirmed that Order in *Dam* on March 19, 2026, except for a remand to change the dismissal of Dam's Complaint to a dismissal without prejudice. *Dam,* 2026 WL 777414 at *2. And on April 7, 2026, Chief Judge Bastian issued an Amended Order, identical to His Honor's April 7, 2025 Order, except making the dismissal of Dam's Complaint "without prejudice." *Dam,* No. 2:24-cv-00417-SAB, Amended Order Dismissing Case (ECF No. 36 at 6) (E.D. Wash. April 7, 2026).

Accordingly, Chief Judge Bastian in the action *sub judice* certainly should have known by September 2025 that the post-petition claims of the Plaintiffs against Clausen (first brought to his attention by Clausen in February 2025) were void *ab initio* per His Honor's own decision in *Dam* and well-established Ninth Circuit law (*i.e., Schwartz*).

Also of signal importance here is that the Ninth Circuit in *Dam* indicated on March 19, 2026 that "Dam's request to lift the automatic stay should . . . have been directed to the bankruptcy court, not the district court." 2026 WL 777414 at *2. To rule to the contrary only 40 days later in the case *sub judice*, on April 29, 2026 (which Chief Judge Bastian did via a blast of judicial actions outside of his authority under

43

both Section 157(d) and Section 362(d)), should be seen as having been done in service of a tunnel-minded objective: To retroactively validate claims against Clausen that were void from their commencement.

The District Court's approach appears to have been driven not only by Chief Judge Bastian's hard-held negative views of Clausen, but also of Clausen's new counsel. Chief Judge Bastian ordered Clausen's new counsel to show cause why his *pro hac vice* status should not be revoked for having: (i) "file[d] voluminous motions" in aid of the Defendants; and (ii) complained to Plaintiffs' counsel after Chief Judge Bastian rejected Clausen's routine motion (Appx0868) to file one oversized motion after the same judge granted the Plaintiffs such oversized leeway at the very beginning of the case (Appx0122). *See Hammerless Tools LLC v. Clausen,* No. 2:23-CV-00413-SAB, Appx1360.

Moreover, Chief Judge Bastian has held the Order to Show Cause issued against Clausen's new counsel open and undecided for months despite written responses promptly filed by Clausen's new counsel (Appx1446, Appx1461). This thumb on the scales against Clausen's new counsel hangs like a guillotine to this day. Plainly this "judge exhibits a sustained pattern, over the course of months and numerous hearings, of disrespect for the Defendants and their counsel, but no such attitude toward the Plaintiffs' counsel." *M.D. v. Abbott,* 119 F.4th 373, 385, 394 (5th Cir. 2024) (judicial reassignment ordered upon remand).

Chief Judge Bastian has also engaged in a pattern of repeatedly ruling against Clausen and his companies (the other Defendants) in this case. Major instances of that include the following orders: (1) Appx0567 granting renewed motion for preliminary injunction; (2) Appx0607 granting motion for sanctions against all Defendants; (3) Appx0667 granting default judgment against the company defendants and a permanent injunction; (4) the April 29, 2026 Order (Appx0001) denying Clausen's motion for vacatur and for damages liability; and (5) Appx1443 denying the company defendants' motions for reconsideration based on merits and service failures.

Chief Judge Bastian's erroneous findings against Clausen are inextricably intertwined with His Honor's two procedural overreaches in his April 29, 2026 Order. On remand and consideration of Clausen's and his company defendants' Counterclaim, the Chief Judge Bastian would need to set aside not just his erroneous legal conclusions regarding Clausen, but also his entire assessment of Clausen's conduct – the same conduct His Honor used as a pretext for twice exceeding his authority. Many of Chief Judge Bastian's adverse findings and rulings against Clausen were made while Clausen (because of severe financial problems demonstrated by his pre-action bankruptcy filing and his inability to pay his then-counsel's legal bills) was appearing *pro se,* while trying to obtain new counsel (*see*

45

Appx1473), likely making the Court's expressed views even more deeply-rooted and difficult to dislodge.

This is not a case where a judge can simply apply a new legal rule to the same facts. The judge's jaundiced views of the facts themselves – formed largely when Clausen was *pro se* – are what clearly drove the unauthorized orders against Clausen.

As another court of appeals held in ordering reassignment, "[a]lthough '[w]e do not question the district court's actual ability . . .' we order this case reassigned because 'the . . . judge has demonstrated great difficulty in putting aside his prior conclusions about the merits . . . .'" *United States v. Gupta*, 572 F.3d 878, 892 (11th Cir. 2009), quoting *United States v. Torkington,* 874 F.2d 1441, 1447 (11th Cir. 1989).

The Ninth Circuit has found reassignment justified in a "'rare and extraordinary circumstance'" where, as here, the "judge repeatedly made clear that he would have substantial difficulty setting aside his previous views of the case." *Nozzi v. Hous. Auth. of City of L.A.,* 806 F.3d 1178, 1203-04 (9th Cir. 2015). This would well appear to be such a circumstance.

The Order appealed was made on April 29, 2026. Yet the Ninth Circuit on March 19, 2026, in *Dam v. Waldron,* had instructed Chief Judge Bastian, in His Honor's own case, that "[Plaintiff] Dam's request to lift the automatic stay should thus have been directed to the bankruptcy court, not the district court." 2026 WL 777414 at *2. Yet Chief Judge Bastian blithely acted as if His Honor were a

46

bankruptcy judge, ruling against Clausen without even an express withdrawal of the reference provided by Local Civil Rule 83.5(a), or a motion or cross-motion by the instant Plaintiffs for withdrawal of the reference or annulment of the bankruptcy automatic stay. It is difficult, to say the least, to expect that Chief Judge Bastian will be able to put all of that, along with his negative opinion of Defendant Clausen, behind him on remand.

The second factor for reassignment in the Ninth Circuit is for the appearance of justice. Again *Cobell* is instructive. There, like here, "on several occasions" the district court "issu[ed] orders without hearings" (analogous to chief Judge Bastian's blatant statutory and due process violations). There, like here, the district court appeared to be hostile to a party. There, like here, those circumstances were indicative of future inability to render fair judgment. 485 F.3d at 335.

A judge who twice exceeds his statutory authority to reach a predetermined outcome presents a catalog of the type of procedural errors and summary action that was found sufficient to justify reassignment in *United States v. Jacobs,* 855 F.2d 652 (9th Cir. 1988). The Ninth Circuit held in *Jacobs:* "On these facts, the gains made for the appearance of justice by reassignment to another judge will outweigh the duplication of time and effort." 855 F.2d at 657.

This case is even stronger than *Jacobs.* The errors there appeared to be largely disparate and unconnected. Here, both overreaches served a single, unified

47

objective: Validating post-petition claims and rulings against Clausen that were void from commencement, in order to rescue years of judicially-erroneous prior litigation against Clausen. This is not a random catalog of missteps, it is a directed pattern exceeding judicial authority, intended to achieve a particular result. This pattern suggests an outcome-driven approach that disregarded clear statutory mandates and fundamental due process of law, and seriously implicates the appearance of justice.[13]

Specifically, the interest of justice requires that this Court not merely reverse and remand for "cleanup" proceedings before Chief Judge Bastian. That could reward Chief Justice Bastian's procedural overreach by allowing him to achieve through a "do-over" what he tried to do the first time. The risk is not merely theoretical: Chief Judge Bastian has already demonstrated a willingness to bypass mandatory statutory and due process procedures when they stand in the way of His Honor's desired outcome against the scapegoated Clausen.

It bears note that Clausen is a principal in each of the company defendants, which are all business companies of Clausen, and he joined them in their Counterclaim against the Plaintiffs for breach of a settlement agreement. That Counterclaim is yet to be adjudicated. The appearance of justice would be promoted by re-

---

[13] In *United States v. Lanier*, 988 F.3d 284, 299 (6th Cir. 2021), the Sixth Circuit made clear that even a single serious deprivation of a meaningful opportunity to be heard is sufficient "compromise[] [of] the appearance of justice" to warrant "that this case be assigned to a different district judge on remand."

assignment of the remainder of this case to a different judge who has not prejudged Clausen's conduct or expressed negative views about his credibility and consistency.

The third factor weighed in the Ninth Circuit for reassignment is waste and duplication versus gain in appearance of fairness. This factor weighs heavily here in favor of reassignment.

The culminating product of Chief Judge Bastian's negative approach to Clausen – *i.e.,* withdrawal of the reference and the annulment of the stay – was without statutory authority. Any proceedings on remand before the same judge would be tainted by the Court's previously-expressed prejudicial views about Clausen's conduct, views formed largely when Clausen was without counsel and which contributed to the Court's unauthorized actions. A new judge who is free of these prior findings and prejudices against Clausen and is unburdened by the institutional investment in years of void proceedings against Clausen, would be able to adjudicate the remaining claims fairly and efficiently.

It is also notable that this case has not progressed even to a discovery stage on the Counterclaim for breach of contract. Where a "case has not progressed significantly beyond the preliminary stages, any minimal potential for waste or duplication is outweighed by the need to preserve the appearance of fairness." *Folex Golf Indus., Inc. v. O-TA Precision Indus. Co.,* 700 F. App'x 738 (9th Cir. Nov. 2, 2017) (Memo.) (unpub.). The gain in appearance of fairness from a clean slate with

49

a fresh start would far outweigh any duplication of judicial resources, which would be minimal here, with all claims against Clausen properly erased upon remand. In these circumstances, "[r]eassignment will not produce excessive [judicial] duplication." *Gupta*, 572 F.3d at 892.

At bottom, the Ninth Circuit has held that remand to a new judge is appropriate where, as here, an original judge, inconsistent with the need to preserve the appearance of justice, persisted in refusing to consider what due process required, and where reassignment would mean little duplication of judicial effort. *United States v. Ferguson*, 624 F.2d 81, 83-84 (9th Cir. 1980).

On remand in the case *sub judice,* the needed mandate is to direct the Clerk of the Court of the Eastern District of Washington to make reassignment of the case a random one to a district court judge other than Chief Judge Bastian. "[Rehabilitation] of the appearance of justice [which] has taken a beating" would "best be accomplished by a new, randomly selected judge." *In re Yagman*, 796 F.2d 1165, 1188 (9th Cir. 1986).

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

In closing, 28 U.S.C. § 2106 provides that a "court of appellate jurisdiction may . . . reverse any . . . order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate . . . order, or require such further proceedings to be had as may be just under the circumstances." This is

an appeal well deserving of the three "Rs" treatment of "Reversed, Remanded, and Reassigned."

Specifically, this Court should reverse so much of the District Court's April 29, 2026 Order (Appx0001) as failed to vacate and dismiss *nunc pro tunc* as void *ab initio* all claims, motions, orders, and proceedings against Defendant Clausen as acts violative of the bankruptcy automatic stay, 11 U.S.C. § 362(a)(1); the case should be remanded with direction to enter an appropriate order dismissing *nunc pro tunc* all claims, motions, orders and proceedings against Defendant Clausen, but without prejudice; and there should be ordered upon remand a reassignment of the case by the Clerk of the Court to a different judge of the District Court for the case otherwise to proceed; with costs on appeal awarded in favor of Clausen and against the Appellees.

Dated: August 10, 2026

Respectfully submitted,

By: /s/ *Stephen L. Sulzer*

Stephen L. Sulzer
**STEPHEN L. SULZER PLLC**
11710 Plaza America Drive, Suite 2000
Reston, VA 20190
Telephone: (703) 871-5000
Fax: (202) 558-5101
Email: ssulzer@sulzerpllc.com

*Attorney for Defendant-Appellant Jonathan Clausen and Defendants Clausen, Inc., AR-TT LLC, and Lilac City, LLC*

51

# ADDENDA

## Order Appealed From

District Court's April 29, 2026 Order Denying Defendant
Clausen's Motion to Vacate (ECF No. 127) (Appx 00001) . . . . . . . Add0001

## Constitutions

U.S. Constitution Article 1, Section 8, Clause 4 . . . . . . . . . . . . . . . . . . . . .Add0012

U.S. Constitution, Fifth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0013

## Statutes

11 U.S.C. § 102(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Add0014

11 U.S.C. § 105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Add0015

11 U.S.C. § 362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Add0016

11 U.S.C. § 362(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Add0016

11 U.S.C. § 362(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0016

11 U.S.C. § 362(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0020

28 U.S.C. § 157(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0024

28 U.S.C. § 157(b)(2)(G) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0024

28 U.S.C. § 157(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0025

28 U.S.C. § 1292(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0026

28 U.S.C. § 1292(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0026

28 U.S.C. § 1295(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0028

28 U.S.C. § 1338 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Add0029

28 U.S.C. § 2106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Add0031

35 U.S.C. § 281 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Add0032

## Rules

Fed. R. App. P. 4(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0033

Fed. R. Bankr. P. 9013(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Add0038

Fed. R. Bankr. P. 9014(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Add0039

Fed. R. Civ. P. 52(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0042

Fed. R. Civ. P. 65(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0043

Fed. R. Civ. P. 81(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Add0046

E.D. Wash. Local Bankruptcy Rule 4001-1(a)(1)(B) . . . . . . . . . . . . . . . . . Add0049

E.D. Wash. Local Bankruptcy Rule 4001-1(e)(1) . . . . . . . . . . . . . . . . . .Add0051

E.D. Wash. Local Bankruptcy Rule 9013-1(b)(1). . . . . . . . . . . . . . . . . .Add0052

E.D. Wash. Local Civil Rule 83.5(a). . . . . . . . . . . . . . . . . . . . . . . .Add0055

## General Orders

E.D. Wash. General Order No. 96-32-1 . . . . . . . . . . . . . . . . . . . . . . . Add0057

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 29, 2026

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HAMMERLESS TOOLS LLC, a Washington limited liability company, and EIGHT EIGHTEEN, LLC, an Idaho limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> JONATHAN CLAUSEN, an individual; CLAUSEN, INC., a Washington Corporation, AR-TT LLC, a Washington limited liability company; and LILAC CITY, LLC, a Washington limited liability company, <br><br> Defendants. | No.  2:24-CV-00413-SAB <br><br><br> **ORDER DENYING DEFENDANT CLAUSEN'S MOTION TO VACATE; DENYING MOTION TO ESTABLISH LIABILITY FOR DAMAGES** |

Before the Court are Defendant Jonathan Clausen's Motion to Vacate, ECF No.  and Motion to Establish Liability for Damages, ECF. No. 103. The motions were heard without oral argument. Plaintiffs are represented by Caleb Hatch and Johanna Tomlinson. Defendants are represented by Douglas Dick, Robert Wright, and Stephen Sulzer.

The parties are familiar with the procedural history in this matter, and the

**ORDER DENYING DEFENDANT CLAUSEN'S MOTION TO VACATE; DENYING MOTION TO ESTABLISH LIABILITY FOR DAMAGES ~ 1**

Court will only provide a summary of the history that pertains to the instant offense. Forty-five days after the Court granted Plaintiffs' Motion for Default Judgment and Permanent Injunction Against Defendants and judgment in the amount of $781,944, plus attorneys' fees, costs, and interest of 12 percent per annum, ECF No. 83, Defendant Clausen filed his Motion to Vacate and Motion to Establish Liability for Damages.

### 1. Defendant Clausen's Motion to Vacate

In his motion, Defendant Clausen asks that all claims, motions, orders, and proceedings against him be vacated and dismissed *nunc pro tunc* as void and legally invalid. The basis for his motion is that there was an underlying bankruptcy petition that was pending when Plaintiffs filed their Complaint in the above-captioned matter. Defendant maintains that any violations of the automatic stay are void and of no effect.

It is true that violations of the automatic stay are void and of no effect. *See In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992). It is also true, however, that if a creditor obtains retroactive relief under section 362(d), there is no violation of the automatic stay, and whether violations of the stay are void is not at issue. *Id.* at 573.

In determining whether cause exists to grant relief from the stay: courts have focused on two factors: (1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor. *In re Nat'l Env. Waste Corp.*, 129 F.3d 1052, 1055 (9th Cir. 1997). Both of these factors weigh in favor of retroactively lifting the stay in this matter.

Here, there is no dispute that Plaintiffs did not learn of the bankruptcy proceedings until February 11, 2025, when the Notice of Pending Bankruptcy and Automatic Stay, ECF No. 40, was filed in the record by then Defendant's counsel, Reid Johnson. And there is no dispute that after Plaintiffs learned of the

**ORDER DENYING DEFENDANT CLAUSEN'S MOTION TO VACATE; DENYING MOTION TO ESTABLISH LIABILITY FOR DAMAGES ~ 2**

bankruptcy proceedings, they halted all collection efforts. Nothing further was filed in this matter, although Defendants filed eight documents in the record after filing its Notice. *See* ECF Nos. 42-49.

Further, Plaintiffs did not violate any automatic stay in September 2025, when they moved to lift the stay imposed by this Court because by that time, Defendant's bankruptcy petition had been dismissed; therefore, there was no automatic stay to violate.

Second, the record demonstrates Defendants engaged in unreasonable and inequitable conduct that prejudiced Plaintiffs. Plaintiff's counsel personally communicated with Mr. Clausen in this matter, and at no time did Mr. Clausen or his counsel ever state, identify, mention, or even hint at a filed bankruptcy matter prior the Motion to Stay in this case. Defendant was represented by counsel at the start of the matter. Given that no notice of the bankruptcy proceeding was provided by counsel when the Complaint was filed, the Court presumes Defendant did not inform even his own counsel of the bankruptcy proceeding. Moreover, after the Court lifted the stay, Defendant continued to participate in the proceedings in this matter, including asking for continuances and obtaining electronic case filing authorization, and again, never informed the Court that these proceedings somehow were void, or violated the automatic stay that was in place prior to the filing of the Complaint.

For these reasons, Plaintiffs are entitled to a retroactive lifting of the stay, so the filing of the Complaint in this matter does not make these proceedings void.

In addition, the Court relies on the doctrine of judicial estoppel to find that the proceedings before this Court are not void. "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire &Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001). The purpose of the doctrine of judicial estoppel is to prevent a party for

**ORDER DENYING DEFENDANT CLAUSEN'S MOTION TO VACATE; DENYING MOTION TO ESTABLISH LIABILITY FOR DAMAGES ~ 3**

gaining an advantage by taking inconsistent positions, further the orderly administration of justice, preserve the dignity of judicial proceedings and protect "against a litigant playing fast and loose with the courts." *Id.* These purposes are met by finding that the proceedings in this case are not void.

This case was filed on December 10, 2024. So, for well over a year, the Court has presided over this matter—holding status conferences, reviewing motions, and entering orders—while Defendant remained silent about the pending bankruptcy proceeding. Defendant wants to now weaponize his silence, and waste judicial resources by asking the Court to void all orders that have been entered in this matter. The Court declines to do so. Instead, the Court will invoke judicial estoppel to prevent Defendant from playing fast and loose with the Court and to protect the integrity of the judicial process to find that the Orders and proceedings in the above-captioned case are not void.

### 2. Defendant's Motion to Establish Liability for Damages

In his motion, Defendant asserts that Plaintiffs and their counsel willfully violated the automatic stay, and therefore the Court should award significant actual damages, as well as punitive damages.

As set forth above, Plaintiffs and their counsel did not willfully violate the automatic stay; rather they are entitled to a retroactive lifting of the stay and the Orders and proceedings are not void. As such, Defendant's Motion to Establish Liability for Damages, is without merit.

//
//
//
//
//
//
//
//

**ORDER DENYING DEFENDANT CLAUSEN'S MOTION TO VACATE; DENYING MOTION TO ESTABLISH LIABILITY FOR DAMAGES ~ 4**

Accordingly, **IT IS HEREBY ORDERED**:

1.  Defendant Clausen's Motion to Vacate, ECF No. 101, is **DENIED**.

2.  Defendant Clausen's Motion to Establish Liability for Damages, ECF No. 103, is **DENIED**.

**IT IS HEREBY ORDERED**. The District Court Executive is hereby directed to file this Order and provide copies to counsel.

**DATED** this 29th day of April 2026.



Stan Bastian
Chief United States District Judge

**ORDER DENYING DEFENDANT CLAUSEN'S MOTION TO VACATE; DENYING MOTION TO ESTABLISH LIABILITY FOR DAMAGES ~ 5**



# THE
# CONSTITUTION OF THE UNITED STATES
# OF AMERICA

———

### LITERAL PRINT

1

Add0006

# CONSTITUTION OF THE UNITED STATES

We the People of the United States, in Order to form a more perfect Union, establish Justice, insure domestic Tranquillity, provide for the common defence, promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity, do ordain and establish this Constitution for the United States of America.

## Article. I.

Section. 1. All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives.

Section. 2. The House of Representatives shall be composed of Members chosen every second Year by the People of the several States, and the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature.

No Person shall be a Representative who shall not have attained to the age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen.

Representatives and direct Taxes shall be apportioned among the several States which may be included within this Union, according to their respective Numbers, which shall be determined by adding to the whole Number of free Persons, including those bound to Service for a Term of Years, and excluding Indians not taxed, three fifths of all other Persons. The actual Enumeration shall be made within three Years after the first Meeting of the Congress of the United States, and within

3

every subsequent Term of ten Years, in such Manner as they shall by Law direct. The Number of Representatives shall not exceed one for every thirty Thousand, but each State shall have at Least one Representative; and until such enumeration shall be made, the State of New Hampshire shall be entitled to chuse three, Massachusetts eight, Rhode-Island and Providence Plantations one, Connecticut five, New-York six, New Jersey four, Pennsylvania eight, Delaware one, Maryland six, Virginia ten, North Carolina five, South Carolina five, and Georgia three.

When vacancies happen in the Representation from any State, the Executive Authority thereof shall issue Writs of Election to fill such Vacancies.

The House of Representatives shall chuse their Speaker and other Officers; and shall have the sole Power of Impeachment.

Section. 3. The Senate of the United States shall be composed of two Senators from each State, chosen by the Legislature thereof, for six Years; and each Senator shall have one Vote.

Immediately after they shall be assembled in Consequence of the first Election, they shall be divided as equally as may be into three Classes. The Seats of the Senators of the first Class shall be vacated at the Expiration of the second Year, of the second Class at the Expiration of the fourth Year, and of the third Class at the Expiration of the sixth Year, so that one third may be chosen every second Year; and if Vacancies happen by Resignation, or otherwise, during the Recess of the Legislature of any State, the Executive thereof may make tem-

porary Appointments until the next Meeting of the Legislature, which shall then fill such Vacancies.

No Person shall be a Senator who shall not have attained to the Age of thirty Years, and been nine Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State for which he shall be chosen.

The Vice President of the United States shall be President of the Senate but shall have no Vote, unless they be equally divided.

The Senate shall chuse their other Officers, and also a President pro tempore, in the Absence of the Vice President, or when he shall exercise the Office of President of the United States.

The Senate shall have the sole Power to try all Impeachments. When sitting for that Purpose, they shall be on Oath or Affirmation. When the President of the United States is tried the Chief Justice shall preside: And no Person shall be convicted without the Concurrence of two thirds of the Members present.

Judgment in Cases of Impeachment shall not extend further than to removal from Office, and disqualification to hold and enjoy any Office of honor, Trust or Profit under the United States: but the Party convicted shall nevertheless be liable and subject to Indictment, Trial, Judgment and Punishment, according to Law.

Section. 4. The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at

any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

The Congress shall assemble at least once in every Year, and such Meeting shall be on the first Monday in December, unless they shall by Law appoint a different Day.

Section. 5. Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members, and a Majority of each shall constitute a Quorum to do Business; but a smaller Number may adjourn from day to day, and may be authorized to compel the Attendance of absent Members, in such Manner, and under such Penalties as each House may provide.

Each House may determine the Rules of its Proceedings, punish its Members for disorderly Behaviour, and, with the Concurrence of two thirds, expel a Member.

Each House shall keep a Journal of its Proceedings, and from time to time publish the same, excepting such Parts as may in their Judgment require Secrecy; and the Yeas and Nays of the Members of either House on any question shall, at the Desire of one fifth of those Present, be entered on the Journal.

Neither House, during the Session of Congress, shall, without the Consent of the other, adjourn for more than three days, nor to any other Place than that in which the two Houses shall be sitting.

Section. 6. The Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States. They shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning

from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place.

No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been encreased during such time; and no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office.

Section. 7. All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with amendments as on other Bills.

Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a law, be presented to the President of the United States: If he approve he shall sign it, but if not he shall return it, with his Objections to that House in which it shall have originated, who shall enter the Objections at large on their Journal, and proceed to reconsider it. If after such Reconsideration two thirds of that House shall agree to pass the Bill, it shall be sent, together with the Objections, to the other House, by which it shall likewise be reconsidered, and if approved by two thirds of that House, it shall become a Law. But in all such Cases the Votes of both Houses shall be determined by Yeas and Nays, and the Names of the Persons voting for and against the Bill shall be entered on the Journal of each House respectively. If any Bill shall not be returned by the President within ten Days (Sundays excepted) after it shall have been presented to him, the Same shall be a Law, in like Manner as if he had signed it, unless the Congress

by their Adjournment prevent its Return, in which Case it shall not be a Law

Every Order, Resolution, or Vote to which the Concurrence of the Senate and House of Representatives may be necessary (except on a question of Adjournment) shall be presented to the President of the United States; and before the Same shall take Effect, shall be approved by him, or being disapproved by him, shall be repassed by two thirds of the Senate and House of Representatives, according to the Rules and Limitations prescribed in the Case of a Bill.

Section. 8. The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States;

To borrow Money on the credit of the United States;

To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes;

To establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States;

To coin Money, regulate the Value thereof, and of foreign Coin, and fix the Standard of Weights and Measures;

To provide for the Punishment of counterfeiting the Securities and current Coin of the United States;

To establish Post Offices and post Roads;

To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries;

## Constitution of the United States

## Fifth Amendment

Fifth Amendment Explained

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

peared; in par. (19A), dollar amount "1,868,200" was adjusted to "1,924,550" each time it appeared; and, in par. (51D), dollar amount "2,490,925" was adjusted to "2,566,050" each time it appeared.

By notice dated Feb. 12, 2013, 78 F.R. 12089, effective Apr. 1, 2013, in par. (3), dollar amount "175,750" was adjusted to "186,825"; in par. (18), dollar amount "3,792,650" was adjusted to "4,031,575" each time it appeared; in par. (19A), dollar amount "1,757,475" was adjusted to "1,868,200" each time it appeared; and, in par. (51D), dollar amount "2,343,300" was adjusted to "2,490,925" each time it appeared.

By notice dated Feb. 19, 2010, 75 F.R. 8747, effective Apr. 1, 2010, in par. (3), dollar amount "164,250" was adjusted to "175,750"; in par. (18)(A), (B)(ii), dollar amount "3,544,525" was adjusted to "3,792,650" each time it appeared; in par. (19A)(A)(i), (B)(ii)(II), dollar amount "1,642,500" was adjusted to "1,757,475" each time it appeared; and, in par. (51D)(A), (B), dollar amount "2,190,000" was adjusted to "2,343,300" each time it appeared.

By notice dated Feb. 7, 2007, 72 F.R. 7082, effective Apr. 1, 2007, in par. (3), dollar amount "150,000" was adjusted to "164,250"; in par. (18), dollar amount "3,237,000" was adjusted to "3,544,525" each time it appeared; in par. (19A), dollar amount "1,500,000" was adjusted to "1,642,500" each time it appeared; and, in par. (51D), dollar amount "2,000,000" was adjusted to "2,190,000" each time it appeared. In par. (18), Pub. L. 116–51 subsequently substituted "10,000,000" for "3,237,000" both places it appeared, see 2019 Amendment note above.

## § 102. Rules of construction

In this title—

(1) "after notice and a hearing", or a similar phrase—

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if—

(i) such a hearing is not requested timely by a party in interest; or

(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act;

(2) "claim against the debtor" includes claim against property of the debtor;

(3) "includes" and "including" are not limiting;

(4) "may not" is prohibitive, and not permissive;

(5) "or" is not exclusive;

(6) "order for relief" means entry of an order for relief;

(7) the singular includes the plural;

(8) a definition, contained in a section of this title that refers to another section of this title, does not, for the purpose of such reference, affect the meaning of a term used in such other section; and

(9) "United States trustee" includes a designee of the United States trustee.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2554; Pub. L. 98–353, title III, § 422, July 10, 1984, 98 Stat. 369; Pub. L. 99–554, title II, § 202, Oct. 27, 1986, 100 Stat. 3097.)

### HISTORICAL AND REVISION NOTES

#### LEGISLATIVE STATEMENTS

Section 102 specifies various rules of construction but is not exclusive. Other rules of construction that are not set out in title 11 are nevertheless intended to be followed in construing the bankruptcy code. For example, the phrase "on request of a party in interest" or a similar phrase, is used in connection with an action that the court may take in various sections of the Code. The phrase is intended to restrict the court from acting sua sponte. Rules of bankruptcy procedure or court decisions will determine who is a party in interest for the particular purposes of the provision in question, but the court will not be permitted to act on its own.

Although "property" is not construed in this section, it is used consistently throughout the code in its broadest sense, including cash, all interests in property, such as liens, and every kind of consideration including promises to act or forbear to act as in section 548(d).

Section 102(1) expands on a rule of construction contained in H.R. 8200 as passed by the House and in the Senate amendment. The phrase "after notice and a hearing", or a similar phrase, is intended to be construed according to the particular proceeding to mean after such notice as is appropriate in the particular circumstances, and such opportunity, if any, for a hearing as is appropriate in the particular circumstances. If a provision of title 11 authorizes an act to be taken "after notice and a hearing" this means that if appropriate notice is given and no party to whom such notice is sent timely requests a hearing, then the act sought to be taken may be taken without an actual hearing.

In very limited emergency circumstances, there will be insufficient time for a hearing to be commenced before an action must be taken. The action sought to be taken may be taken if authorized by the court at an ex parte hearing of which a record is made in open court. A full hearing after the fact will be available in such an instance.

In some circumstances, such as under section 1128, the bill requires a hearing and the court may act only after a hearing is held. In those circumstances the judge will receive evidence before ruling. In other circumstances, the court may take action "after notice and a hearing," if no party in interest requests a hearing. In that event a court order authorizing the action to be taken is not necessary as the ultimate action taken by the court implies such an authorization.

Section 102(8) is new. It contains a rule of construction indicating that a definition contained in a section in title 11 that refers to another section of title 11 does not, for the purposes of such reference, take the meaning of a term used in the other section. For example, section 522(a)(2) defines "value" for the purposes of section 522. Section 548(d)(2) defines "value" for purposes of section 548. When section 548 is incorporated by reference in section 522, this rule of construction makes clear that the definition of "value" in section 548 governs its meaning in section 522 notwithstanding a different definition of "value" in section 522(a)(2).

#### SENATE REPORT NO. 95–989

Section 102 provides seven rules of construction. Some are derived from current law; others are derived from 1 U.S.C. 1; a few are new. They apply generally throughout proposed title 11. These are terms that are not appropriate for definition, but that require an explanation.

Paragraph (1) defines the concept of "after notice and a hearing." The concept is central to the bill and to the separation of the administrative and judicial functions of bankruptcy judges. The phrase means after such notice as is appropriate in the particular circumstances (to be prescribed by either the Rules of Bankruptcy Procedure or by the court in individual circumstances that the Rules do not cover. In many cases, the Rules will provide for combined notice of several proceedings), and such opportunity for a hearing as is appropriate in the particular circumstances. Thus, a hearing will not be necessary in every instance. If there is no objection to the proposed action, the action may go ahead without court action. This is a significant change from present law, which requires the affirma-

Add0014

| 11 U.S.C. | Dollar amount to be adjusted | New (adjusted) dollar amount[1] |
|---|---|---|
| (3)—in paragraph (3) | $625 | $700 |
| | $13,400 | $14,875. |
| (4)—in paragraph (4) | $1,700 | $1,875. |
| (5)—in paragraph (5) | $1,325 | $1,475 |
| | $12,575 | $13,950. |
| (6)—in paragraph (6) | $2,525 | $2,800. |
| (7)—in paragraph (8) | $13,400 | $14,875. |
| (8)—in paragraph (11)(D) | $25,150 | $27,900. |
| Section 522(f)(3)—exception to lien avoidance under certain state laws. | $6,825 | $7,575. |
| Section 522(f)(4)—items excluded from definition of household goods for lien avoidance purposes. | $725 (each time it appears). | $800 (each time it appears). |
| Section 522(n)—maximum aggregate value of assets in individual retirement accounts exempted. | $1,362,800 | $1,512,350. |
| Section 522(p)—state homestead exemption, limit for interest acquired 1215 days before filing. | $170,350 | $189,050. |
| Section 522(q)—state homestead exemption, limit under particular circumstances. | $170,350 | $189,050. |
| Section 523(a)(2)(C)—exceptions to discharge—presumption of nondischargeability: | | |
| (1)—in paragraph (i)(I)—consumer debts for luxury goods or services incurred < 90 days before filing owed to a single creditor in the aggregate. | $725 | $800. |
| (2)—in paragraph (i)(II)—certain cash advances obtained < 70 days before filing, in the aggregate. | $1,000 | $1,100. |
| Section 541(b)—certain property of the estate exclusion limits. | $6,825 (each time it appears). | $7,575 (each time it appears). |
| Section 547(c)(9)—minimum preference avoidance value in cases with primarily non-consumer debts. | $6,825 | $7,575. |
| Section 707(b)—dismissal of a chapter 7 case or conversion to chapter 11 or 13 (means test): | | |
| (1)—in paragraph (2)(A)(i)(I) | $8,175 | $9,075. |
| (2)—in paragraph (2)(A)(i)(II) | $13,650 | $15,150. |
| (3)—in paragraph (2)(A)(ii)(IV) | $2,050 | $2,275. |
| (4)—in paragraph (2)(B)(iv)(I) | $8,175 | $9,075. |
| (5)—in paragraph (2)(B)(iv)(II) | $13,650 | $15,150. |
| (6)—in paragraph (5)(B) | $1,375 | $1,525. |
| (7)—in paragraph (6)(C) | $750 | $825. |
| (8)—in paragraph (7)(A)(iii) | $750 | $825. |
| Section 1322(d)—length of chapter 13 plan, current monthly income, 4+ household. | $750 (each time it appears). | $825 (each time it appears). |
| Section 1325(b)—confirmation of chapter 13 plan, current monthly income, 4+ household. | $750 (each time it appears). | $825 (each time it appears). |
| Section 1326(b)(3)—payments to former chapter 7 trustee. | $25 | $25. |

[1] The New (Adjusted) Dollar Amounts reflect a 10.97347880254584 percent increase, rounded to the nearest $25.

Similar notices by the Judicial Conference of the United States adjusting the dollar amounts in provisions specified in subsec. (a) of this section were contained in the following:

Feb. 5, 2019, 84 F.R. 3488, effective Apr. 1, 2019.
Feb. 16, 2016, 81 F.R. 8748, effective Apr. 1, 2016.
Feb. 12, 2013, 78 F.R. 12089, effective Apr. 1, 2013.
Feb. 19, 2010, 75 F.R. 8747, effective Apr. 1, 2010.
Feb. 7, 2007, 72 F.R. 7082, effective Apr. 1, 2007.
Feb. 18, 2004, 69 F.R. 8482, effective Apr. 1, 2004.
Feb. 13, 2001, 66 F.R. 10910, effective Apr. 1, 2001.
Feb. 3, 1998, 63 F.R. 7179, effective Apr. 1, 1998.

### § 105. Power of court

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

(b) Notwithstanding subsection (a) of this section, a court may not appoint a receiver in a case under this title.

(c) The ability of any district judge or other officer or employee of a district court to exercise any of the authority or responsibilities conferred upon the court under this title shall be determined by reference to the provisions relating to such judge, officer, or employee set forth in title 28. This subsection shall not be interpreted to exclude bankruptcy judges and other officers or employees appointed pursuant to chapter 6 of title 28 from its operation.

(d) The court, on its own motion or on the request of a party in interest—

(1) shall hold such status conferences as are necessary to further the expeditious and economical resolution of the case; and

(2) unless inconsistent with another provision of this title or with applicable Federal Rules of Bankruptcy Procedure, may issue an order at any such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically, including an order that—

(A) sets the date by which the trustee must assume or reject an executory contract or unexpired lease; or

(B) in a case under chapter 11 of this title—

(i) sets a date by which the debtor, or trustee if one has been appointed, shall file a disclosure statement and plan;

(ii) sets a date by which the debtor, or trustee if one has been appointed, shall solicit acceptances of a plan;

(iii) sets the date by which a party in interest other than a debtor may file a plan;

(iv) sets a date by which a proponent of a plan, other than the debtor, shall solicit acceptances of such plan;

(v) fixes the scope and format of the notice to be provided regarding the hearing on approval of the disclosure statement; or

(vi) provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2555; Pub. L. 98–353, title I, §118, July 10, 1984, 98 Stat. 344; Pub. L. 99–554, title II, §203, Oct. 27, 1986, 100 Stat. 3097; Pub. L. 103–394, title I, §104(a), Oct. 22, 1994, 108 Stat. 4108; Pub. L. 109–8, title IV, §440, Apr. 20, 2005, 119 Stat. 114; Pub. L. 111–327, §2(a)(3), Dec. 22, 2010, 124 Stat. 3557.)

HISTORICAL AND REVISION NOTES

SENATE REPORT NO. 95–989

Section 105 is derived from section 2a (15) of present law [section 11(a)(15) of former title 11], with two changes. First, the limitation on the power of a bankruptcy judge (the power to enjoin a court being reserved to the district judge) is removed as inconsistent with the increased powers and jurisdiction of the new bankruptcy court. Second, the bankruptcy judge is prohibited from appointing a receiver in a case under title

HOUSE REPORT NO. 95-595

The section specifies four means of providing adequate protection. They are neither exclusive nor exhaustive. They all rely, however, on the value of the protected entity's interest in the property involved. The section does not specify how value is to be determined, nor does it specify when it is to be determined. These matters are left to case-by-case interpretation and development. It is expected that the courts will apply the concept in light of facts of each case and general equitable principles. It is not intended that the courts will develop a hard and fast rule that will apply in every case. The time and method of valuation is not specified precisely, in order to avoid that result. There are an infinite number of variations possible in dealings between debtors and creditors, the law is continually developing, and new ideas are continually being implemented in this field. The flexibility is important to permit the courts to adapt to varying circumstances and changing modes of financing.

Neither is it expected that the courts will construe the term value to mean, in every case, forced sale liquidation value or full going concern value. There is wide latitude between those two extremes. In any particular case, especially a reorganization case, the determination of which entity should be entitled to the difference between the going concern value and the liquidation value must be based on equitable considerations based on the facts of the case. It will frequently be based on negotiation between the parties. Only if they cannot agree will the court become involved.

The first method of adequate protection specified is periodic cash payments by the estate, to the extent of a decrease in value of the opposing entity's interest in the property involved. This provision is derived from *In re Yale Express, Inc.*, 384 F.2d 990 (2d Cir. 1967) (though in that case it is not clear whether the payments required were adequate to compensate the secured creditors for their loss). The use of periodic payments may be appropriate, where, for example, the property in question is depreciating at a relatively fixed rate. The periodic payments would be to compensate for the depreciation.

The second method is the provision of an additional or replacement lien on other property to the extent of the decrease in value of the property involved. The purpose of this method is to provide the protected entity with a means of realizing the value of the original property, if it should decline during the case, by granting an interest in additional property from whose value the entity may realize its loss.

The third method is the granting of an administrative expense priority to the protected entity to the extent of his loss. This method, more than the others, requires a prediction as to whether the unencumbered assets that will remain if the case if converted from reorganization to liquidation will be sufficient to pay the protected entity in full. It is clearly the most risky, from the entity's perspective, and should be used only when there is relative certainty that administrative expenses will be able to be paid in full in the event of liquidation.

The fourth [enacted as third] method gives the parties and the courts flexibility by allowing such other relief as will result in the realization by the protected entity of the value of its interest in the property involved. Under this provision, the courts will be able to adapt to new methods of financing and to formulate protection that is appropriate to the circumstances of the case if none of the other methods would accomplish the desired result. For example, another form of adequate protection might be the guarantee by a third party outside the judicial process of compensation for any loss incurred in the case. Adequate protection might also, in some circumstances, be provided by permitting a secured creditor to bid in his claim at the sale of the property and to offset the claim against the price bid in.

The paragraph also defines, more clearly than the others, the general concept of adequate protection, by requiring such relief as will result in the realization of value. It is the general category, and as such, is defined by the concept involved rather than any particular method of adequate protection.

#### Editorial Notes

##### AMENDMENTS

1984—Par. (1). Pub. L. 98-353 inserted "a cash payment or" after "make".

#### Statutory Notes and Related Subsidiaries

##### EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98-353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98-353, set out as a note under section 101 of this title.

### § 362. Automatic stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—

(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor;

(2) under subsection (a)—

(A) of the commencement or continuation of a civil action or proceeding—

(i) for the establishment of paternity;

(ii) for the establishment or modification of an order for domestic support obligations;

(iii) concerning child custody or visitation;

(iv) for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate; or

(v) regarding domestic violence;

(B) of the collection of a domestic support obligation from property that is not property of the estate;

(C) with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute;

(D) of the withholding, suspension, or restriction of a driver's license, a professional or occupational license, or a recreational license, under State law, as specified in section 466(a)(16) of the Social Security Act;

(E) of the reporting of overdue support owed by a parent to any consumer reporting agency as specified in section 466(a)(7) of the Social Security Act;

(F) of the interception of a tax refund, as specified in sections 464 and 466(a)(3) of the Social Security Act or under an analogous State law; or

(G) of the enforcement of a medical obligation, as specified under title IV of the Social Security Act;

(3) under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title;

(4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power;

[(5) Repealed. Pub. L. 105–277, div. I, title VI, §603(1), Oct. 21, 1998, 112 Stat. 2681–866;]

(6) under subsection (a) of this section, of the exercise by a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency of any contractual right (as defined in section 555 or 556) under any security agreement or arrangement or other credit enhancement forming a part of or related to any commodity contract, forward contract or securities contract, or of any contractual right (as defined in section 555 or 556) to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such contracts, including any master agreement for such contracts;

(7) under subsection (a) of this section, of the exercise by a repo participant or financial participant of any contractual right (as defined in section 559) under any security agreement or arrangement or other credit enhancement forming a part of or related to any repurchase agreement, or of any contractual right (as defined in section 559) to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such agreements, including any master agreement for such agreements;

(8) under subsection (a) of this section, of the commencement of any action by the Secretary of Housing and Urban Development to foreclose a mortgage or deed of trust in any case in which the mortgage or deed of trust held by the Secretary is insured or was formerly insured under the National Housing Act and covers property, or combinations of property, consisting of five or more living units;

(9) under subsection (a), of—

(A) an audit by a governmental unit to determine tax liability;

(B) the issuance to the debtor by a governmental unit of a notice of tax deficiency;

(C) a demand for tax returns; or

(D) the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor).

(10) under subsection (a) of this section, of any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property;

(11) under subsection (a) of this section, of the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such an instrument;

(12) under subsection (a) of this section, after the date which is 90 days after the filing of such petition, of the commencement or continuation, and conclusion to the entry of final judgment, of an action which involves a debtor subject to reorganization pursuant to chapter 11 of this title and which was brought by the Secretary of Transportation under section 31325 of title 46 (including distribution of any proceeds of sale) to foreclose a preferred ship or fleet mortgage, or a security interest in or relating to a vessel or vessel under construc-

tion, held by the Secretary of Transportation under chapter 537 of title 46 or section 109(h) of title 49, or under applicable State law;

(13) under subsection (a) of this section, after the date which is 90 days after the filing of such petition, of the commencement or continuation to the entry of final judgment, of an action which involves a debtor subject to reorganization pursuant to chapter 11 of this title and which was brought by the Secretary of Commerce under section 31325 of title 46 (including distribution of any proceeds of sale) to foreclose a preferred ship or fleet mortgage in a vessel or a mortgage, deed of trust, or other security interest in a fishing facility held by the Secretary of Commerce under chapter 537 of title 46;

(14) under subsection (a) of this section, of any action by an accrediting agency regarding the accreditation status of the debtor as an educational institution;

(15) under subsection (a) of this section, of any action by a State licensing body regarding the licensure of the debtor as an educational institution;

(16) under subsection (a) of this section, of any action by a guaranty agency, as defined in section 435(j) of the Higher Education Act of 1965 or the Secretary of Education regarding the eligibility of the debtor to participate in programs authorized under such Act;

(17) under subsection (a) of this section, of the exercise by a swap participant or financial participant of any contractual right (as defined in section 560) under any security agreement or arrangement or other credit enhancement forming a part of or related to any swap agreement, or of any contractual right (as defined in section 560) to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such agreements, including any master agreement for such agreements;

(18) under subsection (a) of the creation or perfection of a statutory lien for an ad valorem property tax, or a special tax or special assessment on real property whether or not ad valorem, imposed by a governmental unit, if such tax or assessment comes due after the date of the filing of the petition;

(19) under subsection (a), of withholding of income from a debtor's wages and collection of amounts withheld, under the debtor's agreement authorizing that withholding and collection for the benefit of a pension, profit-sharing, stock bonus, or other plan established under section 401, 403, 408, 408A, 414, 457, or 501(c) of the Internal Revenue Code of 1986, that is sponsored by the employer of the debtor, or an affiliate, successor, or predecessor of such employer—

(A) to the extent that the amounts withheld and collected are used solely for payments relating to a loan from a plan under section 408(b)(1) of the Employee Retirement Income Security Act of 1974 or is subject to section 72(p) of the Internal Revenue Code of 1986; or

(B) a loan from a thrift savings plan permitted under subchapter III of chapter 84 of title 5, that satisfies the requirements of section 8433(g) of such title;

but nothing in this paragraph may be construed to provide that any loan made under a governmental plan under section 414(d), or a contract or account under section 403(b), of the Internal Revenue Code of 1986 constitutes a claim or a debt under this title;

(20) under subsection (a), of any act to enforce any lien against or security interest in real property following entry of the order under subsection (d)(4) as to such real property in any prior case under this title, for a period of 2 years after the date of the entry of such an order, except that the debtor, in a subsequent case under this title, may move for relief from such order based upon changed circumstances or for other good cause shown, after notice and a hearing;

(21) under subsection (a), of any act to enforce any lien against or security interest in real property—

(A) if the debtor is ineligible under section 109(g) to be a debtor in a case under this title; or

(B) if the case under this title was filed in violation of a bankruptcy court order in a prior case under this title prohibiting the debtor from being a debtor in another case under this title;

(22) subject to subsection (l), under subsection (a)(3), of the continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor;

(23) subject to subsection (m), under subsection (a)(3), of an eviction action that seeks possession of the residential property in which the debtor resides as a tenant under a lease or rental agreement based on endangerment of such property or the illegal use of controlled substances on such property, but only if the lessor files with the court, and serves upon the debtor, a certification under penalty of perjury that such an eviction action has been filed, or that the debtor, during the 30-day period preceding the date of the filing of the certification, has endangered property or illegally used or allowed to be used a controlled substance on the property;

(24) under subsection (a), of any transfer that is not avoidable under section 544 and that is not avoidable under section 549;

(25) under subsection (a), of—

(A) the commencement or continuation of an investigation or action by a securities self regulatory organization to enforce such organization's regulatory power;

(B) the enforcement of an order or decision, other than for monetary sanctions, obtained in an action by such securities self regulatory organization to enforce such organization's regulatory power; or

(C) any act taken by such securities self regulatory organization to delist, delete, or

refuse to permit quotation of any stock that does not meet applicable regulatory requirements;

(26) under subsection (a), of the setoff under applicable nonbankruptcy law of an income tax refund, by a governmental unit, with respect to a taxable period that ended before the date of the order for relief against an income tax liability for a taxable period that also ended before the date of the order for relief, except that in any case in which the setoff of an income tax refund is not permitted under applicable nonbankruptcy law because of a pending action to determine the amount or legality of a tax liability, the governmental unit may hold the refund pending the resolution of the action, unless the court, on the motion of the trustee and after notice and a hearing, grants the taxing authority adequate protection (within the meaning of section 361) for the secured claim of such authority in the setoff under section 506(a);

(27) under subsection (a) of this section, of the exercise by a master netting agreement participant of any contractual right (as defined in section 555, 556, 559, or 560) under any security agreement or arrangement or other credit enhancement forming a part of or related to any master netting agreement, or of any contractual right (as defined in section 555, 556, 559, or 560) to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such master netting agreements to the extent that such participant is eligible to exercise such rights under paragraph (6), (7), or (17) for each individual contract covered by the master netting agreement in issue;

(28) under subsection (a), of the exclusion by the Secretary of Health and Human Services of the debtor from participation in the medicare program or any other Federal health care program (as defined in section 1128B(f) of the Social Security Act pursuant to title XI or XVIII of such Act); and

(29) under subsection (a)(1) of this section, of any action by—

(A) an amateur sports organization, as defined in section 220501(b) of title 36, to replace a national governing body, as defined in that section, under section 220528 of that title; or

(B) the corporation, as defined in section 220501(b) of title 36, to revoke the certification of a national governing body, as defined in that section, under section 220521 of that title.

The provisions of paragraphs (12) and (13) of this subsection shall apply with respect to any such petition filed on or before December 31, 1989.

(c) Except as provided in subsections (d), (e), (f), and (h) of this section—

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied;

(3) if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)—

(A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case;

(B) on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed; and

(C) for purposes of subparagraph (B), a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)—

(i) as to all creditors, if—

(I) more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period;

(II) a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to—

(aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);

(bb) provide adequate protection as ordered by the court; or

(cc) perform the terms of a plan confirmed by the court; or

(III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded—

(aa) if a case under chapter 7, with a discharge; or

(bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; and

(ii) as to any creditor that commenced an action under subsection (d) in a pre-

vious case in which the individual was a debtor if, as of the date of dismissal of such case, that action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to actions of such creditor; and

(4)(A)(i) if a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b), the stay under subsection (a) shall not go into effect upon the filing of the later case; and

(ii) on request of a party in interest, the court shall promptly enter an order confirming that no stay is in effect;

(B) if, within 30 days after the filing of the later case, a party in interest requests the court may order the stay to take effect in the case as to any or all creditors (subject to such conditions or limitations as the court may impose), after notice and a hearing, only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed;

(C) a stay imposed under subparagraph (B) shall be effective on the date of the entry of the order allowing the stay to go into effect; and

(D) for purposes of subparagraph (B), a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)—

(i) as to all creditors if—

(I) 2 or more previous cases under this title in which the individual was a debtor were pending within the 1-year period;

(II) a previous case under this title in which the individual was a debtor was dismissed within the time period stated in this paragraph after the debtor failed to file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney), failed to provide adequate protection as ordered by the court, or failed to perform the terms of a plan confirmed by the court; or

(III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under this title, or any other reason to conclude that the later case will not be concluded, if a case under chapter 7, with a discharge, and if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; or

(ii) as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, such action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to such action of such creditor.

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization;

(3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—

(A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or

(B) the debtor has commenced monthly payments that—

(i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and

(ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate; or

(4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—

(A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

(B) multiple bankruptcy filings affecting such real property.

If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

(e)(1) Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section. A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section. The court shall order such stay continued in effect pending the conclusion of the final hearing under subsection (d) of this section if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing. If the hearing under this subsection is a preliminary hearing, then such final hearing shall be concluded not later than thirty days after the conclusion of such preliminary hearing, unless the 30-day period is extended with the consent of the parties in interest or for a specific time which the court finds is required by compelling circumstances.

(2) Notwithstanding paragraph (1), in a case under chapter 7, 11, or 13 in which the debtor is an individual, the stay under subsection (a) shall terminate on the date that is 60 days after a request is made by a party in interest under subsection (d), unless—

(A) a final decision is rendered by the court during the 60-day period beginning on the date of the request; or

(B) such 60-day period is extended—

(i) by agreement of all parties in interest; or

(ii) by the court for such specific period of time as the court finds is required for good cause, as described in findings made by the court.

(f) Upon request of a party in interest, the court, with or without a hearing, shall grant such relief from the stay provided under subsection (a) of this section as is necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer such damage before there is an opportunity for notice and a hearing under subsection (d) or (e) of this section.

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

(h)(1) In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)—

(A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and

(B) to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.

(2) Paragraph (1) does not apply if the court determines, on the motion of the trustee filed before the expiration of the applicable time set by section 521(a)(2), after notice and a hearing, that such personal property is of consequential value or benefit to the estate, and orders appropriate adequate protection of the creditor's interest, and orders the debtor to deliver any collateral in the debtor's possession to the trustee. If the court does not so determine, the stay provided by subsection (a) shall terminate upon the conclusion of the hearing on the motion.

(i) If a case commenced under chapter 7, 11, or 13 is dismissed due to the creation of a debt repayment plan, for purposes of subsection (c)(3), any subsequent case commenced by the debtor under any such chapter shall not be presumed to be filed not in good faith.

(j) On request of a party in interest, the court shall issue an order under subsection (c) confirming that the automatic stay has been terminated.

(k)(1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

(2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

(l)(1) Except as otherwise provided in this subsection, subsection (b)(22) shall apply on the date that is 30 days after the date on which the bankruptcy petition is filed, if the debtor files with the petition and serves upon the lessor a certification under penalty of perjury that—

(A) under nonbankruptcy law applicable in the jurisdiction, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after that judgment for possession was entered; and

(B) the debtor (or an adult dependent of the debtor) has deposited with the clerk of the court, any rent that would become due during the 30-day period after the filing of the bankruptcy petition.

(2) If, within the 30-day period after the filing of the bankruptcy petition, the debtor (or an

adult dependent of the debtor) complies with paragraph (1) and files with the court and serves upon the lessor a further certification under penalty of perjury that the debtor (or an adult dependent of the debtor) has cured, under nonbankruptcy law applicable in the jurisdiction, the entire monetary default that gave rise to the judgment under which possession is sought by the lessor, subsection (b)(22) shall not apply, unless ordered to apply by the court under paragraph (3).

(3)(A) If the lessor files an objection to any certification filed by the debtor under paragraph (1) or (2), and serves such objection upon the debtor, the court shall hold a hearing within 10 days after the filing and service of such objection to determine if the certification filed by the debtor under paragraph (1) or (2) is true.

(B) If the court upholds the objection of the lessor filed under subparagraph (A)—

(i) subsection (b)(22) shall apply immediately and relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to complete the process to recover full possession of the property; and

(ii) the clerk of the court shall immediately serve upon the lessor and the debtor a certified copy of the court's order upholding the lessor's objection.

(4) If a debtor, in accordance with paragraph (5), indicates on the petition that there was a judgment for possession of the residential rental property in which the debtor resides and does not file a certification under paragraph (1) or (2)—

(A) subsection (b)(22) shall apply immediately upon failure to file such certification, and relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to complete the process to recover full possession of the property; and

(B) the clerk of the court shall immediately serve upon the lessor and the debtor a certified copy of the docket indicating the absence of a filed certification and the applicability of the exception to the stay under subsection (b)(22).

(5)(A) Where a judgment for possession of residential property in which the debtor resides as a tenant under a lease or rental agreement has been obtained by the lessor, the debtor shall so indicate on the bankruptcy petition and shall provide the name and address of the lessor that obtained that pre-petition judgment on the petition and on any certification filed under this subsection.

(B) The form of certification filed with the petition, as specified in this subsection, shall provide for the debtor to certify, and the debtor shall certify—

(i) whether a judgment for possession of residential rental housing in which the debtor resides has been obtained against the debtor before the date of the filing of the petition; and

(ii) whether the debtor is claiming under paragraph (1) that under nonbankruptcy law applicable in the jurisdiction, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after that judgment of possession was entered, and has made the appropriate deposit with the court.

(C) The standard forms (electronic and otherwise) used in a bankruptcy proceeding shall be amended to reflect the requirements of this subsection.

(D) The clerk of the court shall arrange for the prompt transmittal of the rent deposited in accordance with paragraph (1)(B) to the lessor.

(m)(1) Except as otherwise provided in this subsection, subsection (b)(23) shall apply on the date that is 15 days after the date on which the lessor files and serves a certification described in subsection (b)(23).

(2)(A) If the debtor files with the court an objection to the truth or legal sufficiency of the certification described in subsection (b)(23) and serves such objection upon the lessor, subsection (b)(23) shall not apply, unless ordered to apply by the court under this subsection.

(B) If the debtor files and serves the objection under subparagraph (A), the court shall hold a hearing within 10 days after the filing and service of such objection to determine if the situation giving rise to the lessor's certification under paragraph (1) existed or has been remedied.

(C) If the debtor can demonstrate to the satisfaction of the court that the situation giving rise to the lessor's certification under paragraph (1) did not exist or has been remedied, the stay provided under subsection (a)(3) shall remain in effect until the termination of the stay under this section.

(D) If the debtor cannot demonstrate to the satisfaction of the court that the situation giving rise to the lessor's certification under paragraph (1) did not exist or has been remedied—

(i) relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to proceed with the eviction; and

(ii) the clerk of the court shall immediately serve upon the lessor and the debtor a certified copy of the court's order upholding the lessor's certification.

(3) If the debtor fails to file, within 15 days, an objection under paragraph (2)(A)—

(A) subsection (b)(23) shall apply immediately upon such failure and relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to complete the process to recover full possession of the property; and

(B) the clerk of the court shall immediately serve upon the lessor and the debtor a certified copy of the docket indicating such failure.

(n)(1) Except as provided in paragraph (2), subsection (a) does not apply in a case in which the debtor—

(A) is a debtor in a small business case pending at the time the petition is filed;

(B) was a debtor in a small business case that was dismissed for any reason by an order that became final in the 2-year period ending on the date of the order for relief entered with respect to the petition;

(C) was a debtor in a small business case in which a plan was confirmed in the 2-year pe-

riod ending on the date of the order for relief entered with respect to the petition; or

(D) is an entity that has acquired substantially all of the assets or business of a small business debtor described in subparagraph (A), (B), or (C), unless such entity establishes by a preponderance of the evidence that such entity acquired substantially all of the assets or business of such small business debtor in good faith and not for the purpose of evading this paragraph.

(2) Paragraph (1) does not apply—

(A) to an involuntary case involving no collusion by the debtor with creditors; or

(B) to the filing of a petition if—

(i) the debtor proves by a preponderance of the evidence that the filing of the petition resulted from circumstances beyond the control of the debtor not foreseeable at the time the case then pending was filed; and

(ii) it is more likely than not that the court will confirm a feasible plan, but not a liquidating plan, within a reasonable period of time.

(o) The exercise of rights not subject to the stay arising under subsection (a) pursuant to paragraph (6), (7), (17), or (27) of subsection (b) shall not be stayed by any order of a court or administrative agency in any proceeding under this title.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2570; Pub. L. 97–222, §3, July 27, 1982, 96 Stat. 235; Pub. L. 98–353, title III, §§304, 363(b), 392, 441, July 10, 1984, 98 Stat. 352, 363, 365, 371; Pub. L. 99–509, title V, §5001(a), Oct. 21, 1986, 100 Stat. 1911; Pub. L. 99–554, title II, §§257(j), 283(d), Oct. 27, 1986, 100 Stat. 3115, 3116; Pub. L. 101–311, title I, §102, title II, §202, June 25, 1990, 104 Stat. 267, 269; Pub. L. 101–508, title III, §3007(a)(1), Nov. 5, 1990, 104 Stat. 1388–28; Pub. L. 103–394, title I, §§101, 116, title II, §§204(a), 218(b), title III, §304(b), title IV, §401, title V, §501(b)(2), (d)(7), Oct. 22, 1994, 108 Stat. 4107, 4119, 4122, 4128, 4132, 4141, 4142, 4144; Pub. L. 105–277, div. I, title VI, §603, Oct. 21, 1998, 112 Stat. 2681–886; Pub. L. 109–8, title I, §106(f), title II, §§214, 224(b), title III, §§302, 303, 305(1), 311, 320, title IV, §§401(b), 441, 444, title VII, §§709, 718, title IX, §907(d), (o)(1), (2), title XI, §1106, title XII, §1225, Apr. 20, 2005, 119 Stat. 41, 54, 64, 75, 77, 79, 84, 94, 104, 114, 117, 127, 131, 176, 181, 182, 192, 199; Pub. L. 109–304, §17(b)(1), Oct. 6, 2006, 120 Stat. 1706; Pub. L. 109–390, §5(a)(2), Dec. 12, 2006, 120 Stat. 2696; Pub. L. 111–327, §2(a)(12), Dec. 22, 2010, 124 Stat. 3558; Pub. L. 116–189, §9, Oct. 30, 2020, 134 Stat. 970.)

### HISTORICAL AND REVISION NOTES

#### LEGISLATIVE STATEMENTS

Section 362(a)(1) of the House amendment adopts the provision contained in the Senate amendment enjoining the commencement or continuation of a judicial, administrative, or other proceeding to recover a claim against the debtor that arose before the commencement of the case. The provision is beneficial and interacts with section 362(a)(6), which also covers assessment, to prevent harassment of the debtor with respect to pre-petition claims.

Section 362(a)(7) contains a provision contained in H.R. 8200 as passed by the House. The differing provision in the Senate amendment was rejected. It is not possible that a debt owing to the debtor may be offset against an interest in the debtor.

Section 362(a)(8) is new. The provision stays the commencement or continuation of any proceeding concerning the debtor before the U.S. Tax Court.

Section 362(b)(4) indicates that the stay under section 362(a)(1) does not apply to affect the commencement or continuation of an action or proceeding by a governmental unit to enforce the governmental unit's police or regulatory power. This section is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate.

Section 362(b)(6) of the House amendment adopts a provision contained in the Senate amendment restricting the exception to the automatic stay with respect to setoffs to permit only the setoff of mutual debts and claims. Traditionally, the right of setoff has been limited to mutual debts and claims and the lack of the clarifying term "mutual" in H.R. 8200 as passed by the House created an unintentional ambiguity. Section 362(b)(7) of the House amendment permits the issuance of a notice of tax deficiency. The House amendment rejects section 362(b)(7) in the Senate amendment. It would have permitted a particular governmental unit to obtain a pecuniary advantage without a hearing on the merits contrary to the exceptions contained in sections 362(b)(4) and (5).

Section 362(d) of the House amendment represents a compromise between comparable provisions in the House bill and Senate amendment. Under section 362(d)(1) of the House amendment, the court may terminate, annul, modify, or condition the automatic stay for cause, including lack of adequate protection of an interest in property of a secured party. It is anticipated that the Rules of Bankruptcy Procedure will provide that those hearings will receive priority on the calendar. Under section 362(d)(2) the court may alternatively terminate, annul, modify, or condition the automatic stay for cause including inadequate protection for the creditor. The court shall grant relief from the stay if there is no equity and it is not necessary to an effective reorganization of the debtor.

The latter requirement is contained in section 362(d)(2). This section is intended to solve the problem of real property mortgage foreclosures of property where the bankruptcy petition is filed on the eve of foreclosure. The section is not intended to apply if the business of the debtor is managing or leasing real property, such as a hotel operation, even though the debtor has no equity if the property is necessary to an effective reorganization of the debtor. Similarly, if the debtor does have an equity in the property, there is no requirement that the property be sold under section 363 of title 11 as would have been required by the Senate amendment.

Section 362(e) of the House amendment represents a modification of provisions in H.R. 8200 as passed by the House and the Senate amendment to make clear that a final hearing must be commenced within 30 days after a preliminary hearing is held to determine whether a creditor will be entitled to relief from the automatic stay. In order to insure that those hearings will in fact occur within such 30-day period, it is anticipated that the rules of bankruptcy procedure provide that such final hearings receive priority on the court calendar.

Section 362(g) places the burden of proof on the issue of the debtor's equity in collateral on the party requesting relief from the automatic stay and the burden on other issues on the debtor.

An amendment has been made to section 362(b) to permit the Secretary of the Department of Housing and Urban Development to commence an action to foreclose a mortgage or deed of trust. The commencement of such an action is necessary for tax purposes. The section is not intended to permit the continuation of such an action after it is commenced nor is the section to be construed to entitle the Secretary to take possession in lieu of foreclosure.

Administrative Office of the United States Courts that the number of cases and proceedings pending within the jurisdiction under section 1334 of this title within a judicial district so warrants, the bankruptcy judges for such district may appoint an individual to serve as clerk of such bankruptcy court. The clerk may appoint, with the approval of such bankruptcy judges, and in such number as may be approved by the Director, necessary deputies, and may remove such deputies with the approval of such bankruptcy judges.

(c) Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

(d) No office of the bankruptcy clerk of court may be consolidated with the district clerk of court office without the prior approval of the Judicial Conference and the Congress.

(e) In a judicial district where a bankruptcy clerk has been appointed pursuant to subsection (b), the bankruptcy clerk shall be the official custodian of the records and dockets of the bankruptcy court.

(f) For purposes of financial accountability in a district where a bankruptcy clerk has been certified, such clerk shall be accountable for and pay into the Treasury all fees, costs, and other monies collected by such clerk except uncollected fees not required by an Act of Congress to be prepaid. Such clerk shall make returns thereof to the Director of the Administrative Office of the United States Courts and the Director of the Executive Office For United States Trustees, under regulations prescribed by such Directors.

(Added Pub. L. 98–353, title I, §104(a), July 10, 1984, 98 Stat. 339; amended Pub. L. 99–554, title I, §§103, 142, 144(a), Oct. 27, 1986, 100 Stat. 3090, 3096; Pub. L. 100–702, title X, §1003(a)(3), Nov. 19, 1988, 102 Stat. 4665.)

#### Editorial Notes

##### AMENDMENTS

1988—Subsec. (a). Pub. L. 100–702 inserted at end "A law clerk appointed under this section shall be exempt from the provisions of subchapter I of chapter 63 of title 5, unless specifically included by the appointing judge or by local rule of court."

1986—Subsec. (d). Pub. L. 99–554, §103, added subsec. (d).

Subsecs. (e), (f). Pub. L. 99–554, §§142, 144(a), added subsecs. (e) and (f).

#### Statutory Notes and Related Subsidiaries

##### EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by section 103 of Pub. L. 99–554 effective Oct. 27, 1986, and amendment by sections 142 and 144 of Pub. L. 99–554 effective 30 days after Oct. 27, 1986, see section 302(a), (b) of Pub. L. 99–554, set out as a note under section 581 of this title.

### § 157. Procedures

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and

(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

(4) Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2).

(5) The district court shall order that personal injury tort and wrongful death claims shall be

tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

(e) If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

(Added Pub. L. 98–353, title I, § 104(a), July 10, 1984, 98 Stat. 340; amended Pub. L. 99–554, title I, §§ 143, 144(b), Oct. 27, 1986, 100 Stat. 3096; Pub. L. 103–394, title I, § 112, Oct. 22, 1994, 108 Stat. 4117; Pub. L. 109–8, title VIII, § 802(c)(1), Apr. 20, 2005, 119 Stat. 145.)

#### Editorial Notes

##### AMENDMENTS

2005—Subsec. (b)(2)(P). Pub. L. 109–8 added subpar. (P).

1994—Subsec. (e). Pub. L. 103–394 added subsec. (e).

1986—Subsec. (b)(2). Pub. L. 99–554, in subpar. (B) substituted "interests" for "interest" and inserted reference to chapter 12, and in subpar. (G) inserted a comma after "annul".

#### Statutory Notes and Related Subsidiaries

##### EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under Title 11, Bankruptcy, before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of Title 11.

##### EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under Title 11, Bankruptcy, before Oct. 22, 1994, see sec-

tion 702 of Pub. L. 103–394, set out as a note under section 101 of Title 11.

##### EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by Pub. L. 99–554 effective 30 days after Oct. 27, 1986, see section 302(a) of Pub. L. 99–554, set out as a note under section 581 of this title.

### § 158. Appeals

(a) The district courts of the United States shall have jurisdiction to hear appeals[1]

(1) from final judgments, orders, and decrees;

(2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and

(3) with leave of the court, from other interlocutory orders and decrees;

of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

(b)(1) The judicial council of a circuit shall establish a bankruptcy appellate panel service composed of bankruptcy judges of the districts in the circuit who are appointed by the judicial council in accordance with paragraph (3), to hear and determine, with the consent of all the parties, appeals under subsection (a) unless the judicial council finds that—

(A) there are insufficient judicial resources available in the circuit; or

(B) establishment of such service would result in undue delay or increased cost to parties in cases under title 11.

Not later than 90 days after making the finding, the judicial council shall submit to the Judicial Conference of the United States a report containing the factual basis of such finding.

(2)(A) A judicial council may reconsider, at any time, the finding described in paragraph (1).

(B) On the request of a majority of the district judges in a circuit for which a bankruptcy appellate panel service is established under paragraph (1), made after the expiration of the 1-year period beginning on the date such service is established, the judicial council of the circuit shall determine whether a circumstance specified in subparagraph (A) or (B) of such paragraph exists.

(C) On its own motion, after the expiration of the 3-year period beginning on the date a bankruptcy appellate panel service is established under paragraph (1), the judicial council of the circuit may determine whether a circumstance specified in subparagraph (A) or (B) of such paragraph exists.

(D) If the judicial council finds that either of such circumstances exists, the judicial council may provide for the completion of the appeals then pending before such service and the orderly termination of such service.

(3) Bankruptcy judges appointed under paragraph (1) shall be appointed and may be reappointed under such paragraph.

(4) If authorized by the Judicial Conference of the United States, the judicial councils of 2 or

---

[1] So in original. Probably should be followed by a dash.

(2) Orders of the Interstate Commerce Commission, the Federal Communications Commission, the Civil Aeronautics Board, the Board of Governors of the Federal Reserve System and the Federal Trade Commission, based on violations of the antitrust laws or unfair or deceptive acts, methods, or practices in commerce;

(3) Orders of the Secretary of the Army under sections 504, 505 and 516 of title 33, U.S.C., 1940 ed., Navigation and Navigable Waters;

(4) Orders of the Civil Aeronautics Board under chapter 9 of title 49, except orders as to foreign air carriers which are subject to the President's approval;

(5) Orders under chapter 1 of title 7, refusing to designate boards of trade as contract markets or suspending or revoking such designations, or excluding persons from trading in contract markets;

(6) Orders of the Federal Power Commission under chapter 12 of title 16;

(7) Orders of the Federal Security Administrator under section 371(e) of title 21, in a case of actual controversy as to the validity of any such order, by any person adversely affected thereby;

(8) Orders of the Federal Power Commission under chapter 15B of title 15;

(9) Final orders of the National Labor Relations Board;

(10) Cease and desist orders under section 193 of title 7;

(11) Orders of the Securities and Exchange Commission;

(12) Orders to cease and desist from violating section 1599 of title 7;

(13) Wage orders of the Administrator of the Wage and Hour Division of the Department of Labor under section 208 of title 29;

(14) Orders under sections 81r and 1641 of title 19, U.S.C., 1940 ed., Customs Duties.

The courts of appeals also have jurisdiction to enforce:

(1) Orders of the Interstate Commerce Commission, the Federal Communications Commission, the Civil Aeronautics Board, the Board of Governors of the Federal Reserve System, and the Federal Trade Commission, based on violations of the antitrust laws or unfair or deceptive acts, methods, or practices in commerce;

(2) Final orders of the National Labor Relations Board;

(3) Orders to cease and desist from violating section 1599 of title 7.

The Court of Appeals for the District of Columbia also has jurisdiction to review orders of the Post Office Department under section 576 of title 39 relating to discriminations in sending second-class publications by freight; Maritime Commission orders denying transfer to foreign registry of vessels under subsidy contract; sugar allotment orders; decisions of the Federal Communications Commission granting or refusing applications for construction permits for radio stations, or for radio station licenses, or for renewal or modification of radio station licenses, or suspending any radio operator's license.

Changes were made in phraseology.

### Editorial Notes

#### AMENDMENTS

1982—Pub. L. 97–164, §124, inserted "(other than the United States Court of Appeals for the Federal Circuit)" after "The court of appeals" and inserted provision that the jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

1958—Pub. L. 85–508 struck out provisions which gave courts of appeals jurisdiction of appeals from District Court for Territory of Alaska. See section 81A of this title which establishes a United States District Court for the State of Alaska.

1951—Act Oct. 31, 1951, inserted reference to District Court of Guam.

### Statutory Notes and Related Subsidiaries

#### EFFECTIVE DATE OF 1982 AMENDMENT

Amendment by Pub. L. 97–164 effective Oct. 1, 1982, see section 402 of Pub. L. 97–164, set out as a note under section 171 of this title.

#### EFFECTIVE DATE OF 1958 AMENDMENT

Amendment by Pub. L. 85–508 effective Jan. 3, 1959, on admission of Alaska into the Union pursuant to Proc. No. 3269, Jan. 3, 1959, 24 F.R. 81, 73 Stat. c.16 as required by sections 1 and 8(c) of Pub. L. 85–508, see notes set out under section 81A of this title and preceding section 21 of Title 48, Territories and Insular Possessions.

#### TERMINATION OF UNITED STATES DISTRICT COURT FOR THE DISTRICT OF THE CANAL ZONE

For termination of the United States District Court for the District of the Canal Zone at end of the "transition period", being the 30-month period beginning Oct. 1, 1979, and ending midnight Mar. 31, 1982, see Paragraph 5 of Article XI of the Panama Canal Treaty of 1977 and sections 2101 and 2201 to 2203 of Pub. L. 96–70, title II, Sept. 27, 1979, 93 Stat. 493, formerly classified to sections 3831 and 3841 to 3843, respectively, of Title 22, Foreign Relations and Intercourse.

### § 1292. Interlocutory decisions

(a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

(2) Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property;

(3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

(c) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—

Add0026

(1) of an appeal from an interlocutory order or decree described in subsection (a) or (b) of this section in any case over which the court would have jurisdiction of an appeal under section 1295 of this title; and

(2) of an appeal from a judgment in a civil action for patent infringement which would otherwise be appealable to the United States Court of Appeals for the Federal Circuit and is final except for an accounting.

(d)(1) When the chief judge of the Court of International Trade issues an order under the provisions of section 256(b) of this title, or when any judge of the Court of International Trade, in issuing any other interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

(2) When the chief judge of the United States Court of Federal Claims issues an order under section 798(b) of this title, or when any judge of the United States Court of Federal Claims, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

(3) Neither the application for nor the granting of an appeal under this subsection shall stay proceedings in the Court of International Trade or in the Court of Federal Claims, as the case may be, unless a stay is ordered by a judge of the Court of International Trade or of the Court of Federal Claims or by the United States Court of Appeals for the Federal Circuit or a judge of that court.

(4)(A) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from an interlocutory order of a district court of the United States, the District Court of Guam, the District Court of the Virgin Islands, or the District Court for the Northern Mariana Islands, granting or denying, in whole or in part, a motion to transfer an action to the United States Court of Federal Claims under section 1631 of this title.

(B) When a motion to transfer an action to the Court of Federal Claims is filed in a district court, no further proceedings shall be taken in the district court until 60 days after the court has ruled upon the motion. If an appeal is taken from the district court's grant or denial of the motion, proceedings shall be further stayed until the appeal has been decided by the Court of Appeals for the Federal Circuit. The stay of proceedings in the district court shall not bar the granting of preliminary or injunctive relief, where appropriate and where expedition is reasonably necessary. However, during the period in which proceedings are stayed as provided in this subparagraph, no transfer to the Court of Federal Claims pursuant to the motion shall be carried out.

(e) The Supreme Court may prescribe rules, in accordance with section 2072 of this title, to provide for an appeal of an interlocutory decision to the courts of appeals that is not otherwise provided for under subsection (a), (b), (c), or (d).

(June 25, 1948, ch. 646, 62 Stat. 929; Oct. 31, 1951, ch. 655, § 49, 65 Stat. 726; Pub. L. 85–508, § 12(e), July 7, 1958, 72 Stat. 348; Pub. L. 85–919, Sept. 2, 1958, 72 Stat. 1770; Pub. L. 97–164, § 125, Apr. 2, 1982, 96 Stat. 36; Pub. L. 98–620, title IV, § 412, Nov. 8, 1984, 98 Stat. 3362; Pub. L. 100–702, title V, § 501, Nov. 19, 1988, 102 Stat. 4652; Pub. L. 102–572, title I, § 101, title IX, §§ 902(b), 906(c), Oct. 29, 1992, 106 Stat. 4506, 4516, 4518.)

### HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., §§ 225(b), 227, 227a, and section 61 of title 7 of the Canal Zone Code (Mar. 3, 1911, ch. 231, §§ 128, 129, 36 Stat. 1133, 1134; Feb. 13, 1925, ch. 229, § 1, 43 Stat. 937; Feb. 28, 1927, ch. 228, 44 Stat. 1261; Apr. 3, 1926, ch. 102, 44 Stat. 233; May 20, 1926, ch. 347, § 13(a), 44 Stat. 587; Apr. 11, 1928, ch. 354, § 1, 45 Stat. 422; May 17, 1932, ch. 190, 47 Stat. 158).

Section consolidates sections 225(b), 227 and part of 227a of title 28, U.S.C., 1940 ed., with necessary changes in phraseology to effect the consolidation.

The second paragraph of section 225(b) of title 28, U.S.C., 1940 ed., relating to review of decisions of the district courts, under section 9 of the Railway Labor Act (section 159 of title 45), was omitted as covered by section 1291 of this title.

Words in section 227 of title 28, U.S.C., 1940 ed., "or decree," after "interlocutory order," were deleted, in view of Rule 65 of the Federal Rules of Civil Procedure, using only the word "order."

Provisions of sections 227 and 227a of title 28, U.S.C., 1940 ed., relating to stay of proceedings pending appeal were omitted as superseded by Federal Rules of Civil Procedure, Rule 73.

Provisions of section 227 of title 28, U.S.C., 1940 ed., requiring an additional bond by the district court as a condition of appeal were omitted in view of Federal Rules of Civil Procedure, Rule 73.

Words in section 227 of title 28, U.S.C., 1940 ed., "and sections 346 and 347 of this title shall apply to such cases in the circuit courts of appeals as to other cases therein," at the end of the first sentence of section 227 of title 28, U.S.C., 1940 ed., were deleted as fully covered by section 1254 of this title, applicable to any case in a court of appeals. Other procedural provisions of said section 227 were omitted as covered by section 2101 et seq. of this title.

In subsection (4), which is based on section 227a of title 28, U.S.C., 1940 ed., words "civil actions" were substituted for "suits in equity" and word "judgments" was substituted for "decree," in view of Rules 2 and 54 of the Federal Rules of Civil Procedure.

The provision of sections 227 and 227a of title 28, U.S.C., 1940 ed., that appeal must be taken within thirty days after entry of order, decree or judgment is incorporated in section 2107 of this title.

The provisions of section 227a of title 28, U.S.C., 1940 ed., relating to stay of proceedings pending appeal, were omitted as superseded by Rule 73 of the Federal Rules of Civil Procedure.

The district courts for the districts of Hawaii and Puerto Rico are embraced in the term "district courts of the United States." (See definitive section 451 of this title.) Consequently the specific reference in section 225 of title 28, U.S.C., 1940 ed., to "the United States district courts for Hawaii" was omitted.

The District Court for the District of Puerto Rico is not enumerated in section 225(b) of title 28, U.S.C., 1940

tion period", being the 30-month period beginning Oct. 1, 1979, and ending midnight Mar. 31, 1982, see Paragraph 5 of Article XI of the Panama Canal Treaty of 1977 and sections 2101 and 2201 to 2203 of Pub. L. 96–70, title II, Sept. 27, 1979, 93 Stat. 493, formerly classified to sections 3831 and 3841 to 3843, respectively, of Title 22, Foreign Relations and Intercourse.

## § 1295. Jurisdiction of the United States Court of Appeals for the Federal Circuit

(a) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—

(1) of an appeal from a final decision of a district court of the United States, the District Court of Guam, the District Court of the Virgin Islands, or the District Court of the Northern Mariana Islands, in any civil action arising under, or in any civil action in which a party has asserted a compulsory counterclaim arising under, any Act of Congress relating to patents or plant variety protection;

(2) of an appeal from a final decision of a district court of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, or the District Court for the Northern Mariana Islands, if the jurisdiction of that court was based, in whole or in part, on section 1346 of this title, except that jurisdiction of an appeal in a case brought in a district court under section 1346(a)(1), 1346(b), 1346(e), or 1346(f) of this title or under section 1346(a)(2) when the claim is founded upon an Act of Congress or a regulation of an executive department providing for internal revenue shall be governed by sections 1291, 1292, and 1294 of this title;

(3) of an appeal from a final decision of the United States Court of Federal Claims;

(4) of an appeal from a decision of—

(A) the Patent Trial and Appeal Board of the United States Patent and Trademark Office with respect to a patent application, derivation proceeding, reexamination, post-grant review, or inter partes review under title 35, at the instance of a party who exercised that party's right to participate in the applicable proceeding before or appeal to the Board, except that an applicant or a party to a derivation proceeding may also have remedy by civil action pursuant to section 145 or 146 of title 35; an appeal under this subparagraph of a decision of the Board with respect to an application or derivation proceeding shall waive the right of such applicant or party to proceed under section 145 or 146 of title 35;

(B) the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office or the Trademark Trial and Appeal Board with respect to applications for registration of marks and other proceedings as provided in section 21 of the Trademark Act of 1946 (15 U.S.C. 1071); or

(C) a district court to which a case was directed pursuant to section 145, 146, or 154(b) of title 35;

(5) of an appeal from a final decision of the United States Court of International Trade;

(6) to review the final determinations of the United States International Trade Commission relating to unfair practices in import trade, made under section 337 of the Tariff Act of 1930 (19 U.S.C. 1337);

(7) to review, by appeal on questions of law only, findings of the Secretary of Commerce under U.S. note 6 to subchapter X of chapter 98 of the Harmonized Tariff Schedule of the United States (relating to importation of instruments or apparatus);

(8) of an appeal under section 71 of the Plant Variety Protection Act (7 U.S.C. 2461);

(9) of an appeal from a final order or final decision of the Merit Systems Protection Board, pursuant to sections 7703(b)(1) and 7703(d) of title 5;

(10) of an appeal from a final decision of an agency board of contract appeals pursuant to section 7107(a)(1) of title 41;

(11) of an appeal under section 211 of the Economic Stabilization Act of 1970;

(12) of an appeal under section 5 of the Emergency Petroleum Allocation Act of 1973;

(13) of an appeal under section 506(c) of the Natural Gas Policy Act of 1978; and

(14) of an appeal under section 523 of the Energy Policy and Conservation Act.

(b) The head of any executive department or agency may, with the approval of the Attorney General, refer to the Court of Appeals for the Federal Circuit for judicial review any final decision rendered by a board of contract appeals pursuant to the terms of any contract with the United States awarded by that department or agency which the head of such department or agency has concluded is not entitled to finality pursuant to the review standards specified in section 7107(b) of title 41. The head of each executive department or agency shall make any referral under this section within one hundred and twenty days after the receipt of a copy of the final appeal decision.

(c) The Court of Appeals for the Federal Circuit shall review the matter referred in accordance with the standards specified in section 7107(b) of title 41. The court shall proceed with judicial review on the administrative record made before the board of contract appeals on matters so referred as in other cases pending in such court, shall determine the issue of finality of the appeal decision, and shall, if appropriate, render judgment thereon, or remand the matter to any administrative or executive body or official with such direction as it may deem proper and just.

(Added Pub. L. 97–164, title I, § 127(a), Apr. 2, 1982, 96 Stat. 37; amended Pub. L. 98–622, title II, § 205(a), Nov. 8, 1984, 98 Stat. 3388; Pub. L. 100–418, title I, § 1214(a)(3), Aug. 23, 1988, 102 Stat. 1156; Pub. L. 100–702, title X, § 1020(a)(3), Nov. 19, 1988, 102 Stat. 4671; Pub. L. 102–572, title I, § 102(c), title IX, § 902(b)(1), Oct. 29, 1992, 106 Stat. 4507, 4516; Pub. L. 106–113, div. B, § 1000(a)(9) [title IV, §§ 4402(b)(2), 4732(b)(14)], Nov. 29, 1999, 113 Stat. 1536, 1501A–560, 1501A–584; Pub. L. 111–350, § 5(g)(5), Jan. 4, 2011, 124 Stat. 3848; Pub. L. 112–29, §§ 7(c)(2), 19(b), Sept. 16, 2011, 125 Stat. 314, 331.)

Based on title 28, U.S.C., 1940 ed., § 41(27), (28) (Mar. 3, 1911, ch. 231, §§ 24(27), (28), 207, 36 Stat. 1091, 1148; Oct. 22, 1913, ch. 32, 38 Stat. 219).

Words "Except as otherwise provided by enactment of Congress" were inserted because of certain similar cases of which the courts of appeals are given jurisdiction. (See, for example, section 21 of title 15, U.S.C., 1940 ed., Commerce and Trade.)

Words "any civil action" were substituted for "all cases" and "cases" in view of Rule 2 of the Federal Rules of Civil Procedure.

Changes were made in phraseology.

#### Editorial Notes

##### AMENDMENTS

1995—Pub. L. 104–88 substituted "Surface Transportation Board's" for "Interstate Commerce Commission's" in section catchline and "Surface Transportation Board" for "Interstate Commerce Commission" wherever appearing in text.

1992—Subsec. (b). Pub. L. 102–572 substituted "United States Court of Federal Claims" for "United States Claims Court".

1982—Subsec. (b). Pub. L. 97–164 substituted "United States Claims Court" for "Court of Claims".

1975—Subsec. (a). Pub. L. 93–584 substituted provisions that the district courts shall have jurisdiction of civil actions to enforce, in whole or in part, orders of the Interstate Commerce Commission, and to enjoin or suspend, in whole or in part, any order of the Interstate Commerce Commission for the payment of money or the collection of fines, penalties, and forfeitures, for provisions that the district courts shall have jurisdiction of civil actions to enforce, enjoin, set aside, annul or suspend, in whole or in part, any order of the Interstate Commerce Commission.

1964—Pub. L. 88–513 designated existing provisions as subsec. (a) and added subsecs. (b) and (c).

#### Statutory Notes and Related Subsidiaries

##### EFFECTIVE DATE OF 1995 AMENDMENT

Amendment by Pub. L. 104–88 effective Jan. 1, 1996, see section 2 of Pub. L. 104–88, set out as an Effective Date note under section 1301 of Title 49, Transportation.

##### EFFECTIVE DATE OF 1992 AMENDMENT

Amendment by Pub. L. 102–572 effective Oct. 29, 1992, see section 911 of Pub. L. 102–572, set out as a note under section 171 of this title.

##### EFFECTIVE DATE OF 1982 AMENDMENT

Amendment by Pub. L. 97–164 effective Oct. 1, 1982, see section 402 of Pub. L. 97–164, set out as a note under section 171 of this title.

##### EFFECTIVE DATE OF 1975 AMENDMENT

Amendment by Pub. L. 93–584 not applicable to actions commenced on or before last day of first month beginning after Jan. 2, 1975, and actions to enjoin or suspend orders of Interstate Commerce Commission which are pending when this amendment becomes effective shall not be affected thereby, but shall proceed to final disposition under the law existing on the date they were commenced, see section 10 of Pub. L. 93–584, set out as a note under section 2321 of this title.

### § 1337. Commerce and antitrust regulations; amount in controversy, costs

(a) The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies: *Provided, however,* That the district courts shall have original jurisdiction of an action brought under section 11706 or 14706 of title 49, only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs.

(b) Except when express provision therefor is otherwise made in a statute of the United States, where a plaintiff who files the case under section 11706 or 14706 of title 49, originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $10,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of any interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

(c) The district courts shall not have jurisdiction under this section of any matter within the exclusive jurisdiction of the Court of International Trade under chapter 95 of this title.

(June 25, 1948, ch. 646, 62 Stat. 931; Pub. L. 95–486, § 9(a), Oct. 20, 1978, 92 Stat. 1633; Pub. L. 96–417, title V, § 505, Oct. 10, 1980, 94 Stat. 1743; Pub. L. 97–449, § 5(f), Jan. 12, 1983, 96 Stat. 2442; Pub. L. 104–88, title III, § 305(a)(3), Dec. 29, 1995, 109 Stat. 944.)

#### HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., § 41(8), (23) (Mar. 3, 1911, ch. 231, § 24, pars. 8, 23, 36 Stat. 1092, 1093; Oct. 22, 1913, ch. 32, 38 Stat. 219).

Words "civil action" were substituted for "suits", in view of Rule 2 of the Federal Rules of Civil Procedure. Changes were made in phraseology.

#### Editorial Notes

##### AMENDMENTS

1995—Subsecs. (a), (b). Pub. L. 104–88 substituted "11706 or 14706" for "11707".

1983—Pub. L. 97–449 substituted "section 11707 of title 49" for "section 20(11) of part I of the Interstate Commerce Act (49 U.S.C. 20(11)) or section 219 of part II of such Act (49 U.S.C. 319)" wherever appearing.

1980—Subsec. (c). Pub. L. 96–417 added subsec. (c).

1978—Pub. L. 95–486 designated existing provisions as subsec. (a), inserted proviso giving the district courts original jurisdiction of actions brought under sections 20(11) and 219 of the Interstate Commerce Act when the amounts in controversy for each receipt exceed $10,000, exclusive of interests and costs, and added subsec. (b).

#### Statutory Notes and Related Subsidiaries

##### EFFECTIVE DATE OF 1995 AMENDMENT

Amendment by Pub. L. 104–88 effective Jan. 1, 1996, see section 2 of Pub. L. 104–88, set out as an Effective Date note under section 1301 of Title 49, Transportation.

##### EFFECTIVE DATE OF 1980 AMENDMENT

Amendment by Pub. L. 96–417 effective Nov. 1, 1980, and applicable with respect to civil actions pending on or commenced on or after such date, see section 701(a) of Pub. L. 96–417, set out as a note under section 251 of this title.

### § 1338. Patents, plant variety protection, copyrights, mask works, designs, trademarks, and unfair competition

(a) The district courts shall have original jurisdiction of any civil action arising under any

Act of Congress relating to patents, plant variety protection, copyrights and trademarks. No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights. For purposes of this subsection, the term "State" includes any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, American Samoa, Guam, and the Northern Mariana Islands.

(b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws.

(c) Subsections (a) and (b) apply to exclusive rights in mask works under chapter 9 of title 17, and to exclusive rights in designs under chapter 13 of title 17, to the same extent as such subsections apply to copyrights.

(June 25, 1948, ch. 646, 62 Stat. 931; Pub. L. 91–577, title III, §143(b), Dec. 24, 1970, 84 Stat. 1559; Pub. L. 100–702, title X, §1020(a)(4), Nov. 19, 1988, 102 Stat. 4671; Pub. L. 105–304, title V, §503(b)(1), (2)(A), Oct. 28, 1998, 112 Stat. 2917; Pub. L. 106–113, div. B, §1000(a)(9) [title III, §3009(1)], Nov. 29, 1999, 113 Stat. 1536, 1501A–551; Pub. L. 112–29, §19(a), Sept. 16, 2011, 125 Stat. 331.)

#### HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., §§41(7) and 371(5) (Mar. 3, 1911, ch. 231, §§24, par. 7, 256, par. 5, 36 Stat. 1092, 1160).

Section consolidates section 41(7) with section 371 (5) of title 28, U.S.C., 1940 ed., with necessary changes in phraseology.

Words "of any civil action" were substituted for "all suits at law or in equity" and "cases" to conform section to Rule 2 of the Federal Rules of Civil Procedure.

Word "patents" was substituted for "patent-right" in said section 371 (Fifth) of title 28, U.S.C., 1940 ed.

Similar provisions respecting suits cognizable in district courts, including those of territories and possessions. (See section 34 of title 17, U.S.C., 1940 ed., Copyrights.)

Subsection (b) is added and is intended to avoid "piecemeal" litigation to enforce common-law and statutory copyright, patent, and trade-mark rights by specifically permitting such enforcement in a single civil action in the district court. While this is the rule under Federal decisions, this section would enact it as statutory authority. The problem is discussed at length in *Hurn v. Oursler* (1933, 53 S.Ct. 586, 289 U.S. 238, 77 L.Ed. 1148) and in *Musher Foundation v. Alba Trading Co.* (C.C.A. 1942, 127 F.2d 9) (majority and dissenting opinions).

#### Editorial Notes

##### AMENDMENTS

2011—Subsec. (a). Pub. L. 112–29 substituted "No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights. For purposes of this subsection, the term 'State' includes any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, American Samoa, Guam, and the Northern Mariana Islands." for "Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases."

1999—Pub. L. 106–113 substituted "trademarks" for "trade-marks" in section catchline and subsec. (a) and

substituted "trademark" for "trade-mark" in subsec. (b).

1998—Pub. L. 105–304, §503(b)(2)(A), inserted "designs," after "mask works," in section catchline.

Subsec. (c). Pub. L. 105–304, §503(b)(1), inserted ", and to exclusive rights in designs under chapter 13 of title 17," after "title 17".

1988—Pub. L. 100–702, §1020(a)(4)(B), amended section catchline generally, inserting "mask works," after "copyrights,".

Subsec. (c). Pub. L. 100–702, §1020(a)(4)(A), added subsec. (c).

1970—Pub. L. 91–577 inserted references to "plant variety protection" in section catchline and in subsecs. (a) and (b).

#### Statutory Notes and Related Subsidiaries

##### EFFECTIVE DATE OF 2011 AMENDMENT

Amendment by Pub. L. 112–29 applicable to any civil action commenced on or after Sept. 16, 2011, see section 19(e) of Pub. L. 112–29, set out as a note under section 1295 of this title.

##### EFFECTIVE DATE OF 1970 AMENDMENT

Amendment by Pub. L. 91–577 effective Dec. 24, 1970, see section 141 of Pub. L. 91–577, set out as an Effective Date note under section 2321 of Title 7, Agriculture.

### § 1339. Postal matters

The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to the postal service.

(June 25, 1948, ch. 646, 62 Stat. 932.)

#### HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., §41(6) (Mar. 3, 1911, ch. 231, §24, par. 6, 36 Stat. 1092).

Changes were made in phraseology.

### § 1340. Internal revenue; customs duties

The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Court of International Trade.

(June 25, 1948, ch. 646, 62 Stat. 932; Pub. L. 96–417, title V, §501(21), Oct. 10, 1980, 94 Stat. 1742.)

#### HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., §41(5) (Mar. 3, 1911, ch. 231, §24, par. 5, 36 Stat. 1092; Mar. 2, 1929, ch. 488, §1, 45 Stat. 1475).

Words "Customs Court" were substituted for "Court of Customs and Patent Appeals." Section 41(5) of title 28, U.S.C., 1940 ed., is based on the Judicial Code of 1911. At that time the only court, other than the district courts, having jurisdiction of customs cases, was the Court of Customs Appeals which became the Court of Customs and Patent Appeals in 1929. The Customs Court was created in 1926 as a court of original jurisdiction over customs cases. (See reviser's note preceding section 251 of this title.)

Words "any civil action" were substituted for "all cases" in view of Rule 2 of the Federal Rules of Civil Procedure.

Changes were made in phraseology.

#### Editorial Notes

##### AMENDMENTS

1980—Pub. L. 96–417 redesignated the Customs Court as the Court of International Trade.

**Statutory Notes and Related Subsidiaries**

EFFECTIVE DATE OF 2023 AMENDMENT

Amendment by Pub. L. 118–31(a) effective on the date that is one year after Dec. 22, 2023, and applicable with respect to any action of the United States Court of Appeals for the Armed Forces in granting or refusing to grant a petition for review submitted to such Court for the first time on or after Dec. 22, 2023, with provisions for inapplicability to pending decisions, finality of decisions before effective date, and requiring Supreme Court to prescribe rules to carry out subsection (g) of this section by the effective date specified, see section 533(h) of Pub. L. 118–31, set out as a note under section 867a of Title 10, Armed Forces.

EFFECTIVE DATE OF 1988 AMENDMENT

Amendment by Pub. L. 100–352 effective ninety days after June 27, 1988, except that such amendment not to apply to cases pending in Supreme Court on such effective date or affect right to review or manner of reviewing judgment or decree of court which was entered before such effective date, see section 7 of Pub. L. 100–352, set out as a note under section 1254 of this title.

EFFECTIVE DATE OF 1983 AMENDMENT

Amendment by Pub. L. 98–209 effective on first day of eighth calendar month beginning after Dec. 6, 1983, see section 12(a)(1) of Pub. L. 98–209, set out as a note under section 801 of Title 10, Armed Forces.

## § 2102. Priority of criminal case on appeal from State court

Criminal cases on review from State courts shall have priority, on the docket of the Supreme Court, over all cases except cases to which the United States is a party and such other cases as the court may decide to be of public importance.

(June 25, 1948, ch. 646, 62 Stat. 962.)

HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., § 351 (Mar. 3, 1911, ch. 231, § 253, 36 Stat. 1160; Jan. 31, 1928, ch. 14, § 1, 45 Stat. 54).

Changes were made in phraseology.

## [§ 2103. Repealed. Pub. L. 100–352, § 5(c), June 27, 1988, 102 Stat. 663]

Section, acts June 25, 1948, ch. 646, 62 Stat. 962; Sept. 19, 1962, Pub. L. 87–669, § 1, 76 Stat. 556, provided that appeal from State court or from a United States court of appeals improvidently taken be regarded as petition for writ of certiorari.

**Statutory Notes and Related Subsidiaries**

EFFECTIVE DATE OF REPEAL

Repeal effective ninety days after June 27, 1988, except that such repeal not to apply to cases pending in Supreme Court on such effective date or affect right to review or manner of reviewing judgment or decree of court which was entered into before such effective date, see section 7 of Pub. L. 100–352, set out as a note under section 1254 of this title.

## § 2104. Reviews of State court decisions

A review by the Supreme Court of a judgment or decree of a State court shall be conducted in the same manner and under the same regulations, and shall have the same effect, as if the judgment or decree reviewed had been rendered in a court of the United States.

(June 25, 1948, ch. 646, 62 Stat. 962; Pub. L. 100–352, § 5(d)(1), June 27, 1988, 102 Stat. 663.)

HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., § 871 (R.S. § 1003).

Words "An appeal to" were substituted for "writs of error from", in view of the abolition of the writ of error.

Changes were made in phraseology.

**Editorial Notes**

AMENDMENTS

1988—Pub. L. 100–352 substituted "Reviews of State court decisions" for "Appeals from State courts" in section catchline and amended text generally. Prior to amendment, text read as follows: "An appeal to the Supreme Court from a State court shall be taken in the same manner and under the same regulations, and shall have the same effect, as if the judgment or decree appealed from had been rendered in a court of the United States."

**Statutory Notes and Related Subsidiaries**

EFFECTIVE DATE OF 1988 AMENDMENT

Amendment by Pub. L. 100–352 effective ninety days after June 27, 1988, except that such amendment not to apply to cases pending in Supreme Court on such effective date or affect right to review or manner of reviewing judgment or decree of court which was entered before such effective date, see section 7 of Pub. L. 100–352, set out as a note under section 1254 of this title.

## § 2105. Scope of review; abatement

There shall be no reversal in the Supreme Court or a court of appeals for error in ruling upon matters in abatement which do not involve jurisdiction.

(June 25, 1948, ch. 646, 62 Stat. 963.)

HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., § 879 (R.S. § 1011; Feb. 18, 1875, ch. 80, § 1, 18 Stat. 318).

The revised language is substituted for the provisions of section 879 of title 28, U.S.C., 1940 ed., to avoid any construction that matters of fact are not reviewable in nonjury cases. Such section 879 related to review upon a writ of error which applied only to actions at law. (See Rule 52(a) of the Federal Rules of Civil Procedure limiting the review of questions of fact which renders unnecessary any statutory limitation.)

Rule 7(c) of the Federal Rules of Civil Procedure abolished all pleas, and the rules adopted the motion as a substitute therefor.

Words "matters in abatement" were, therefore, substituted for the abolished "plea in abatement" and "plea to the jurisdiction."

Changes were made in phraseology.

## § 2106. Determination

The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

(June 25, 1948, ch. 646, 62 Stat. 963.)

HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., §§ 344, 876, 877 (R.S. § 701; Mar. 3, 1891, ch. 517, §§ 10, 11, 26 Stat. 829; Mar. 3, 1911, ch. 231, §§ 231, 236, 237, 291, 36 Stat. 1156, 1167; Dec. 23, 1914, ch. 2, 38 Stat. 790; Sept. 16, 1916, ch. 448, § 2, 39 Stat. 726; Feb. 17, 1922, ch. 54, 42 Stat. 366; Feb. 13, 1925,

1988—Pub. L. 100–418, title IX, §§ 9004(b), 9005(b), Aug. 23, 1988, 102 Stat. 1566, inserted "and other remedies" in item 287 and added item 295.

1982—Pub. L. 97–247, § 17(b)(2), Aug. 27, 1982, 96 Stat. 323, added item 294.

## § 281. Remedy for infringement of patent

A patentee shall have remedy by civil action for infringement of his patent.

(July 19, 1952, ch. 950, 66 Stat. 812.)

### HISTORICAL AND REVISION NOTES

Based on Title 35, U.S.C., 1946 ed., §§ 67 and 70, part (R.S. 4919; R.S. 4921, amended (1) Mar. 3, 1897, ch. 391, § 6, 29 Stat. 694, (2) Feb. 18, 1922, ch. 58, § 8, 42 Stat. 392, (3) Aug. 1, 1946, ch. 726, § 1, 60 Stat. 778).

The corresponding two sections of existing law are divided among sections 281, 283, 284, 285, 286 and 289 with some changes in language. Section 281 serves as an introduction or preamble to the following sections, the modern term civil action is used, there would be, of course, a right to a jury trial when no injunction is sought.

## § 282. Presumption of validity; defenses

(a) IN GENERAL.—A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

(b) DEFENSES.—The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded:

(1) Noninfringement, absence of liability for infringement or unenforceability.

(2) Invalidity of the patent or any claim in suit on any ground specified in part II as a condition for patentability.

(3) Invalidity of the patent or any claim in suit for failure to comply with—

(A) any requirement of section 112, except that the failure to disclose the best mode shall not be a basis on which any claim of a patent may be canceled or held invalid or otherwise unenforceable; or

(B) any requirement of section 251.

(4) Any other fact or act made a defense by this title.

(c) NOTICE OF ACTIONS; ACTIONS DURING EXTENSION OF PATENT TERM.—In an action involving the validity or infringement of a patent the party asserting invalidity or noninfringement shall give notice in the pleadings or otherwise in writing to the adverse party at least thirty days before the trial, of the country, number, date, and name of the patentee of any patent, the title, date, and page numbers of any publication to be relied upon as anticipation of the patent in suit or, except in actions in the United States Court of Federal Claims, as showing the state of the art, and the name and address of any person who may be relied upon as the prior inventor or as having prior knowledge of or as having previously used or offered for sale the invention of the patent in suit. In the absence of such notice proof of the said matters may not be made at the trial except on such terms as the court requires. Invalidity of the extension of a patent term or any portion thereof under section 154(b) or 156 because of the material failure—

(1) by the applicant for the extension, or

(2) by the Director,

to comply with the requirements of such section shall be a defense in any action involving the infringement of a patent during the period of the extension of its term and shall be pleaded. A due diligence determination under section 156(d)(2) is not subject to review in such an action.

(July 19, 1952, ch. 950, 66 Stat. 812; Pub. L. 89–83, § 10, July 24, 1965, 79 Stat. 261; Pub. L. 94–131, § 10, Nov. 14, 1975, 89 Stat. 692; Pub. L. 97–164, title I, § 161(7), Apr. 2, 1982, 96 Stat. 49; Pub. L. 98–417, title II, § 203; Sept. 24, 1984, 98 Stat. 1603; Pub. L. 104–41, § 2, Nov. 1, 1995, 109 Stat. 352; Pub. L. 106–113, div. B, § 1000(a)(9) [title IV, §§ 4402(b)(1), 4732(a)(10)(A)], Nov. 29, 1999, 113 Stat. 1536, 1501A–560, 1501A–582; Pub. L. 107–273, div. C, title III, § 13206(b)(1)(B), (4), Nov. 2, 2002, 116 Stat. 1906; Pub. L. 112–29, §§ 15(a), 20(g), (j), Sept. 16, 2011, 125 Stat. 328, 334, 335.)

### HISTORICAL AND REVISION NOTES

Derived from Title 35, U.S.C., 1946 ed., § 69 (R.S. 4920, amended (1) Mar. 3, 1897, ch. 391, § 2, 29 Stat. 692, (2) Aug. 5, 1939, ch. 450, § 1, 53 Stat. 1212).

The first paragraph declares the existing presumption of validity of patents.

The five defenses named in R.S. 4920 are omitted and replaced by a broader paragraph specifying defenses in general terms.

The third paragraph, relating to notice of prior patents, publications and uses, is based on part of the last paragraph of R.S. 4920 which was superseded by the Federal Rules of Civil Procedure but which is reinstated with modifications.

### Editorial Notes

#### AMENDMENTS

2011—Pub. L. 112–29, § 20(g)(1), (2)(A), (C), (3), (j), designated first to third pars. as subsecs. (a) to (c), respectively, inserted headings, in subsec. (a), struck out third sentence which read "Notwithstanding the preceding sentence, if a claim to a composition of matter is held invalid and that claim was the basis of a determination of nonobviousness under section 103(b)(1), the process shall no longer be considered nonobvious solely on the basis of section 103(b)(1).", in par. (2) of subsec. (b), struck out "of this title" after "II" and substituted "patentability." for "patentability,", and in introductory provisions of subsec. (c), struck out "of this title" after "156" and substituted "In an action involving the validity or infringement of a patent" for "In actions involving the validity or infringement of a patent" and "Court of Federal Claims" for "Claims Court".

Pub. L. 112–29, § 20(g)(2)(B), which directed substitution of "unenforceability." for "unenforceability," in par. (1) of former second par. which was designated subsec. (b), was executed by making the substitution for "unenforceability,", to reflect the probable intent of Congress.

Pub. L. 112–29, § 15(a), amended second par. by substituting "(3) Invalidity of the patent or any claim in suit for failure to comply with—

"(A) any requirement of section 112, except that the failure to disclose the best mode shall not be a basis on which any claim of a patent may be canceled or held invalid or otherwise unenforceable; or

"(B) any requirement of section 251."

for "(3) Invalidity of the patent or any claim in suit for failure to comply with any requirement of sections 112 or 251 of this title,".

(5) In a civil case, a notice of appeal encompasses the final judgment, whether or not that judgment is set out in a separate document under Federal Rule of Civil Procedure 58, if the notice designates:

    (A) an order that adjudicates all remaining claims and the rights and liabilities of all remaining parties; or

    (B) an order described in Rule 4(a)(4)(A).

(6) An appellant may designate only part of a judgment or appealable order by expressly stating that the notice of appeal is so limited. Without such an express statement, specific designations do not limit the scope of the notice of appeal.

(7) An appeal must not be dismissed for informality of form or title of the notice of appeal, for failure to name a party whose intent to appeal is otherwise clear from the notice, or for failure to properly designate the judgment if the notice of appeal was filed after entry of the judgment and designates an order that merged into that judgment.

(8) Forms 1A and 1B in the Appendix of Forms are suggested forms of notices of appeal.

**(d) Serving the Notice of Appeal.**

(1) The district clerk must serve notice of the filing of a notice of appeal by sending a copy to each party's counsel of record—excluding the appellant's—or, if a party is proceeding pro se, to the party's last known address. When a defendant in a criminal case appeals, the clerk must also serve a copy of the notice of appeal on the defendant. The clerk must promptly send a copy of the notice of appeal and of the docket entries—and any later docket entries—to the clerk of the court of appeals named in the notice. The district clerk must note, on each copy, the date when the notice of appeal was filed.

(2) If an inmate confined in an institution files a notice of appeal in the manner provided by Rule 4(c), the district clerk must also note the date when the clerk docketed the notice.

(3) The district clerk's failure to serve notice does not affect the validity of the appeal. The clerk must note on the docket the names of the parties to whom the clerk sends copies, with the date of sending. Service is sufficient despite the death of a party or the party's counsel.

**(e) Payment of Fees.** Upon filing a notice of appeal, the appellant must pay the district clerk all required fees. The district clerk receives the appellate docket fee on behalf of the court of appeals.

(As amended Apr. 30, 1979, eff. Aug. 1, 1979; Mar. 10, 1986, eff. July 1, 1986; Apr. 25, 1989, eff. Dec. 1, 1989; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 29, 1994, eff. Dec. 1, 1994; Apr. 24, 1998, eff. Dec. 1, 1998; Apr. 25, 2019, eff. Dec. 1, 2019; Apr. 14, 2021, eff. Dec. 1, 2021.)

**[Rule 3.1. Appeal from a Judgment of a Magistrate Judge in a Civil Case]** (Abrogated Apr. 24, 1998, eff. Dec. 1, 1998)

**Rule 4. Appeal as of Right—When Taken**

  **(a) Appeal in a Civil Case.**

    (1) **Time for Filing a Notice of Appeal.**

      (A) In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from.

(B) The notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is:

(i) the United States;

(ii) a United States agency;

(iii) a United States officer or employee sued in an official capacity; or

(iv) a current or former United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf—including all instances in which the United States represents that person when the judgment or order is entered or files the appeal for that person.

(C) An appeal from an order granting or denying an application for a writ of error *coram nobis* is an appeal in a civil case for purposes of Rule 4(a).

(2) **Filing Before Entry of Judgment.** A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.

(3) **Multiple Appeals.** If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later.

(4) **Effect of a Motion on a Notice of Appeal.**

(A) If a party files in the district court any of the following motions under the Federal Rules of Civil Procedure—and does so within the time allowed by those rules—the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:

(i) for judgment under Rule 50(b);

(ii) to amend or make additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment;

(iii) for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58;

(iv) to alter or amend the judgment under Rule 59;

(v) for a new trial under Rule 59; or

(vi) for relief under Rule 60 if the motion is filed within the time allowed for filing a motion under Rule 59.

(B)(i) If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

(ii) A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment's alteration or amendment upon such a motion, must file a notice of appeal, or an amended notice of appeal—in compliance with Rule 3(c)—within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion.

(iii) No additional fee is required to file an amended notice.

(5) **Motion for Extension of Time.**

(A) The district court may extend the time to file a notice of appeal if:

(i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and

(ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

(B) A motion filed before the expiration of the time prescribed in Rule 4(a)(1) or (3) may be ex parte unless the court requires otherwise. If the motion is filed after the expiration of the prescribed time, notice must be given to the other parties in accordance with local rules.

(C) No extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later.

(6) **Reopening the Time to File an Appeal.** The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, but only if all the following conditions are satisfied:

(A) the court finds that the moving party did not receive notice under Federal Rule of Civil Procedure 77(d) of the entry of the judgment or order sought to be appealed within 21 days after entry;

(B) the motion is filed within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice under Federal Rule of Civil Procedure 77(d) of the entry, whichever is earlier; and

(C) the court finds that no party would be prejudiced.

(7) **Entry Defined.**

(A) A judgment or order is entered for purposes of this Rule 4(a):

(i) if Federal Rule of Civil Procedure 58(a) does not require a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a); or

(ii) if Federal Rule of Civil Procedure 58(a) requires a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a) and when the earlier of these events occurs:

• the judgment or order is set forth on a separate document, or

• 150 days have run from entry of the judgment or order in the civil docket under Federal Rule of Civil Procedure 79(a).

(B) A failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58(a) does not affect the validity of an appeal from that judgment or order.

**(b) Appeal in a Criminal Case.**

**(1) Time for Filing a Notice of Appeal.**

(A) In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of:

(i) the entry of either the judgment or the order being appealed; or

(ii) the filing of the government's notice of appeal.

(B) When the government is entitled to appeal, its notice of appeal must be filed in the district court within 30 days after the later of:

(i) the entry of the judgment or order being appealed; or

(ii) the filing of a notice of appeal by any defendant.

**(2) Filing Before Entry of Judgment.** A notice of appeal filed after the court announces a decision, sentence, or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.

**(3) Effect of a Motion on a Notice of Appeal.**

(A) If a defendant timely makes any of the following motions under the Federal Rules of Criminal Procedure, the notice of appeal from a judgment of conviction must be filed within 14 days after the entry of the order disposing of the last such remaining motion, or within 14 days after the entry of the judgment of conviction, whichever period ends later. This provision applies to a timely motion:

(i) for judgment of acquittal under Rule 29;

(ii) for a new trial under Rule 33, but if based on newly discovered evidence, only if the motion is made no later than 14 days after the entry of the judgment; or

(iii) for arrest of judgment under Rule 34.

(B) A notice of appeal filed after the court announces a decision, sentence, or order—but before it disposes of any of the motions referred to in Rule 4(b)(3)(A)—becomes effective upon the later of the following:

(i) the entry of the order disposing of the last such remaining motion; or

(ii) the entry of the judgment of conviction.

(C) A valid notice of appeal is effective—without amendment—to appeal from an order disposing of any of the motions referred to in Rule 4(b)(3)(A).

**(4) Motion for Extension of Time.** Upon a finding of excusable neglect or good cause, the district court may—before or after the time has expired, with or without motion and notice—extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b).

**(5) Jurisdiction.** The filing of a notice of appeal under this Rule 4(b) does not divest a district court of jurisdiction to correct a sentence under Federal Rule of Criminal Procedure 35(a), nor does the filing of a motion under 35(a) affect the validity of a notice of appeal filed before entry of the order disposing of the motion. The filing of a motion under Federal Rule of Criminal Procedure 35(a) does not suspend the time for filing a notice of appeal from a judgment of conviction.

(6) **Entry Defined.** A judgment or order is entered for purposes of this Rule 4(b) when it is entered on the criminal docket.

**(c) Appeal by an Inmate Confined in an Institution.**

(1) If an institution has a system designed for legal mail, an inmate confined there must use that system to receive the benefit of this Rule 4(c)(1). If an inmate files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing and:

(A) it is accompanied by:

(i) a declaration in compliance with 28 U.S.C. §1746—or a notarized statement—setting out the date of deposit and stating that first-class postage is being prepaid; or

(ii) evidence (such as a postmark or date stamp) showing that the notice was so deposited and that postage was prepaid; or

(B) the court of appeals exercises its discretion to permit the later filing of a declaration or notarized statement that satisfies Rule 4(c)(1)(A)(i).

(2) If an inmate files the first notice of appeal in a civil case under this Rule 4(c), the 14-day period provided in Rule 4(a)(3) for another party to file a notice of appeal runs from the date when the district court dockets the first notice.

(3) When a defendant in a criminal case files a notice of appeal under this Rule 4(c), the 30-day period for the government to file its notice of appeal runs from the entry of the judgment or order appealed from or from the district court's docketing of the defendant's notice of appeal, whichever is later.

**(d) Mistaken Filing in the Court of Appeals.** If a notice of appeal in either a civil or a criminal case is mistakenly filed in the court of appeals, the clerk of that court must note on the notice the date when it was received and send it to the district clerk. The notice is then considered filed in the district court on the date so noted.

(As amended Apr. 30, 1979, eff. Aug. 1, 1979; Pub. L. 100–690, title VII, §7111, Nov. 18, 1988, 102 Stat. 4419; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 27, 1995, eff. Dec. 1, 1995; Apr. 24, 1998, eff. Dec. 1, 1998; Apr. 29, 2002, eff. Dec. 1, 2002; Apr. 25, 2005, eff. Dec. 1, 2005; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 28, 2010, eff. Dec. 1, 2010; Apr. 26, 2011, eff. Dec. 1, 2011; Apr. 28, 2016, eff. Dec. 1, 2016; Apr. 27, 2017, eff. Dec. 1, 2017; Apr. 24, 2023, eff. Dec. 1, 2023.)

## Rule 5. Appeal by Permission

**(a) Petition for Permission to Appeal.**

(1) To request permission to appeal when an appeal is within the court of appeals' discretion, a party must file a petition with the circuit clerk and serve it on all other parties to the district-court action.

(2) The petition must be filed within the time specified by the statute or rule authorizing the appeal or, if no such time is specified, within the time provided by Rule 4(a) for filing a notice of appeal.

## Rule 9013. Motions; Form and Service

(a) Request for an Order. A request for an order must be made by written motion unless:

(1) an application is authorized by these rules; or

(2) the request is made during a hearing.

(b) Form and Service of a Motion. A motion must state its grounds with particularity and set forth the relief or order requested. Unless a written motion may be considered ex parte, the movant must, within the time prescribed by Rule 9006(d), serve the motion on:

• the trustee or debtor in possession and those entities specified by these rules; or

• if these rules do not require service or specify the entities to be served, the entities designated by the court.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 16, 2013, eff. Dec. 1, 2013; Apr. 2, 2024, eff. Dec. 1, 2024.)

### Notes of Advisory Committee on Rules—1983

This rule is derived from Rule 5(a) and Rule 7(b)(1) F.R.Civ.P. Except when an application is specifically authorized by these rules, for example an application under Rule 2014 for approval of the employment of a professional, all requests for court action must be made by motion.

### Committee Notes on Rules—2013 Amendment

A cross-reference to Rule 9006(d) is added to this rule to call attention to the time limits for the service of motions, supporting affidavits, and written responses to motions. Rule 9006(d) prescribes time limits that apply unless other limits are fixed by these rules, a court order, or a local rule. The other changes are stylistic.

*Changes Made After Publication and Comment.* No changes were made after publication and comment.

### Committee Notes on Rules—2024 Amendment

The language of Rule 9013 has been amended as part of the general restyling of the Bankruptcy Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

## Rule 9014. Contested Matters

(a) Motion Required. In a contested matter not otherwise governed by these rules, relief must be requested by motion. Reasonable notice and an opportunity to be heard must be given to the party against whom relief is sought. No response is required unless the court orders otherwise.

(b) Service.

(1) *Motion*. The motion must be served within the time prescribed by Rule 9006(d) and in the manner for serving a summons and complaint provided by Rule 7004.

(2) *Response*. Any written response must be served within the time prescribed by Rule 9006(d).

(3) *Later Filings*. After a motion is served, any other document must be served in the manner prescribed by Fed. R. Civ. P. 5(b).

(c) Applying Part VII Rules.

(1) *In General*. Unless this rule or a court order provides otherwise, the following rules apply in a contested matter: 7009, 7017, 7021, 7025–7026, 7028–7037, 7041–7042, 7052, 7054–7056, 7064, 7069, and 7071. At any stage of a contested matter, the court may order that one or more other Part VII rules apply.

(2) *Exception*. Unless the court orders otherwise, the following subdivisions of Fed. R. Civ. P. 26, as incorporated by Rule 7026, do not apply in a contested matter:

- (a)(1), mandatory disclosure;

- (a)(2), disclosures about expert testimony;

- (a)(3), other pretrial disclosures; and

- (f), mandatory meeting before a scheduling conference.

(3) *Procedural Order*. In issuing any procedural order under this subdivision (c), the court must give the parties notice and a reasonable opportunity to comply.

(4) *Perpetuating Testimony*. An entity desiring to perpetuate testimony may do so in the manner provided by Rule 7027 for taking a deposition before an adversary proceeding.

(d) Taking Testimony on a Disputed Factual Issue. A witness's testimony on a disputed material factual issue must be taken in the same manner as testimony in an adversary proceeding.

(e) Determining Whether a Hearing Will Be an Evidentiary Hearing. The court must provide procedures that allow parties—at a reasonable time before a scheduled hearing—to determine whether it will be an evidentiary hearing at which witnesses may testify.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 26, 1999, eff. Dec. 1, 1999; Apr. 29, 2002, eff. Dec. 1, 2002; Apr. 26, 2004, eff. Dec. 1, 2004; Apr. 16, 2013, eff. Dec. 1, 2013; Apr. 2, 2024, eff. Dec. 1, 2024.)

## Notes of Advisory Committee on Rules—1983

Rules 1017(d), 3020(b)(1), 4001(a), 4003(d), and 6006(a), which govern respectively dismissal or conversion of a case, objections to confirmation of a plan, relief from the automatic stay and the use of cash collateral, avoidance of a lien under §522(f) of the Code, and the assumption or rejection of executory contracts or unexpired leases, specifically provide that litigation under those rules shall be as provided in Rule 9014. This rule also governs litigation in other contested matters.

Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter. For example, the filing of an objection to a proof of claim, to a claim of exemption, or to a disclosure statement creates a dispute which is a contested matter. Even when an objection is not formally required, there may be a dispute. If a party in interest opposes the amount of compensation sought by a professional, there is a dispute which is a contested matter.

When the rules of Part VII are applicable to a contested matter, reference in the Part VII rules to adversary proceedings is to be read as a reference to a contested matter. See Rule 9002(1).

## Committee Notes on Rules—1999 Amendment

This rule is amended to delete Rule 7062 from the list of Part VII rules that automatically apply in a contested matter.

Rule 7062 provides that Rule 62 F.R.Civ.P., which governs stays of proceedings to enforce a judgment, is applicable in adversary proceedings. The provisions of Rule 62, including the ten-day automatic stay of the enforcement of a judgment provided by Rule 62(a) and the stay as a matter of right by posting a supersedeas bond provided in Rule 62(d), are not appropriate for most orders granting or denying motions governed by Rule 9014.

Although Rule 7062 will not apply automatically in contested matters, the amended rule permits the court, in its discretion, to order that Rule 7062 apply in a particular matter, and Rule 8005 gives the court discretion to issue a stay or any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. In addition, amendments to Rules 3020, 4001, 6004, and 6006 automatically stay certain types of orders for a period of ten days, unless the court orders otherwise.

*GAP Report on Rule 9014.* No changes since publication.

## Committee Notes on Rules—2002 Amendment

The list of Part VII rules that are applicable in a contested matter is extended to include Rule 7009 on pleading special matters, and Rule 7017 on real parties in interest, infants and incompetent persons, and capacity. The discovery rules made applicable in adversary proceedings apply in contested matters unless the court directs otherwise.

*Subdivision (b)* is amended to permit parties to serve papers, other than the original motion, in the manner provided in Rule 5(b) F.R. Civ.P. When the court requires a response to the motion, this amendment will permit service of the response in the same manner as an answer is served in an adversary proceeding.

*Subdivision (d)* is added to clarify that if the motion cannot be decided without resolving a disputed material issue of fact, an evidentiary hearing must be held at which testimony of witnesses is taken in the same manner as testimony is taken in an adversary proceeding or at a trial in a district court civil case. Rule 43(a), rather than Rule 43(e), F.R. Civ.P. would govern the evidentiary hearing on the factual dispute. Under Rule 9017, the Federal Rules of Evidence also apply in a contested matter. Nothing in the rule prohibits a court from resolving any matter that is submitted on affidavits by agreement of the parties.

Add0040

*Subdivision (e).* Local procedures for hearings and other court appearances in a contested matter vary from district to district. In some bankruptcy courts, an evidentiary hearing at which witnesses may testify usually is held at the first court appearance in the contested matter. In other courts, it is customary for the court to delay the evidentiary hearing on disputed factual issues until some time after the initial hearing date. In order to avoid unnecessary expense and inconvenience, it is important for attorneys to know whether they should bring witnesses to a court appearance. The purpose of the final sentence of this rule is to require that the court provide a mechanism that will enable attorneys to know at a reasonable time before a scheduled hearing whether it will be necessary for witnesses to appear in court on that particular date.

Other amendments to this rule are stylistic.

*Changes Made After Publication and Comments:*

The Advisory Committee made two changes to subdivision (d) after considering the comments received addressing the proposed rule. First, the word "material" is inserted to make explicit that which was implied in the published version of the proposed rule. Second, the reference to F.R.Civ.P. 43(a) was removed. The purpose of proposed subdivision (d) was to recognize that testimony should be taken in the same manner in both contested matters and adversary proceedings. The revision to the published rule states this more directly.

The Committee Note was amended to reflect the changes made in the text of the rule.

## Committee Notes on Rules—2004 Amendment

The rule is amended to provide that the mandatory disclosure requirements of Fed. R. Civ. P. 26, as incorporated by Rule 7026, do not apply in contested matters. The typically short time between the commencement and resolution of most contested matters makes the mandatory disclosure provisions of Rule 26 ineffective. Nevertheless, the court may by local rule or by order in a particular case provide that these provisions of the rule apply in a contested matter.

*Changes Made After Publication.* No changes since publication.

## Committee Notes on Rules—2013 Amendment

A cross-reference to Rule 9006(d) is added to subdivision (b) to call attention to the time limits for the service of motions, supporting affidavits, and written responses to motions. Rule 9006(d) prescribes time limits that apply unless other limits are fixed by these rules, a court order, or a local rule.

*Changes Made After Publication and Comment.* No changes were made after publication and comment.

## Committee Notes on Rules—2024 Amendment

The language of Rule 9014 has been amended as part of the general restyling of the Bankruptcy Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

## References in Text

The Federal Rules of Civil Procedure, referred to in subds. (b)(3) and (c)(2), are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

(B) a failure to give an instruction, if that party properly requested it and—unless the court rejected the request in a definitive ruling on the record—also properly objected.

(2) *Plain Error.* A court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights.

(As amended Mar. 2, 1987, eff. Aug. 1, 1987; Mar. 27, 2003, eff. Dec. 1, 2003; Apr. 30, 2007, eff. Dec. 1, 2007.)

### Rule 52. Findings and Conclusions by the Court; Judgment on Partial Findings

(a) FINDINGS AND CONCLUSIONS.

(1) *In General.* In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under Rule 58.

(2) *For an Interlocutory Injunction.* In granting or refusing an interlocutory injunction, the court must similarly state the findings and conclusions that support its action.

(3) *For a Motion.* The court is not required to state findings or conclusions when ruling on a motion under Rule 12 or 56 or, unless these rules provide otherwise, on any other motion.

(4) *Effect of a Master's Findings.* A master's findings, to the extent adopted by the court, must be considered the court's findings.

(5) *Questioning the Evidentiary Support.* A party may later question the sufficiency of the evidence supporting the findings, whether or not the party requested findings, objected to them, moved to amend them, or moved for partial findings.

(6) *Setting Aside the Findings.* Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility.

(b) AMENDED OR ADDITIONAL FINDINGS. On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59.

(c) JUDGMENT ON PARTIAL FINDINGS. If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Apr. 28, 1983, eff. Aug. 1, 1983; Apr. 29, 1985, eff. Aug. 1, 1985; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 22, 1993, eff. Dec. 1, 1993; Apr.

27, 1995, eff. Dec. 1, 1995; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

### Rule 53. Masters

(a) APPOINTMENT.

(1) *Scope.* Unless a statute provides otherwise, a court may appoint a master only to:

(A) perform duties consented to by the parties;

(B) hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by:

(i) some exceptional condition; or

(ii) the need to perform an accounting or resolve a difficult computation of damages; or

(C) address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district.

(2) *Disqualification.* A master must not have a relationship to the parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. §455, unless the parties, with the court's approval, consent to the appointment after the master discloses any potential grounds for disqualification.

(3) *Possible Expense or Delay.* In appointing a master, the court must consider the fairness of imposing the likely expenses on the parties and must protect against unreasonable expense or delay.

(b) ORDER APPOINTING A MASTER.

(1) *Notice.* Before appointing a master, the court must give the parties notice and an opportunity to be heard. Any party may suggest candidates for appointment.

(2) *Contents.* The appointing order must direct the master to proceed with all reasonable diligence and must state:

(A) the master's duties, including any investigation or enforcement duties, and any limits on the master's authority under Rule 53(c);

(B) the circumstances, if any, in which the master may communicate ex parte with the court or a party;

(C) the nature of the materials to be preserved and filed as the record of the master's activities;

(D) the time limits, method of filing the record, other procedures, and standards for reviewing the master's orders, findings, and recommendations; and

(E) the basis, terms, and procedure for fixing the master's compensation under Rule 53(g).

(3) *Issuing.* The court may issue the order only after:

(A) the master files an affidavit disclosing whether there is any ground for disqualification under 28 U.S.C. §455; and

(B) if a ground is disclosed, the parties, with the court's approval, waive the disqualification.

(4) *Amending.* The order may be amended at any time after notice to the parties and an opportunity to be heard.

(c) MASTER'S AUTHORITY.

(1) *In General.* Unless the appointing order directs otherwise, a master may:

## TITLE VIII. PROVISIONAL AND FINAL REMEDIES

### Rule 64. Seizing a Person or Property

(a) REMEDIES UNDER STATE LAW—IN GENERAL. At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.

(b) SPECIFIC KINDS OF REMEDIES. The remedies available under this rule include the following—however designated and regardless of whether state procedure requires an independent action:

- arrest;
- attachment;
- garnishment;
- replevin;
- sequestration; and
- other corresponding or equivalent remedies.

(As amended Apr. 30, 2007, eff. Dec. 1, 2007.)

### Rule 65. Injunctions and Restraining Orders

(a) PRELIMINARY INJUNCTION.

(1) *Notice.* The court may issue a preliminary injunction only on notice to the adverse party.

(2) *Consolidating the Hearing with the Trial on the Merits.* Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.

(b) TEMPORARY RESTRAINING ORDER.

(1) *Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

(2) *Contents; Expiration.* Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.

(3) *Expediting the Preliminary-Injunction Hearing.* If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.

(4) *Motion to Dissolve.* On 2 days' notice to the party who obtained the order without notice—or on shorter notice set by the court—the adverse party may appear and move to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires.

(c) SECURITY. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

(d) CONTENTS AND SCOPE OF EVERY INJUNCTION AND RESTRAINING ORDER.

(1) *Contents.* Every order granting an injunction and every restraining order must:

(A) state the reasons why it issued;

(B) state its terms specifically; and

(C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.

(2) *Persons Bound.* The order binds only the following who receive actual notice of it by personal service or otherwise:

(A) the parties;

(B) the parties' officers, agents, servants, employees, and attorneys; and

(C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

(e) OTHER LAWS NOT MODIFIED. These rules do not modify the following:

(1) any federal statute relating to temporary restraining orders or preliminary injunctions in actions affecting employer and employee;

(2) 28 U.S.C. § 2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader; or

(3) 28 U.S.C. § 2284, which relates to actions that must be heard and decided by a three-judge district court.

(f) COPYRIGHT IMPOUNDMENT. This rule applies to copyright-impoundment proceedings.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Dec. 29, 1948, eff. Oct. 20, 1949; Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 23, 2001, eff. Dec. 1, 2001; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

### Rule 65.1. Proceedings Against a Security Provider

Whenever these rules (including the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions) require or allow a party to give security, and security is given with one

Courts with the approval of the Judicial Conference of the United States. The clerk must enter each civil action in the docket. Actions must be assigned consecutive file numbers, which must be noted in the docket where the first entry of the action is made.

(2) *Items to be Entered.* The following items must be marked with the file number and entered chronologically in the docket:

(A) papers filed with the clerk;

(B) process issued, and proofs of service or other returns showing execution; and

(C) appearances, orders, verdicts, and judgments.

(3) *Contents of Entries; Jury Trial Demanded.* Each entry must briefly show the nature of the paper filed or writ issued, the substance of each proof of service or other return, and the substance and date of entry of each order and judgment. When a jury trial has been properly demanded or ordered, the clerk must enter the word "jury" in the docket.

(b) CIVIL JUDGMENTS AND ORDERS. The clerk must keep a copy of every final judgment and appealable order; of every order affecting title to or a lien on real or personal property; and of any other order that the court directs to be kept. The clerk must keep these in the form and manner prescribed by the Director of the Administrative Office of the United States Courts with the approval of the Judicial Conference of the United States.

(c) INDEXES; CALENDARS. Under the court's direction, the clerk must:

(1) keep indexes of the docket and of the judgments and orders described in Rule 79(b); and

(2) prepare calendars of all actions ready for trial, distinguishing jury trials from nonjury trials.

(d) OTHER RECORDS. The clerk must keep any other records required by the Director of the Administrative Office of the United States Courts with the approval of the Judicial Conference of the United States.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Dec. 29, 1948, eff. Oct. 20, 1949; Jan. 21, 1963, eff. July 1, 1963; Apr. 30, 2007, eff. Dec. 1, 2007.)

### Rule 80. Stenographic Transcript as Evidence

If stenographically reported testimony at a hearing or trial is admissible in evidence at a later trial, the testimony may be proved by a transcript certified by the person who reported it.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Apr. 30, 2007, eff. Dec. 1, 2007.)

### TITLE XI. GENERAL PROVISIONS

### Rule 81. Applicability of the Rules in General; Removed Actions

(a) APPLICABILITY TO PARTICULAR PROCEEDINGS.

(1) *Prize Proceedings.* These rules do not apply to prize proceedings in admiralty governed by 10 U.S.C. §§ 7651–7681.

(2) *Bankruptcy.* These rules apply to bankruptcy proceedings to the extent provided by the Federal Rules of Bankruptcy Procedure.

(3) *Citizenship.* These rules apply to proceedings for admission to citizenship to the extent that the practice in those proceedings is not specified in federal statutes and has previously conformed to the practice in civil actions. The provisions of 8 U.S.C. § 1451 for service by publication and for answer apply in proceedings to cancel citizenship certificates.

(4) *Special Writs.* These rules apply to proceedings for habeas corpus and for quo warranto to the extent that the practice in those proceedings:

    (A) is not specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases; and

    (B) has previously conformed to the practice in civil actions.

(5) *Proceedings Involving a Subpoena.* These rules apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order in the proceedings.

(6) *Other Proceedings.* These rules, to the extent applicable, govern proceedings under the following laws, except as these laws provide other procedures:

    (A) 7 U.S.C. §§ 292, 499g(c), for reviewing an order of the Secretary of Agriculture;

    (B) 9 U.S.C., relating to arbitration;

    (C) 15 U.S.C. § 522, for reviewing an order of the Secretary of the Interior;

    (D) 15 U.S.C. § 715d(c), for reviewing an order denying a certificate of clearance;

    (E) 29 U.S.C. §§ 159, 160, for enforcing an order of the National Labor Relations Board;

    (F) 33 U.S.C. §§ 918, 921, for enforcing or reviewing a compensation order under the Longshore and Harbor Workers' Compensation Act; and

    (G) 45 U.S.C. § 159, for reviewing an arbitration award in a railway-labor dispute.

(b) SCIRE FACIAS AND MANDAMUS. The writs of scire facias and mandamus are abolished. Relief previously available through them may be obtained by appropriate action or motion under these rules.

(c) REMOVED ACTIONS.

    (1) *Applicability.* These rules apply to a civil action after it is removed from a state court.

    (2) *Further Pleading.* After removal, repleading is unnecessary unless the court orders it. A defendant who did not answer before removal must answer or present other defenses or objections under these rules within the longest of these periods:

        (A) 21 days after receiving—through service or otherwise—a copy of the initial pleading stating the claim for relief;

        (B) 21 days after being served with the summons for an initial pleading on file at the time of service; or

        (C) 7 days after the notice of removal is filed.

    (3) *Demand for a Jury Trial.*

(A) *As Affected by State Law*. A party who, before removal, expressly demanded a jury trial in accordance with state law need not renew the demand after removal. If the state law did not require an express demand for a jury trial, a party need not make one after removal unless the court orders the parties to do so within a specified time. The court must so order at a party's request and may so order on its own. A party who fails to make a demand when so ordered waives a jury trial.

(B) *Under Rule 38*. If all necessary pleadings have been served at the time of removal, a party entitled to a jury trial under Rule 38 must be given one if the party serves a demand within 14 days after:

(i) it files a notice of removal; or

(ii) it is served with a notice of removal filed by another party.

(d) LAW APPLICABLE.

(1) *"State Law" Defined*. When these rules refer to state law, the term "law" includes the state's statutes and the state's judicial decisions.

(2) *"State" Defined*. The term "state" includes, where appropriate, the District of Columbia and any United States commonwealth or territory.

(3) *"Federal Statute" Defined in the District of Columbia*. In the United States District Court for the District of Columbia, the term "federal statute" includes any Act of Congress that applies locally to the District.

(As amended Dec. 28, 1939, eff. Apr. 3, 1941; Dec. 27, 1946, eff. Mar. 19, 1948; Dec. 29, 1948, eff. Oct. 20, 1949; Apr. 30, 1951, eff. Aug. 1, 1951; Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; Dec. 4, 1967, eff. July 1, 1968; Mar. 1, 1971, eff. July 1, 1971; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 23, 2001, eff. Dec. 1, 2001; Apr. 29, 2002, eff. Dec. 1, 2002; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

## Rule 82. Jurisdiction and Venue Unaffected

These rules do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts. An admiralty or maritime claim under Rule 9(h) is governed by 28 U.S.C. §1390.

(As amended Dec. 29, 1948, eff. Oct. 20, 1949; Feb. 28, 1966, eff. July 1, 1966; Apr. 23, 2001, eff. Dec. 1, 2001; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 28, 2016, eff. Dec. 1, 2016.)

## Rule 83. Rules by District Courts; Judge's Directives

(a) LOCAL RULES.

(1) *In General*. After giving public notice and an opportunity for comment, a district court, acting by a majority of its district judges, may adopt and amend rules governing its practice. A local rule must be consistent with—but not duplicate—federal statutes and rules adopted under 28 U.S.C. §§2072 and 2075, and must conform to any uniform numbering system prescribed by the Judicial Conference of the United States. A local rule takes effect on the date specified by the district court and remains in effect unless amended by the court or abrogated by the judicial council of the circuit. Copies of rules

## Rule 4001-1

## Automatic Stay

**(a)** **Relief From Automatic Stay**

    (1)    Notice

        (A)    As to Property of the Estate

A party in interest desiring relief from the automatic stay of an act against property of the estate shall file a motion and give fourteen (14) days' notice in accordance with FRBP 4001 and LBR 2002-1 to the debtor(s), attorney for the debtor(s), trustee, United States Trustee, those requiring notice under FRBP 2002(i) and FRBP 4001, and any other party known to movant claiming an interest in the subject property.

        (B)    As to Other Acts

A party in interest desiring relief from the automatic stay of an act other than against property of the estate shall file a motion and give fourteen (14) days' notice to the debtor and debtor's attorney in accordance with LBR 2002-1.

        (C)    Content of Notice

The notice and motion shall describe the property or interest involved, including a statement as to its fair market value and encumbrances thereon.

        (D)    General Provision

The date of the request shall be the date that a motion requesting a modification to the automatic stay is filed along with the certificate required by LBR 2002-1(b)(4).

    (2)    When an Objection is Made

        (A)    If an objection is timely filed and served, the party desiring relief from the stay shall obtain a hearing date and time from the court's Web site and shall notify the objecting party of the date of the hearing.

        (B)    The preliminary hearing will be by telephonic conference and based on affidavits only, but may be supported by written memoranda.

**LBR 4001-1**
**AUGUST 1, 2016**

(C)   Duty to Confer

The moving party has a duty to confer with an objecting party for the purpose of attempting to resolve the differences between the parties.

(D)   Timing of Filing Affidavits and Supporting Memoranda

(i)   Notwithstanding LBR 5005-1(c), the moving party shall file and serve affidavits in support of request for modification of stay together with any memoranda of authority at least seven (7) days before the preliminary hearing.

(ii)   The opposing party shall file and serve responsive affidavits and opposing memoranda of authority at least seven (7) days before the preliminary hearing.

(iii)   Notwithstanding LBR 5005-1(c), a document intended to be considered by the Court in connection with a scheduled hearing or a request for modification of stay shall be served and filed in accordance with subparagraphs (i) and (ii) above.

(E)   Waiver

Failure to follow these procedures by the moving party will be deemed to be a waiver of the automatic lifting provisions of § 362(e) of the Code and consent to the continuation of the automatic stay pending the conclusion of the final hearing.

**(b)   Confirmation That No Stay is in Effect, Continuation or For Reimposition of Stay**

(1)   A party in interest desiring an order confirming that no stay is in effect pursuant to § 362(c)(4)(A)(ii) of the Code, shall file a motion and shall give fourteen (14) days' notice and hearing to the Master Mailing List in accordance with LBR 2002-1.

(2)   A party in interest desiring that the stay continue in effect pursuant to § 362(c)(3)(B) of the Code shall file a motion and give fourteen (14) days' notice and hearing to the Master Mailing List in accordance with LBR 2002-1.

The motion shall be filed no later than seven (7) days following the filing of the petition for relief.

The date and time of the hearing shall be included in the notice and shall be within thirty (30) days of the filing of the petition for relief.

(3) A party in interest desiring the automatic stay to take effect pursuant to § 362(c)(4)(B) of the Code shall file a motion and give fourteen (14) days' notice and hearing to the Master Mailing List in accordance with LBR 2002-1.

**(c) Proof of Interest**

A party desiring relief from the stay shall provide to the trustee or debtor in possession, with the notice, copies of documents evidencing the interest of the requesting party, and the perfection of that interest, if appropriate.

**(d) Stipulation**

A stipulation of the debtor allowing relief from the stay is effective only as to acts against the debtor or the debtor's property. A stipulation of the trustee or debtor in possession allowing relief from the stay is effective only after notice has been given in accordance with subparagraph (a)(1) above.

**(e) Combining of Motions**

(1) A motion for relief from the automatic stay or adequate protection shall not be combined with any other motion except a motion for abandonment or for relief from the codebtor stay.

(2) If motions are combined, each request shall be clearly identified in the caption and in the body of the pleading.

**(f) Where No Objection is Made**

If no objection is timely filed and served, the party desiring relief from the stay may present ex parte a proposed order in accordance with LBR 9013-1.

**LBR 4001-1**
**AUGUST 1, 2016**

Add0051

**Rule 9013-1**

**Motions and Orders**

**(a)    Adversary Proceeding**

(1)    If the moving party so elects, a motion in an adversary proceeding may be made after notice and hearing pursuant to LBR 2002-1. Notice need be given only to the parties to the adversary proceeding.

2)    If the election in paragraph (a)(1) is not made, a hearing date on a motion in an adversary proceeding shall be requested on the court's website. Once a hearing date is obtained, the moving party must provide adequate time for objections to be filed in accordance with LBR 2002-1(c).

**(b)    Combining of Motions**

(1)    Motions may be combined with other motions, except motions to lift the automatic stay unless permitted by LBR 4001-1, motions to withdraw the reference, or motions to reopen cases.

(2)    If motions are combined, each request shall be clearly identified in the caption and in the body of the pleading.

(3)    If different objection periods or service or notice requirements are required for combined motions, the longest objection period and most complete service or notice shall be used for all the combined motions.

(4)    Motions in adversary proceedings and bankruptcy cases shall not be combined.

**(c)    Proposed Orders**

(1)    Request for Entry of Order

(A)    Upon expiration of the requisite notice period, a party desiring an order granting motion that is based on notice and hearing shall file a Declaration of No Objections (text-only).

(B)    Subsequent to the submission of the declaration referenced in subparagraph (1)(A), a party may upload an order for the court's execution. A party may not submit an ex parte order for the court's execution prior to the expiration of any applicable notice period.

**LBR 9013-1**
**AUGUST 1, 2017**

(2)     Form

    (A)     The first page of any order must have a 4 inch top margin that is left blank for court use only.

    (B)     The designation "///End of Order///" shall be placed after the final line of text on the order. No date or signature line is to be provided for the judge. The attorney(s) presenting the order shall so indicate in the lower left hand corner of the last page of the order by stating "Presented by" with their name and signature line.

(3)     Orders Upon Stipulations

A party seeking approval of a stipulation shall:

    (A)     File the stipulation, accompanied by a motion to approve the stipulation or relate it to a previously filed motion;

    (B)     Satisfy notice and hearing requirements as to any provision in the stipulation;

    (C)     Not provide for the dismissal or conversion of a case without the need for a separate order; and

    (D)     Obtain the endorsement of the Chapter 12 or 13 trustee as appropriate if any of the provisions of the stipulation affect the trustee's administration of the plan.

(4)     Orders Prepared by the Court

    (A)     Orders resulting from a hearing before the Court will be prepared by the Court unless otherwise directed by the Court.

    (B)     The Court may enter a text-only order in any instance. A text-only order is an order or judgment that is electronically entered on the case docket without an attached document; and is as official and binding as if the judge had signed a document containing the text. A text-only order shall include the name of the judge authorizing entry of said order and shall be deemed dated as of the date it is entered on the docket.

    (C)     If a party or the Clerk is required to serve notice of a text-only order to parties who are not ECF participants, the party or Clerk shall send via first-class mail a copy of the NEF with the filing information, the docket entry, and the document description.

**(d)** **Memorandum of Authorities**

    (1)    A party may, or when required by the Court, shall file in support of or in opposition to a motion or other request for an order of the Court, a brief written memorandum of reasons and a list of authorities on which the party relies. Such memorandum must be filed and served on the opposing party in accordance with LBR 5005-1(c).

    (2)    Citations to Washington cases in a memorandum of authorities shall be to the Washington Reports. Citations to cases from other states shall be to the National Reporter System. Citations to federal cases shall be to the United States Reports, Federal Reporter, or Federal Supplement. Citations to bankruptcy cases shall be to West's Bankruptcy Reporter, Collier's Bankruptcy Cases or Bankruptcy Court Decisions.

**(e)** **Motions for Reconsideration**

Motions for reconsideration shall be filed and served within 14 days after entry of the judgment or order, and shall not be noted for hearing unless oral argument is requested by the court. The opposing party need not respond to a motion for reconsideration unless requested to do so by the court.

**Related Provisions**

| | |
|---|---|
| FRBP 9006 | Computing and Extending Time, Time for Motion Papers |
| FRBP 9013 | Motions: Form and Service |
| FRBP 9014 | Contested Matters |
| FRBP 9021 | Entry of Judgment |
| | |
| LBR 2002-1 | Notice to Creditors and Other Interested Parties |
| LBR 4001-1 | Automatic Stay |
| LBR 5010-1 | Reopening Cases |
| LBR 5011-1 | Withdrawal of Reference |
| LBR 6007-1 | Abandonment |

**LBR 9013-1**
**AUGUST 1, 2017**

**(C) Failure to Conform to Local Rules.** The violation of or failure to conform to any of the Local Rules of this Court may subject the offending party or his attorney, at the discretion of the Court, to appropriate discipline, including the imposition of sanctions, attorney fees, and costs as the Court may deem proper under the circumstances.

**(4) Authority of Presiding Judge.** Nothing in this rule shall limit the power of the Court to impose sanctions as authorized under other existing authority.

**(5) Referral.** This rule does not restrict the judges of this district from referring a matter to any bar association for disciplinary action.

## LCivR 83.4
## COURT POLICY AGAINST DISCRIMINATION

Judges, attorneys, and judicial employees shall fulfill their roles according to the highest standards of professionalism. Court employees will avoid unjustified treatment in both language and action and remain aware of the need to act without regard to gender, racial, religious, or other inappropriate bias. To this end, persons appearing in court who believe they have been treated without equal respect and dignity may bring the matter to the attention of a magistrate or chief judge. Matters brought to the attention of a magistrate judge will be discussed with the chief judge.

## LCivR 83.5
## BANKRUPTCY CASES, PROCEEDINGS AND APPEALS

**(a) Referral of Bankruptcy Cases and Proceedings.**

Pursuant to 28 U.S.C. § 157(a), this Court hereby refers to the bankruptcy judges of this district all cases under United States Code Title 11, and all proceedings arising under Title 11 or arising in or related to cases under Title 11. By reason of this referral, the bankruptcy judges of this district shall hear and determine such proceedings and enter appropriate orders and judgments. Absent consent of the parties, if the bankruptcy judge determines that entry of a final order or judgment would not be consistent with Article III of the United States Constitution, then the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the District Court.

**(b) Jury Trials in Bankruptcy Court.**

Pursuant to 28 U.S.C. § 157(e), bankruptcy judges of this district are specifically designated to conduct jury trials.

**(c) Bankruptcy Appeals.**

**(1) Bankruptcy Appellate Panel.**

**(A) In General.** Pursuant to 28 U.S.C. § 158 (b)(6), this Court hereby authorizes a bankruptcy appellate panel to hear and determine appeals from judgments, orders, and decrees by bankruptcy judges, and, with leave of the bankruptcy appellate panel, appeals from interlocutory orders and decrees entered by bankruptcy judges, subject to the limitation set forth in sub-paragraph (B).

Add0055

**(B) Consent Presumed.** The bankruptcy appellate panel may hear and determine only those appeals in which all parties to the appeal consent. The consent of a party to allow an appeal to be heard and determined by the bankruptcy appellate panel shall be deemed to have been given unless written objection thereto is timely made in accordance with the Amended Order Establishing and Continuing the Bankruptcy Appellate Panel of the Ninth Circuit, which is incorporated herein by reference.

*[Note: The Amended Order is set forth in the Appendix of Orders in the Litigant's Manual for Appeals Before the Bankruptcy Appellate Panel of the Ninth Circuit.]*

**(2) District Court.** Bankruptcy appeals that come before this District Court shall be governed by and conform to Part VIII of the Federal Rules of Bankruptcy Procedure.

**LCivR 83.6**
**NO ENTITY MAY APPEAR PRO SE**

A corporation, including a limited liability corporation; a partnership, including a limited liability partnership; an unincorporated association; a trust; or any entity other than a natural person may not appear in any action or proceeding pro se.

**LCivR 84**
**FORMS**
**[ABROGATED.]**

**LCivR 85**
**TITLE**

These rules shall be known as the Local Civil Rules for the Eastern District of Washington, with the abbreviated citation LCivR.

**LCivR 86**
**EFFECTIVE DATES**

These rules are effective November 17, 2025, and apply to all pending and future cases, except where an injustice would occur and relief is obtained from the Court.

Add0056

Chief Judge Rossmeissl

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 0 6 1996

JAMES R. LARSEN, Clerk

Deputy

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

In Re:                              )
                                    )    No. 96-32-1
                                    )
LOCAL RULES OF THE                  )    GENERAL ORDER
UNITED STATES BANKRUPTCY COURT)          ADOPTING LOCAL RULES
EASTERN DISTRICT OF WASHINGTON)          Effective May 1, 1996
                                    )
_____    )

The United States District Court for the Eastern District of Washington, by this Order, effective May 1, 1996, adopts the Local Rules of the United States Bankruptcy Court for the Eastern District of Washington, dated May 1, 1996. The Local Rules are adopted by the Court pursuant to Bankruptcy Rules 9029 and 8018, Federal Rule of Civil Procedure 83 and 28 U.S.C. Chapter 131 §§2071-2077.

The Local Rules, effective May 1, 1996, shall govern all pending matters, except to the extent, in the opinion of the Court, their application in a case pending on May 1, 1996 would not be feasible or would work an injustice, in which event the procedure set forth in the former rules shall apply. Except as so limited, all prior local rules are hereby abrogated.

The Local Rules, effective May 1, 1996, govern all actions

AO 72
(Rev.8/82)

pending as of the effective date and supersede those rules promulgated on November 1, 1984.

The bankruptcy judges of this district are hereby authorized to make and amend rules of practice and procedure for bankruptcy cases and proceedings, so long as such rules are not inconsistent with the national Rules of Practice and Procedure in Bankruptcy, and so long as such rules are adopted in accordance with Rule 83 of the Federal Rules of Civil Procedure.

DATED this 6th day of March, 1996.

WM. FREMMING NIELSEN
CHIEF UNITED STATES DISTRICT JUDGE

ALAN A. MCDONALD
UNITED STATES DISTRICT JUDGE

FRED VAN SICKLE
UNITED STATES DISTRICT JUDGE

ROBERT H. WHALEY
UNITED STATES DISTRICT JUDGE

2

AO 72
(Rev.8/82)

Add0058

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2026-1918

**Short Case Caption:** Hammerless Tools LLC v. Clausen

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 12,594 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 08/10/2026

Signature: /s/ Stephen L. Sulzer

Name: Stephen L. Sulzer